```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BERNIE CLEMENS AND
NICOLE CLEMENS                        :

      Plaintiffs,                     : Case No. 3:13-CV-2447

      v.                              :

NEW YORK CENTRAL MUTUAL FIRE
INSURANCE COMPANY AND/OR              : (Judge Richard P. Conaboy)
NYCM INSURANCE GROUP AND/OR
NYCM HOLDINGS, INC.                   :

      Defendants.                     :
```
___

Memorandum

We consider here the Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)/Motion to Strike Pursuant to Rule 12(f).  (Doc. 7). This motion has been fully briefed (Docs. 8 & 9) by the parties and is now ripe for disposition.  For the reasons discussed below, the motion will be granted in part and denied in part.

I.   Background.

This action arises from a motor vehicle accident of August 26, 2009.  (Doc. 1, ¶¶ 5-9).  Plaintiffs allege that they were seriously and permanently injured as a result of the accident and that they were named insureds under a policy of insurance issued by the Defendant on the date of the accident.  (Doc. 1, ¶¶ 5-7). Plaintiffs allege further that the aforementioned insurance policy provided $50,000.00 in uninsured motorist benefits ("UIM") and that

1

Plaintiff Bernie Clemens was injured when the vehicle in which he was a passenger was struck by a vehicle operated by one Ana Burrell.  (Doc. 1, ¶¶ 8 & 9).

On June 21, 2011, Plaintiff sought consent to settle his claim against Ms. Burrell's carrier.  (Doc. 1, ¶ 17).  Defendant gave its consent to the third party settlement on July 20, 2011.  (Doc. 1, ¶ 18).  Even before settling the third party claim, Plaintiff had notified the Defendant of a possible UIM claim by letter dated April 1, 2010.  (Doc. 1 ¶ 12).  Defendant acknowledged the UIM claim by letter dated April 12, 2010 and assigned an adjustor to said claim.  (Doc. 1, ¶ 13).

Between April of 2010 and July 15, 2013, Plaintiffs allege that numerous telephone conversations were had and items of correspondence were exchanged with Defendant's agents concerning Plaintiff's efforts (1) to obtain a status report from the Defendant regarding its claim investigation; (2) to schedule an arbitration of the IUM claim, and (3) to schedule Plaintiff's "Statement Under Oath".  (Doc. 1, ¶¶ 12-39).  On May 25, 2011, during the time the aforementioned matters were being discussed by the parties, Plaintiffs submitted a demand letter to Defendant detailing their injuries and supporting documentation including medical records, photographs and authorizations requested by Defendant. (Doc. 1,¶ 16).

On August 26, 2013, Plaintiffs brought suit in the Monroe

2

County Court of Common Pleas alleging breach of contract and "bad faith" pursuant to 42 Pa. C.S. § 8371. Defendant invoked 28 U.S.C. § 1441 and filed its Notice of Removal to this Court on September 24, 2013. The pending motion seeks to dismiss Plaintiff's bad faith count and/or to strike various paragraphs of the Complaint that support the bad faith count.

II. Motion to Dismiss Standard.

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint

3

> states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

*McTernan,* 577 F.3d at 530.  The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949.]  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  *Id.* at 1950.  In other words, a complaint must do more than allege a plaintiff's entitlement to relief.  A

4

> complaint has to "show" such an entitlement
> with its facts. *See Philips v. Co. of*
> *Alleghany*, 515 F.3d 224, 234-35 (3d Cir.2008)

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly*, 550 U.S. at 555) (not precedential).

III. Defendant's Motion to Dismiss.

    1. Argument that Plaintiff's Complaint does not establish a bad faith claim.

Defendant's Motion to Dismiss is directed at the bad faith count of Plaintiff's Complaint. In Pennsylvania, bad faith claims against insurance companies are governed by Pennsylvania's Bad Faith Statute, 42 Pa. C.S. § 8371, which provides:

> In an action arising under an insurance policy, if the Court finds that the insurer has acted in bad faith toward the insured, the Court may take all of the following actions:
>
> > (1) award interest of the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of

5

>>interest plus 3%.
>
>>(2) award punitive damages against the insurer.
>
>>(3) assess court costs and attorneys fees against the insurer.

To establish a bad faith claim under Pennsylvania law, a Plaintiff must show: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy, and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." W. V. Realty, Inc. v. Northern Insurance Company, 334 F.3d 306, 312 (3d. Cir. 2003). While the cases normally speak in terms of a denial of benefits, "[f]ailure to conduct a reasonable investigation based on available information may" also support a claim of bad faith on the part of an insurer. Giangraco v. U.S. Life Insurance Co., 168 F.Supp. 2d. 417, 423 (E.D.Pa) 2001).

