In the United States District Court
for the Middle District of Pennsylvania

Clemens et al.                    :

    Plaintiffs                 : (Case No. 3:13-CV-2447)


    v.                         : (Judge Richard P. Conaboy)

New York Central Mutual Fire :
Insurance Company                 :


    Defendant.                 :

_____

### Memorandum

Pending before the Court are Plaintiffs' Motion for Summary Judgment (Doc. 64) predicated on a claim of statutory bad faith pursuant to 42 P.S. § 8371 and Defendant's Motion for Summary Judgment (Doc. 74) contending that the documentary evidence of record establishes that Defendant conducted itself reasonably in its efforts to evaluate Plaintiffs' underlying claim for underinsured motorists benefits. [1]

## I.   Factual Background. [2]

This lawsuit stems from a motor vehicle accident that occurred

---

[1] It should be noted that Plaintiff's claim for underinsured motorist benefits was settled by the parties on June 20, 2014.  (Doc. 65, ¶ 33 and Doc. 45).

[2] The Factual Background is derived from Plaintiff's Complaint (Doc. 1); Defendant's Statement of Undisputed Fact (Doc. 65); and the supporting documentation attendant to Plaintiff's response to Defendant's Motion for Summary Judgment (Doc. 77).

in Monroe County, Pennsylvania on August 26, 2009.  (Doc. 1-2, ¶ 5; Doc. 27, ¶ 5).  Plaintiff Bernie Clemens was a "covered person" pursuant to an automobile insurance policy underwritten by Defendant New York Central Mutual Fire Insurance Company that covered a vehicle operated by a Timothy Kruger.  (Doc. 1-2, ¶¶ 8-9; Doc. 27, ¶¶ 6-8).  The Kruger vehicle, in which Plaintiff Bernie Clemens was a passenger, was struck by a vehicle operated by one Ana Burrell. (Doc. 1, ¶¶ 8-9; Doc. 27, ¶ 11).

On April 12, 2010, Plaintiffs notified Defendant in writing of a possible underinsured motorist claim.  (Doc. 1, ¶ 12; Doc. 27, ¶ 12).  On July 6, 2010, Plaintiffs forwarded a Notice of Intention to make a claim of underinsured motorist benefits to Defendant.  (Doc. 1-2, ¶ 15; Doc. 27, ¶ 15).  The parties disagree as to whether other items requested by the Defendant such as medical and wage authorizations and written verification of the policy limits of Ana Burrell were furnished by Plaintiff in the letter of July 6, 2010. (Id).  It is clear that the Plaintiffs' third party claim against Ana Burrell was settled for the policy limits - - $15,000.00 - - in July of 2011 and that this settlement was authorized by Defendant. (Doc. 1-2, ¶ 17-18; Doc. 27, ¶ 17-18).

The parties contested various matters including: (a) Plaintiffs' provision of medical authorizations; (b) Plaintiffs' request to arbitrate the case; and (c) Defendant's efforts to take Plaintiffs' Statement Under Oath.  These disputes simmered over the

39 month period between Plaintiffs' first notice to Defendant of a UIM claim and the date Plaintiffs filed suit.  These disputes are detailed below.

From April of 2010 through November of 2011 Defendant was represented by Attorney Jeffrey Kirsch of Liberty, New York. Attorney Kirsch requested on no fewer than four occasions that Plaintiff produce medical authorizations enabling Defendant to obtain documentation of Plaintiff's injuries from various medical providers.  (Doc. 77 at 112-13, 117-118, 124 and 125-37). Although, Plaintiff's counsel's letter to Attorney Kirsch dated November 21, 2012 (Doc. 77, 231-36) includes a representation that a demand packet furnished on May 25, 2011 (Doc. 77, 26-97) had furnished the requested authorizations, the Court's review of the 70 page demand packet as rendered in Plaintiffs' Bates-stamped documents reveals that it did not contain the medical authorizations executed by Plaintiff as requested by Defendant.  Plaintiffs' letter of November 21, 2012 also complained that numerous letters by Attorney Kirsch asking for medical authorizations had failed to include the medical authorizations he desired Plaintiff to execute.  (Doc. 77 at 234).

The law firm of Dickie McCamey assumed Defendant's representation in December of 2012.  Doc. 77, 242).  Attorney Charles Haddick of that firm requested and enclosed medical authorizations for Plaintiffs' signature in his letter advising Plaintiffs of Defendant's change of representation.  (Id.).  On

3

January 25, 2013, some sixteen months after Defendant first solicited them, Plaintiffs' counsel provided the aforementioned medical authorizations executed by Plaintiff.

On November 12, 2012, Plaintiffs' counsel forwarded a letter (Doc. 77, 223-25) to Attorney Kirsch demanding arbitration under a policy provision of the contract between Mr. Kruger and the Defendant.  On November 26, 2012, Attorney Kirsch advised Plaintiffs' counsel by letter (Doc. 77, at 228) that Plaintiffs' demand for arbitration was viewed by him as a nullity.  The record provides no indication that arbitration of Plaintiffs' claim was ever conducted despite the fact that the policy in question provides for arbitration via a Supplementary Uninsured/Underinsured Motorist Endorsement.  (Doc. 77 at 198).

