In the United States District Court
for the Middle District of Pennsylvania

Clemens et al.
:
Plaintiffs : (Case No. 3:13-CV-2447)
:
v.
: (Judge Richard P. Conaboy)
New York Central Mutual Fire
Insurance Company :

Defendant. :

FILED
SCRANTON

JUN 1 5 2015

PER ________
DEPUTY CLERK

Memorandum

We consider here numerous motions in limine filed by both the Plaintiff and the Defendant. We shall consider these, which have been fully briefed by the parties, in the order they appear on the docket.

**1. Defendant's Motion in Limine Re Law Applicable to Supplementary Underinsured Motorist Claim. (Doc. 95).**

The object of this motion is to have the Court declare that Plaintiffs' SUM claim was controlled by the law of New York State. Plaintiffs respond that the general rule, that a Federal court sitting in diversity generally applies the substantive law of the state in which it sits (Erie Railroad Company v. Thompkins, 304 U.S. 64, 78(1938)), Pennsylvania law should govern this claim. The parties agree that the Court's ruling on this point is pivotal because New York and Pennsylvania have different standards for

determining whether an insuror has acted in bad faith, with the Pennsylvania standard being more favorable to claimants. See General Star National Insurance Company v. Liberty Mutual Insurance Company, 960 F.2d 377, 385 (3d. Cir. 1992).

Because Erie, supra, also requires that a Federal court sitting in diversity apply the choice of law rules of its host state, Pennsylvania's choice of law rules will apply. Where a "true" conflict exists because the choice of law could produce different results, Pennsylvania applies a flexible approach which combines a "significant relationship" test with a "governmental interest" analysis. Kilmer v. Connecticut Indemnity Company, 189 F.Supp 2.d 237, 243(M.D.Pa. 2002) (citing Carrick v. Zurich-American Insurance Group, 14 F.3d 907, 909 (3d. Cir. 1994).

Defendant urges us to count the contacts and asserts that, on that basis, we should apply New York law. If that were the proper analysis, Defendant's argument would be more tenable. The Defendant is a New York Company, the insured was a New York resident at the time the policy was issued, and the contract was delivered in New York. However, despite these attachments to New York State, the controlling question is which state has the greater interest in the controversy and the most intimate connection with the outcome. Complaint of Bankers Trust Company, 752 F.2d 874, 882 (3d. Cir. 1984)(citing Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 796(1964).

In this case, the injured party was harmed on the roads of Pennsylvania and resides within the Commonwealth as does the insured. Our Circuit has held that the protection of insured parties is the primary public policy underlying laws that govern the duties owed by an insurer to its insured. General Star, supra, at 379. Moreover, the public policy behind Pennsylvania's bad faith statute (42 Pa. C.S.A. § 8371) is the protection of its resident insureds from overreaching insurance companies. Thomson v. Prudential Insurance Company, 1992 WL 38132, 4(E.D.Pa. 1992).

Defendant makes much of the fact that it does not do business in Pennsylvania. Yet, the Court finds that, given the long common border between Pennsylvania and New York, it is not only foreseeable but also to be expected that numerous of Defendant's insureds travel the roads of Pennsylvania everyday. For this reason, Defendant should not be surprised to be facing a claim in a Pennsylvania court nor should it feel abused to have a case such as this governed by Pennsylvania law. We conclude that, due to its significant state interest to protect its resident insureds, Pennsylvania's interest in the outcome of this lawsuit is superior to that of New York. Defendant's motion will be denied.

**2. Defendant's Motion in Limine to Preclude References to Pennsylvania Insurance Regulations and the Unfair Insurance Practices Act. (Doc. 96).**

Defendant correctly asserts that the Pennsylvania Insurance

Department regulates only those insurance entities licensed to do business in the Commonwealth of Pennsylvania. Defendant also correctly asserts that the provisions of Pennsylvania's Unfair Insurance Practices Act extend only to insuror's who issue insurance contracts in Pennsylvania. Because there is no dispute that Defendant neither is engaged in the business of writing insurance contracts in Pennsylvania nor licensed to do so, Defendant's motion (Doc. 96) is granted.