The concept of "bad faith" has been interpreted as a "frivolous or unfounded refusal to pay proceeds of a policy which imports a dishonest purpose and a breach of a known duty. (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Lockhard v. State Farm Mutual Insurance Company 2010 WL 597476 at *6 (W.D.Pa, 2010)(citing Terletsky v. Prudential Property and Casualty Insurance Company, 649 A2d. 680 (Pa.Super. 1994). Finally, a heightened burden of proof exists in bad faith claims

6

such that a Plaintiff must show by clear and convincing evidence that an insurer acted in bad faith.  "The clear and convincing standard requires evidence of bad faith so clear, direct, weighty and convincing so as to enable the fact finder to make its decision with clear conviction."  Lockhart, supra, (quoting Polselli v. Nationwide Mutual Fire Insurance Company, 23 F.3d 747-752 (3d Cir. 1994).

    Here, Defendant's motion rests on the premise that Plaintiffs have not pled their bad faith claim with "the requisite level of facts to properly state a claim upon which relief may be granted." (Doc. 9 at 7).  Defendant contends further that Plaintiffs' bad faith claim is supported almost entirely with conclusory allegations using boiler plate language and that, "to the extent that the Complaint contains factual allegations, the allegations cannot establish bad faith under Pennsylvania law."  (Doc. 9 at 7-8).  Defendant argues that various allegations set forth in Paragraphs 12-39 of Plaintiff's Complaint "demonstrate nothing more than Defendant's efforts to investigate Plaintiffs' UIM claim." (Doc. 9 at 9).

    Having read the Complaint thoroughly, the Court must disagree that the lengthy series of conversations and correspondence catalogued at Paragraphs 12-39 of Plaintiffs' Complaint can be interpreted only as "Defendants' effort to investigate the claim". While the Court is by no means predisposed to credit Plaintiffs'

7

version of events, the Court must accept all factual allegations as true in the context of a 12(b)(6) motion.  Phillips v. The County of Allegheny, supra.  The Court does so and it concludes that the various factual allegations at Paragraphs 12-39 of Plaintiffs' Complaint can be plausibly read to indicate a different possibility, that being the sort of duplicitous delay by an insurer that the Pennsylvania Bad Faith Statute was written to prevent. The facial plausibility of this other possibility requires that this Complaint be allowed to stand even under the more stringent standard imposed by Twombly and Iqbal, supra.

 2. Argument that the Complaint is time-barred.

 Defendant argues correctly that bad faith claims under Pennsylvania law are subject to a two-year statute of limitations. Ash v. Continental Insurance Company, 932 A2d. 877 (Pa 2007). Defendant then cites Sikirica v. Nationwide Insurance Company, 416 F.3d 214, 215 (3d. Cir. 2005), for the proposition that "the statute begins to run from the date the claim was 'denied' or when 'the refusal to pay first occurred.'" Because Plaintiffs' brief indicates that the medical records it submitted to Defendant should have been sufficient to convince Defendant to pay the claim, and because the docket indicates that those records were provided more than two years before the Complaint was filed, Defendant argues that Sikirica, supra, requires dismissal of the bad faith claim on statute of limitations grounds.

8

Defendant's reliance on Sikirica to support its statute of limitations argument is unpersuasive. Sikirica affirmed a district court ruling that bad faith claims begin to run when an insurer provides clear notice of its denial of the claim. In this case, it is clear that the parties were still attempting to resolve this matter well into the year 2013 or, at least, that Defendant was sending signals that it was actively considering the claim. See Doc. 1, ¶¶ 30-39). Indeed, as late as July 15, 2013, only six weeks before the case was filed, the Defendant requested that additional authorizations be executed by the Plaintiffs. Clearly, if Defendant had notified Plaintiffs that the claim was denied, there would have been no need to seek additional authorizations in July of 2013. Thus, Defendant had not provided the type of clear notice that the claim was being denied within the two years immediately preceding the filing of the Complaint as required by Sikirica. For that reason, Defendant's Motion to Dismiss the Claim as time-barred will be denied.

IV. Defendant's Motion to Strike.

1. Claims related to false advertising.

Defendant has moved to strike Paragraph 68g of Plaintiffs' Complaint in which Plaintiffs allege that Defendant's failure to act to help their insureds was inimical to the advertising through which the Defendant solicited policyholders. (Doc. 9 at 15). Even if this is true, Defendant correctly argues, 42 Pa. C.S. 8371 does

9

not provide relief for false advertising in the procurement of an insurance policy. Toy v. Metropolitan Life Insurance Company, 928 A2d. 186, 191 (Pa 2007). Thus, Paragraph 68g of Plaintiffs' Complaint shall be stricken and the Court will admit no evidence concerning the nature of Defendants' advertising.