On November 13, 2012, Attorney Kirsch forwarded a letter to Plaintiffs' counsel scheduling a Notice of Examination under Oath for December 27, 2012.  (Doc. 77 at 226).  In that letter, Attorney Kirsch correctly noted that his client (the Defendant) had a contractual right to take such a Statement Under Oath.  (See Doc. 77 at 180).  Plaintiffs' counsel notified Defendant that his client would not be providing a Statement Under Oath on December 27, 2012 because it had been unilaterally scheduled by Defendant.  (Doc. 77 at 234).  By letter dated December 5, 2012, Plaintiffs' counsel advised that Plaintiff would agree to sit for a Statement Under Oath at a mutually agreed upon date and time.  (Doc. 77 at 239).  No

4

Statement Under Oath was scheduled between December of 2012 and the filing of the Complaint in the instant matter of September of 2013 because opposing counsel engaged in wrangling over whether Defendants had received the medical information necessary to prepare for the Statement Under Oath.  (See Doc. 77 at 264-328).

## II.  Standard of Review.

Summary Judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Federal Rule Civ. Procedure 56(c); See also Celotex Corp., v. Catrett 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d. Cir. 1990).  A dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty and Surety Co., v. Ericksen, 903 F.Supp 836, 838 (M.D. Pa. 1995).  At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249; See also Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d. Cir. 2004). The Court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  Andreoli v.

5

Gates, 482 F.3d 641, 647 (3d. Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24.  The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003).  If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d. Cir. 1998)(quoting Matsushita Elec. Industrial Co., v. Zenith Radio, 475 U.S. 574, 586 (1986).  However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all of their facts immaterial."  Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d. Cir. 2007).

Because Plaintiffs' sole surviving claim is one for bad faith, it is also necessary to set forth the special standard that exists for determining statutory bad faith under Pennsylvania Law.

"Bad faith" on the part of an insurer is any
frivolous or unfounded refusal to pay the proceeds
of a policy; it is not necessary that such refusal
be fraudulent.  For purposes of an action against
an insurer for failure to pay a claim, such
conduct imports a dishonest purpose and means a
breach of a known duty (i.e., good faith and fair
dealing) through some motive of self-interest or
ill will; mere negligence or bad judgment is not
bad faith.

Northwestern Mutual Life Insurance Co., v. Babayan, 430 F.3d
121, 137 (3d. Cir. 2005)(quoting Terletsky v. Prudential Property
and Casualty Ins. Co., 649 A.2d 680, 688 (Pa.Super. 1994).  To
succeed on a bad faith claim, a Plaintiff must demonstrate "(1)
that the insurer lacked a reasonable basis for denying benefits;
and (2) that the insurer knew or recklessly disregarded its lack of
reasonable basis."  Verdetto v. State Farm Fire and Casualty Co.,
837 F.Supp 2d. 480, 484 (M.D.Pa 2011), affirmed 2013 W.L. 175175
(3d. Cir. January 17, 2013)(quoting Klinger v. State Farm Mutual
Auto Ins. Co. 115 F.3d 230, 233 (3d. Cir. 1997).  In addition, a
Plaintiff must demonstrate bad faith by clear and convincing
evidence.  Polselli v. Nationwide Mutual Fire Ins. Co., 23 F.3d
747, 751 (3d. Cir. 1994).

For an insurance company to show that it had a reasonable

7

basis it need not demonstrate its investigation yielded the correct conclusion, or that its conclusion more likely than not was accurate.  Krisa v. Equitable Life Assurance Co., 113 F. Supp. 2d. 694, 704 (M.D.Pa 2000).  Nor is the insurance company required to show that "the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion."  Id.  Instead, an insurance company must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action. Id.  "The 'clear and convincing' standard requires that the Plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction without hesitation, about whether or not the defendants acted in bad faith.'" J.C. Penney Life Ins. Co., v. Pilosi, 393 F.3d 356, 367 (3d. Cir. 2004).

**III. Discussion.**

The Court is compelled to note at the outset that the hallmark of this case has been petulant and even acrimonious bickering among opposing counsel.  The Court is also confounded that a relatively straightforward claim for underinsured motorist benefits that could not exceed $35,000.00 in value could have produced 83 docket items and more than 7,000 pages of correspondence and medical notes. That said, we turn to the question whether either party to this lawsuit may legitimately claim that no material fact is in dispute and that either one is now entitled to judgment as a matter of law.

8

The Court concludes that the muddled record in this case cannot support summary judgment in favor of either party.

Three areas of material dispute have been identified in the Factual Background.[3] These areas concern disputes involving the content and provision of medical authorizations, the efforts to arbitrate this matter, and the efforts to schedule Plaintiffs' Statement Under Oath and deposition in this matter. In each of these areas, the parties exhibited a lack of civility and an inability to move this matter forward at a reasonable pace. This Court, having reviewed that record, simply cannot conclude that either party has demonstrated as a matter of law that the other side was unilaterally responsible for the long delay between Plaintiffs' transmission of its Notice of Intent to file an underinsured motorist claim and the filing of the complaint that initiated this matter. Nor can this Court find as a fact that, to the extent the long delay was attributable to the Defendant, it was or was not motivated by "self-interest or ill will" as required by Terletsky, supra.

This matter must be presented to a jury to make the ultimate determination whether Defendant's conduct in this matter was so unreasonable as to constitute "bad faith" under 42 P.S. § 8371.

---

[3] Other disputes involving whether Defendant characterized Plaintiff Bernie Clemens as a "liar" or "adulterer" or whether Defendant improperly evaluated the claim under New York Law have not been addressed because the Court is convinced the issues identified in the "Factual Background" are material disputes of fact and more is not required to send this case to a jury.

However, the Court will observe that, due to Plaintiffs' burden to prove its case by clear and convincing evidence, and Plaintiffs' persistent failures to cooperate in the discovery process and a failure to observe the literal requirements of Rule 56.1 of the local rules of court, Plaintiff escaped a judicial determination that bad faith cannot be determined from this record by the narrowest of margins.


BY THE COURT


S/Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Court

Dated: January 15, 2015

10