**3. Defendant's Motion Pursuant to Federal Rule of Evidence 201 (Doc. 97).**

Defendant's motion (Doc. 97) seeks a judicial determination that the driving distance between Stroudsburg, Pennsylvania and Liberty, New York is 75.7 miles and the driving distance between Stroudsburg, Pennsylvania and Scranton, Pennsylvania is 46.3 miles. This motion is uncontested (See Doc. 113 at 2) and, as such, will be granted.

**4. Defendant's Motion in Limine to Preclude Plaintiffs from Introducing Evidence of Insurance Reserves During Trial. (Doc. 100).**

Defendant's motion asserts that the relationship between the amount an insurance company reserves for a claim and the amount it ultimately offers to resolve that claim is so tenuous as to make the size of the reserve irrelevant for purposes of determining a bad faith claim. Defendant cites various district court decisions

for this proposition. Plaintiff argues that the amount set aside in reserve necessarily reflects a company's assessment of the potential worth of the claim and, to the extent the reserve is dissimilar from the amount offered in settlement, is germane to an analysis of whether the company acted in bad faith in pretrial settlement negotiations. See North River Insurance Company v. Greater New York Mutual Insurance Company, 872 F.Supp 1411 (E.D.Pa. 1995) and Keefer v. Erie Insurance Exchange, 2014 WL 901123 (M.D.Pa. 2014). This Court believes that the authority cited by Plaintiffs reflects the better view. This is not to say that Defendant would be precluded from producing testimony explaining the difference between its reserve and its settlement offer in this case. That prerogative is available to the Defendant. However, Defendant's motion (Doc. 100) will be denied.

**5. Defendant's Motion in Limine Re Relevant Time Frame (Doc. 101).**

Defendant's motion asserts that the relevant time frame for consideration of Plaintiff's bad faith claim begins on June 21, 2011, the date on which Plaintiff's attorney advised Defendant that the tortfeasor's carrier had agreed to pay its policy limits. Defendant also asserts that the end of the relevant time frame should be fixed at August 26, 2013, the date Plaintiff's initiated suit. Plaintiffs assert that the relevant time frame should begin on April 12, 2010, the date that their counsel advised Defendant of

a "potential SUM claim". Plaintiff also asserts that the misconduct of an insuror even after suit is filed may constitute bad faith and, for that reason, makes Defendant's behavior during the pendency of this case relevant to the Court's bad faith inquiry.

The Court finds that Defendant's reliance on Condio v. Erie Insurance Exchange, 899 A.2d 1136, 1150 (Pa.Super. 2006), for the proposition that bad faith may not be predicated on an insuror's actions or lack of action before being notified of a claim, is appropriate. Condio, supra, makes clear that Plaintiffs' counsel's allusion to a "potential SUM claim" in his letter of April 12, 2010 was insufficient to trigger any duty to act on Defendant's part. The Court finds also that O'Donnell v. Allstate Insurance Company, 734 A2.d 901 (Pa.Super. 1999), cited by both parties, allows for the introduction of evidence of an insuror's bad faith even during the pendency of a lawsuit involving an SUM claim. However, such evidence of bad faith cannot be provided simply by an insuror's action of mounting an aggressive legal defense. Because the SUM claim was resolved by the parties on June 20, 2014, no evidence of Defendant's alleged bad faith that post dates June 20, 2014 will be permitted. Defendant's motion will be granted to the extent that the relevant time frame for establishing Plaintiff's bad faith claim will run from June 21, 2011 through June 20, 2014.

**6. Defendant's Motion in Limine to Preclude References by**

**Plaintiffs at Trial to any Compromise Offers, Statements Made During Settlement Negotiations, or Offers of Judgment (Doc. 102).**

Defendant's motion seeks to preclude Plaintiffs from introducing evidence regarding the existence or size of any compromise offers Defendant made or statements made by defense counsel during the settlement talks conducted by the parties. Defendant cites Rule 408 of the Federal Rules of Evidence for the proposition that offers of compromise and statements made incident to settlement negotiations are generally inadmissable and may be admissible only in extraordinary situations. Rule 408(b) states that such exceptional situations include such purposes as: proving a witness's bias or prejudice; negating a contention of undue delay; or proving an effort to obstruct a criminal investigation. Because Plaintiffs do not allege that their reasons for wishing to introduce testimony regarding the offers in compromise or statements made in connection therewith in this case include any of the specific exceptional situations referenced in Rule 408(b), Defendant's motion (Doc. 102) will be granted.