    2. Claims relating to a fiduciary obligation.

Defendant has moved to strike Paragraph 68 qq of Plaintiffs' Complaint because Plaintiffs assert therein that Defendant assumed a fiduciary obligation pursuant to the contract and then failed to discharge this obligation in good faith. (Doc. 9 at 14). Defendant cites cases which it purports hold that the insurer/insured relationship is not of a fiduciary nature in the context of a dispute over UIM coverage. The cases cited by the Defendant are very different factually from the instant case. Moreover, this Court views Plaintiffs' use of the word "fiduciary" in Paragraph 68 qq as immaterial to the issues before the Court.

Certainly, Defendant assumed various contractual obligations with respect to the Plaintiff and it is the way in which it fulfilled, or failed to fulfill, these contractual obligations that will determine whether it exhibited bad faith toward its insured here. Whether Defendant's relationship to Plaintiffs is a fiduciary one will have no bearing on the question of bad faith because the test articulated in W.V. Realty, supra, does not involve the existence or absence of a fiduciary relationship. For

that reason, the word "fiduciary" as used in Paragraph 68 qq of Plaintiffs' Complaint is not a significant term of art here. Defendant's Motion to Strike Paragraph 68 qq will be denied.

    3.   Claims related to Defendant's conduct toward other insureds.

Defendant has moved to strike Paragraph 68cc of Plaintiffs' Complaint which alleges a pattern of indifference by the Defendant toward its policyholders.  This is not a class action.  Thus, Defendant's assertion that Defendant's attitude towards policyholders other than the Plaintiffs is irrelevant to the resolution of this lawsuit is correct.  Paragraph 68cc will be stricken and the Court will hear no evidence on this point.

    4.   Claims related to the size of Defendant's reserve.

Defendant has moved to strike Paragraph 68tt of Plaintiff's Complaint which alleges that the Defendant's act of setting a grossly inadequate reserve for Plaintiffs' claim constitutes bad faith.  Defendant supports its motion by citing various cases that purportedly hold that the size of the reserve set by an insurance company with respect to a specific claim is "immaterial" in the context of a bad faith claim.  Four of these cases are decisions of other district courts which, while potentially persuasive, are not binding on this Court.  The final case cited by Defendant, Williams v. Nationwide Insurance Company, 750 A.2d 881 (Pa. Super 2000), does not stand for the principle for which Defendant has cited it.

11

Williams holds merely that reserves set aside for a specific insured's claim do not constitute "undisputed amounts". This is a far cry from a holding that the size of a reserve is "immaterial" to a bad faith claim. While the Court does recognize that a great discrepancy between the size of a reserve and the amount offered in settlement of a claim is not, without other evidence, proof positive of bad faith on an insurer's part, the Court believes that the presentation of such evidence is potentially germane to the determination of the bad faith issue. Accordingly, Defendant's Motion to Strike Paragraph 68tt will be denied.

    5.   Claims related to Pennsylvania's Unfair Insurance Practice Act (UIPA)

Defendant has moved to strike Paragraphs 68ww, yy, and zz of Plaintiffs' Complaint which allege that Defendant acted in bad faith by engaging in conduct violative of UIPA, 31 Pa. Code 146.6, 40 P.S. 1171.5 and 31 Pa. Code 146.7(c)(1). Defendant cites numerous cases holding that, unless and until the Pennsylvania Supreme Court holds otherwise, evidence of violations of portions of UIPA are irrelevant to the maintenance of a bad faith claim. Plaintiffs have not responded to Defendant's argument in this regard. Consequently, Paragraphs 68 ww, yy, and zz will be stricken and the Court will not admit evidence directed to establishing violations of UIPA.

    6.   Argument regarding allegedly redundant paragraphs.

Defendant has moved to strike numerous paragraphs of Plaintiff's Complaint on the sole ground that they are redundant. If redundancy is their only infirmity this will cause no prejudice to Defendant because, by responding to the first of these allegations, they will effectively be responding to all. Defendant's motion to strike allegedly redundant paragraphs will be denied.

V.   Conclusion.

For the reasons discussed above, Defendant's Motion to Dismiss Plaintiffs' Bad Faith Claim is denied.  Defendant's Motion to Strike those paragraphs of Plaintiffs' Complaint dealing with Defendant's advertising practices, its conduct toward other insureds, and its alleged violations of UIPA are granted.  All other aspects of Plaintiffs' Motion to Strike are denied.  An Order consistent with these determinations will be filed contemporaneously herewith.


BY THE COURT

                                        S/Richard P. Conaboy
                                        Honorable Richard P. Conaboy

Dated: February 24, 2014

13