**7. Defendant's Motion in Limine to Preclude Plaintiffs from Referencing any Claims Other Than Plaintiffs' Supplemental Underinsured Motorist Claim (Doc. 103).**

Defendant's motion seeks to preclude Plaintiffs from producing evidence regarding claims made against Defendant by other

policyholders. Defendant cites various district court cases that hold that evidence of an insuror's treatment of other policyholders is irrelevant to an individual plaintiffs' bad faith claim. Defendant also cites Philip Morris USA v. Williams, 127 S.Ct. 1057(2006), for the principle that the Due Process Clause forbids a State from using punitive damages (such as those available under Pennsylvania's Bad Faith Statute) to punish a Defendant for injuries inflicted on non-parties.

Plaintiffs offer no attempt to distinguish the various district court cases cited by Defendants nor do they address the clear pronouncement of Philip Morris USA v. Williams, supra, that the Due Process Clause precludes reference to non-parties' claims in an attempt to amplify punitive damages. Accordingly, Plaintiffs will not be permitted to introduce evidence of non-parties' claims against the Defendant and Defendant's motion (Doc. 103) will be granted.

**8. Defendant's Motion in Limine to Preclude Plaintiffs' Expert from Testifying at Trial (Doc. 104).**

Defendant's motion is based upon the assertion that Plaintiffs' bad faith claim is not complex and jurors do not require the benefit of any specialized knowledge to evaluate this claim. Defendant also cites case law holding that an expert may not express an opinion as to the ultimate legal conclusion whether an insuror acted in bad faith or whether the insuror's actions

comported with applicable laws. Plaintiff responds that the expert possesses specialized knowledge of insurance claims handling practices and the recognized industry standards governing them. Plaintiff asserts also that the expert can be helpful to the jurors in conducting their assessment of whether Defendant followed its own procedures in this case. The Court, which is vested with broad discretion to determine the admissibility of expert testimony, is mindful that the Federal Rules of Evidence "embody a strong and undeniable preference for admitting any evidence having some potential to assist the trier of fact." DeLuca v. Merrell Dow Pharmaceuticals, 911 F.2d 941, 956 (3d. Cir. 1990). The Court believes that the expert's testimony could be helpful to the jurors in their inquiry whether Defendant acted in bad faith toward the Plaintiffs. Accordingly, the Court will allow the Plaintiff's expert to testify regarding industry standards and claims handling practices. Defendant's motion (Doc. 104) to completely preclude the expert's testimony will be denied.

**9. Defendant's Motion to Preclude Plaintiffs' Attorneys from Testifying During Trial (Doc. 105).**

Defendant's motion is predicated on Local Rule 43.1 and Pennsylvania R.C.P 3.7, both of which discourage a lawyer from trying to function in the dual roles of advocate and witness. Plaintiffs respond that their attorneys do not envision testifying at trial but should be permitted to do so if there is not any other

way to introduce relevant evidence. The Court will observe that a law firm that did not participate in the settlement negotiations that give rise to a bad faith claim is often employed to prosecute such claims. This avoids the confusion inherent in simultaneously acting as witness and advocate. The Court also registers its strong disinclination to permit Plaintiffs' attorneys to render testimony in this matter and its expectation that counsel for both parties will be able to stipulate to the authenticity of Plaintiffs' proposed documentary evidence. A ruling on this motion (DOc. 105) will be held in abeyance.

**10. Defendant's Motion in Limine to Preclude Reference to Defendant's Counsel's Emails on January 23, 2014 and January 27, 2014 (Doc. 106).**

Defendant's motion seeks to prevent admission of two emails from defense counsel to Plaintiffs' counsel that question the honesty of one of the Plaintiffs and remind Plaintiffs' counsel of the potential penalties for defrauding an insuror. Defendant cites relevant case law holding that an insuror may not be held vicariously liable for communications from its attorney (an independent contractor) to the attorney of an adverse party. Plaintiff responds with the observation, that if Defense counsel's communications to Plaintiff are categorically inadmissable there would be no way to prove a bad faith claim.

The communications Defendant seeks to exclude were perhaps

vituperative and almost certainly unnecessary, but they are not admissible. These emails are perhaps probative of the sorry state of the relationship between opposing counsel, but they do not provide competent evidence of Defendant's bad faith. Inasmuch as plaintiffs' counsel has not cited any authority for the proposition that the emails should be admitted, Defendant's motion (Doc. 106) will be granted.

**11. Plaintiffs' Motion in Limine to Preclude Defendant from Introducing Evidence Regarding Use of Seatbelts (Doc. 107).**

Plaintiffs' motion seeks to preclude Defendant from introducing evidence that Plaintiff Bernie Clemens was not wearing his seat belt at the time the accident in question occurred. Plaintiffs' motion is based upon the Pennsylvania Occupant Protection Act, 75 Pa. CSA § 4581(a) and (e), which mandate that front seat passengers in all motor vehicles wear seatbelts, but also specifies that no violation of the statute "be used as evidence in a trial of any civil action". [1] This statute has been interpreted by the Pennsylvania Superior Court to prohibit juries from receiving any instruction that would allow consideration of failure to use a seatbelt in a civil lawsuit. See Nicola v. Nicola, 449, Pa. Super. 293(1996); see also Carrasquilla v. Mazda

[1] The Court has already found that this action is governed by Pennsylvania Law. See Page 2, ante.

Motor Corp., 197 F.Supp. 2.d 169(M.D.Pa. 2002). Defendant contends that Philip Morris USA v. Williams, 549 U.S. 346, 353 (2007), requires that it be permitted to present every available defense in an action in which punitive damages may be awarded. We do not read Phillip Morris as broadly as Defendant. That case focused upon an enormous punitive damage award to one individual on the basis of harm to many other individuals. In this case, Plaintiffs use or non-use of a seatbelt has nothing to do with any harm Defendant may have inflicted on other persons. The Court concludes that, due to the operation of the Pennsylvania Occupant Protection Act, the seatbelt defense is not "available" to the Defendant in this case and, as such, Phillip Morris USA, supra, is not implicated.[2] Consequently, Plaintiffs' motion will be granted.

**12. Plaintiffs' Motion in Limine to Preclude Mention Regarding the Specifics of Plaintiffs' Settlement Demands or Valuation of Their SUM Claim or Their Third Party Claim and the Amount for which Their SUM Claim Settled. (Doc. 108).**

The information Plaintiff seeks to preclude by this motion is generally inadmissible for the same reason specified in the Court's ruling on Defendant's Motion in Limine regarding compromise offers

[2] The Court notes also that before putting all its eggs in the figurative basket that New York Law governed this claim, it would have been prudent to obtain legal advice whether this was necessarily the case.

and statements made during settlement negotiations. (Doc. 102). However, as seems likely, should Plaintiffs make an allegation at trial that excessive delay by Defendants constituted bad faith on Defendants' part, Defendant will be allowed to introduce evidence regarding the amounts Plaintiff demanded during negotiations considering settlement of the SUM claim only.[3] This result is compelled by the specific reference in F.R.E. 408(b) permitting introduction of evidence regarding settlement discussions to "negate a contention of undue delay." Thus, a ruling on Plaintiffs' motion will be held in abeyance.

**13. Plaintiffs' Motion in Limine to Compel the Live Testimony at Trial of Defendant's Employees. (Doc. 109).**

The purpose of Plaintiffs' motion is to Compel the live testimony at trial of four of Defendant's employees: Albert Pylanski, Diane Wildey, James Dvoracek, and Joseph Catalano. Plaintiffs acknowledge that these individuals have been deposed. Plaintiffs cite various cases that support a policy that a jury should have the opportunity to observe the demeanor of witnesses as an aide to determining their credibility. Defendant responds that neither Ms. Wildey nor Mr. Pylanski "were involved in the decision-making concerning the evaluation and settling of Plaintiff's claim". For this reason, Defendant contends that these individuals have nothing relevant to say to the jury and that they should not

[3] The amount of Plaintiffs' settlement in the third party lawsuit is absolutely inadmissable.

be required to physically appear. Defense counsel made this same argument in resisting an attempt to depose Ms. Wildey and Mr. Pylanski earlier in this litigation. The Court found at that time (See Doc. 50 at 5) that even if Ms. Wildey and Mr. Pylanski had nothing to do with the handling of Bernie Clemens' claim, their positions made them privy to the policies that governed Defendant's claim handling practices, a subject that is highly relevant to this case. The Court ruled previously that these individuals should be deposed and rules now, for the self-same rationale, that Ms. Wildey and Mr. Pylanski must appear if called by Plaintiffs. Plaintiffs motion will be granted.

**14. Plaintiffs' Motion in Limine to Preclude Testimony or Other Evidence at Trial of Plaintiffs' Conduct or the Conduct of Plaintiffs' Counsel (Doc. 110).**

Plaintiffs' motion seeks to preclude admission of any evidence of Plaintiffs' conduct or that of Plaintiffs' counsel during the pendency of settlement negotiations in this case. Plaintiffs' reason that the sole focus of a bad faith action is the conduct of the insuror and, as such, testimony regarding Plaintiffs' conduct is categorically irrelevant. Plaintiffs cite no legal authority in support of this position. Defendant responds that the Third Circuit (See Polselli v. Nationwide Mutual Insurance Company, 23 F.3d 747, 752 (1994)) and several district court decisions in this Circuit have ruled that actions by a Plaintiff's counsel that

unreasonably delayed the evaluation of a UIM claim are relevant to the question whether an insuror acted in bad faith in resolving such a claim. The Court finds that Defendant's position on this point is better supported and Plaintiffs' motion will be denied.

**15. Defendant's Motion in Limine to Preclude Plaintiffs from Introducing Any Evidence Concerning Any Mediations and Related Settlement Negotiations Held in the Case. (Doc. 111).**

Defendant's motion is based upon Local Rule 16.8.6(c) which requires that "no communication at any mediation session (including, without limitation, any verbal, non-verbal, or written communication which refers to or relates to mediation of the pending litigation) shall be disclosed to any person not involved in the mediation process, and no aspect of the mediation session shall be used by anyone for any reason." This blanket prohibition is based upon the policy that absolute confidentiality of everything that happens during a medication session is necessary to foster an atmosphere in which civil suits may be amicably resolved. (See U.S.F & G. v. Bilt Right Contractors, 2005 WL 1168374(E.D. Pa. 2005); see also Deitz and Watson, Inc. v. Liberty Mutual Insurance Company, U.S.Dist. Lexis 9815(E.D.Pa. 2015).

Plaintiffs respond that Defendant's motion is well-premised, but only with respect to the actual negotiations conducted in the presence of the mediator. Plaintiffs' contend, we think

accurately, that the substance of such negotiations as preceded and post-dated the mediation session are relevant to the question whether Defendant unreasonably delayed the negotiation of Plaintiffs' UIM claim and thereby bargained in bad faith with its insured. Defendant's motion will be granted with regard to the conduct of the parties in the presence of the mediator only.

**Conclusion:**

The Court recognizes that witnesses may, deliberately or inadvertently, wander into areas previously proscribed by rulings of this Court. In such circumstances the Court may have to reconsider its rulings and in certain circumstances even reverse them. Hopefully, this can be avoided by scrupulous preparation by counsel, however, witnesses often deliberately try to inject into the case matters which the Court has ruled are inappropriate under the circumstances of the pleadings. Whatever the cause, there may be need for the Court to reconsider some of the rulings issued on motions filed by counsel in this case.

The Court has thoroughly and completely read and digested the extensive motions and briefings filed in this case and, while the matters are lengthy and seemingly complicated, it is the hope of this Court that continued assiduous preparation will help counsel in presenting this case thoroughly and directly to a jury. It is also the hope of the Court that its directions in making these rulings will enable counsel, especially in preparation of things

like opening statements and examination of jurors, to move the trial along expeditiously and that only appropriate questions will be raised and discussed in the courtroom before the jury. An Order consistent with the foregoing Memorandum will be filed contemporaneously herewith.

BY THE COURT

Honorable Richard P. Conaboy
United States District Court

Dated: 6-15-15