IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNIE CLEMENS and<br>NICOLE CLEMENS, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO:<br><br>3:13 –CV-02447<br><br><br><br>Judge Malachy E. Mannion<br><br><br><br>ELECTRONICALLY FILED<br><br>JURY TRIAL DEMANDED |
| Plaintiffs, | | |
| v. | | |
| NEW YORK CENTRAL MUTUAL<br>FIRE INSURANCE COMPANY<br>and/or NYCM INSURANCE GROUP<br>and/or NYCM HOLDINGS, INC.<br>Defendants. | | |

## PLAINTIFFS', BERNIE CLEMENS AND NICOLE CLEMENS, PRE-TRIAL MEMORANDUM

Plaintiffs, Bernie Clemens and Nicole Clemens, by and through their attorneys, the Pisanchyn Law Firm, and the undersigned counsel Michael J. Pisanchyn, Jr., Esquire, and M. Lee Albright, Esquire, respectfully submit this Pre-Trial Memorandum pursuant to L.R. 16.6 and represent as follows:

### A. STATEMENT AS TO FEDERAL COURT JURISDICTION

This Honorable Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### B. STATEMENT OF FACTS AND CONTENTIONS AS TO LIABILITY

This is an Insurance Bad Faith case against Defendant, New York Central Mutual Fire Insurance Company (hereinafter "NYCM") in regard to the handling of Plaintiffs', Mr. Bernie Clemens, and his wife, Mrs. Nicole Clemens, underinsured motorist claim.

Plaintiffs are Bernie Clemens and Nicole Clemens. Both Plaintiffs and their minor child have always resided in Pennsylvania. Bernie Clemens is currently a Federal Prison Guard. At the time of this collision, Mr. Clemens was a passenger in a vehicle which was owned, operated, and insured by another person, Timothy Kruger, who was a named Insured through New York Central Mutual Insurance Company, (hereinafter "NYCM").

On August 26, 2009, Mr. Clemens was severely injured in the motor vehicle collision. Within one (1) day after this collision, NYCM Insurance sent to Mr. Clemens forms to fill out which included a claim for underinsurance as well as authorization for NYCM Insurance to obtain all and any medical records, employment records and the like. Mr. Clemens immediately filled out this paperwork and authorizations and sent them to NYCM Insurance. A review of the documents evidence that NYCM Insurance received these authorizations within 45 day from the very date of this collision.

In the meantime, Mr. Clemens and his family made a claim against the 3rd party Defendant who only had the state minimum worth of Insurance Coverage. This amount was tendered quickly by that Insurance Company. Further, a claim for underinsurance was made to NYCM Insurance for underinsurance motorist benefits. NYCM Insurance acknowledges receipt of this underinsurance claim.

NYCM Insurance's Insured, Mr. Clemens requested consent to settle and waiver of subrogation. A review of the documentation submitted in support of Plaintiff's opposition for summary judgment demonstrates that NYCM Insurance took numerous months before it consented and waived subrogation. In fact, Plaintiff had to send numerous letters including a <u>Daley-Sand</u> letter which delayed the Clemens' family from receiving that 3rd party settlement proceeds in their time of need.

Thereafter, despite NYCM Insurance having all of the medical and wage information in its possession and in fact Plaintiff sending to NYCM Insurance copies of all documentation[1], NYCM Insurance began to demand authorizations be signed. In this regard on too numerous occasions to count Plaintiff requested that NYCM Insurance send to its Insured all and any authorizations it required signed. A review of the documents/letter submitted to This Court demonstrates that NYCM Insurance refused to send authorizations. NYCM Insurance continually demanded authorizations be signed but refused to send the authorizations themselves.

NYCM Insurance then demanded its Insured submit to a Statement under Oath (herein after SUO). Plaintiffs on numerous occasions advised NYCM Insurance that they would submit to a SUO. As demonstrated by the correspondence submitted with this opposition, NYCM Insurance however, unilaterally scheduled

---

[1] See Plaintiffs' first demand to NYCM Insurance

this this SUO without first contacting it's Insured to find Mr. Clemens and its representatives availability. Even further, despite it being acknowledged by NYCM Insurance of other available means (phone, having a representative go to the Insured, video-conference etc...), NYCM stated it would only conduct the SUO in New York State. As per the medical records and NYCM Insurance's acknowledgment, it knew when it was requested its Insured travel over two (2) to Three (3) hours for this SUO, that its Insured was experiencing pain and injuries arising from this collision and would have trouble traveling this length. The correspondence submitted to This Court demonstrate on numerous occasions, NYCM Insurance's Insured stated that he would in fact submit to a SUO that would take place at a reasonable time and reasonable distance.

NYCM Insurance eventually began to investigate this incident. When it did, the NYCM Insurance adjuster's notes demonstrate the lack of fair dealing as well as inappropriate and unreasonable claims handling. In this regard, NYCM Insurance had this matter reserved at one half of its limits. A review of the documentation demonstrates at no time up until the matter was resolved five (5) years later had it ever offered anywhere near this amount.

A review of the adjuster's notes states that NYCM Insurance began an investigation to determine if its Insured was wearing a seatbelt at the time of this

collision[2]. According to the Insurance Adjuster, NYCM Insurance stated that it would "not reward" its Insured for not wearing a seatbelt and as such would not offer an amount that would informally resolve this underinsurance case. In fact, during the Insurance Adjuster's deposition, (also attached as an exhibit to this opposition of summary judgment), NYCM Insurance adjuster states that but for this "seatbelt defense," NYCM Insurance would have tendered its underinsurance limits. Importantly, when NYCM 30 (b)(6) Corporate Designee deposition took place close to five (5) years after this collision, (also submitted to This Court; See Catalano Deposition), NYCM for the first time was made aware that the "seatbelt defense" was inapplicable because in Pennsylvania whether Plaintiff was or was not wearing his seatbelt is inadmissible in a civil trial as per statutory language.

Further, NYCM through its Corporate Designee admitted that within days after this incident NYCM in fact did have authorization from its Insured to get all and any records it so chose. A review of the NYCM Insurance Supervisor and who is also designated the Corporate Designee to speak on behalf of NYCM Insurance demonstrates that 1) at the time of its evaluation of Clemens' Claim, NYCM Insurance had absolutely no written policies or procedures in reference to how its Insurance Adjusters were to handle claims[3]; despite there being a policy that the first

---

[2] The documentation demonstrates that there was never any evidence that Mr. Clemens was not wearing his seatbelt despite NYCM Insurance Company's attempt to prove otherwise.
[3] NYCM admits that later it did create written policies and procedures called "Best Practices;" Plaintiff believes that looking at the Best Practices that were later enacted by NYCM, NYCM Insurance violated its

party PIP file not be reviewed by the NYCM Insurance underinsurance adjuster; it was (See Adjuster Drovek's deposition testimony[4]); despite NYCM Insurance requiring an out of State claim be reviewed and documented by a Supervisor this was not done. A review of the deposition transcripts will demonstrate that these are just some issues touched on in reference to NYCM's bad faith action and in-actions towards its Insured.

Another issue is that the Insurance Contract/Policy in and of itself stated that the underinsured motorist matter must be arbitrated. In this regard, Plaintiff on numerous occasions demanded that NYCM Insurance arbitrate the underinsurance case. NYCM Insurance, without further explanation, wrote to Plaintiff and advised that the arbitration "was a nullity." As such, Plaintiff was forced to file suit, litigate this matter, and expend additional sums of money it otherwise would not have should this matter have been arbitrated as per the Insurance Policy.

Through discovery, Plaintiff has learned that NYCM Insurance has a "bonus structure" for its Insurance Adjusters. Further, that this bonus structure is "tied" to how much money its Adjusters pay to Insureds such as Plaintiff Clemens. In the past few years when this specific claim was being handled, NYCM Insurance's profits were at an all-time low and it let its employees know by not giving them bonuses.

---

own policies and procedures in handling Plaintiffs' claim. Even more, NYCM Insurance did not send these documents despite them being requested until two (2) days before the Corporate Designee's deposition and years after they were initially requested by Plaintiffs.

[4] This adjuster within his deposition testimony admits that he, in essence, had to many cases to handle and could not give the proper attention to these claims.

This in turn encouraged NYCM Insurance Adjusters to pay less for valid claims such as Mr. Clemens so that they would have the opportunity to receive a "bonus" in their own checks at the end of the year.

The correspondence further evidences that NYCM required its Insured to resolve the bad faith portion of this case if they wanted to resolve the underinsurance portion of this case. NYCM Insurance has also represented that there is only $35,000 in coverage (in Pennsylvania the limits would be in addition to the 3rd party limits not reduced by them) since its Insured's already recovered $15,000 when in fact Pennsylvania is not a "gap" State.

Even after the adjustor handling the claim admitted that Pennsylvania Law applies, Defendants once again switched and claimed that New York law applies.

Even when a resolution was made between the parties for the underinsurance matter, NYCM's representative sent a letter in essence "pulling the rug out from Plaintiffs" and stating that this settlement would have to be for both the underinsurance and bad faith case. Plaintiff believes and therefore avers that this was the continuation of the "psychological warfare" the Insurance Company engaged in throughout this five year ordeal.

If all of this was not enough, through this litigation NYCM Insurance accused its Insured of Insurance Fraud, being a "Liar," as well as committing adultery on his

wife.[5]

## C. COMPREHENSIVE STATEMENT OF UNDISPUTED FACTS AS AGREED TO BY THE PARTIES

Please see, Plaintiffs' Proposed Statement of Undisputed Facts attached to Plaintiffs' Pre-Trial Memorandum as Exhibit "A". The parties were unable to reach an agreement to the same.

## D. DESCRIPTION OF DAMAGES

Since Plaintiffs' current cause of action is Bad Faith against Defendant, NYCM, Defendant's valuations of the physical bodily injuries received as a result of the motor vehicle collision made during the course and scope of Plaintiffs' underlying Underinsured Motorist claim, are a relevant consideration in Plaintiffs' current action. Also, at issue are Defendant's valuations of the economic and non-ecomonic damages, but not limited to Plaintiff's wage loss. These valuations were made during the course and scope of Plaintiffs' underlying UIM claim, and are a relevant consideration in Plaintiff's current action. The same would also be applicable in regards to Plaintiffs' pain and suffering valuation.

Moreover, Plaintiffs also testified as to the harms they suffered as a result of Defendant, NYCM's, handling of the claim. More specifically, Bernie Clemens

---

[5] As to not belabor and inundate this Court, Plaintiff refers This Court to the Plaintiffs' Complaint and Expert Report from Setcavage, as well as the remainder of Plaintiffs' Bates Stamped materials.

testified as follows:

> Q. In what ways has New York Central Mutual handling of this claim caused you harm?
>
> A. With the exception of being called a liar and fraud?
>
> Q. No, those included.
>
> A. You know, the lack of sleep—the –just wanting this—I don't know how to explain it...
>
> ...
>
> A. It's has caused a lot of turmoil between my wife and I.
>
> (Deposition transcript of Bernie Clemens, Plaintiffs' Bates Stamp 5750-5944). (See also, Deposition transcript of Nicole Clemens, Bates Stamp 5945-5979).

Plaintiffs claim all damages as testified in their deposition testimony, as requested in correspondences, requested in the civil complaint and that are applicable to a Bad Faith cause of action. See also, 42 Pa. Cons. Stat. § 8371(1), (2), and (3).

## E. NAMES AND ADDRESSES OF PLAINTIFFS' POTENTIAL WITNESSES

1. Bernie Clemens
   228 Cays Road
   Stroudsburg, PA 18360

2. Nicole Clemens
   228 Cays Road
   Stroudsburg, PA 18360

3. Stuart Setcavage
   Grant Building, Suite 711
   310 Grant Street
   Pittsburgh, PA 15219

4. Pete Favini, MD
   Pocono Medical Center
   206 East Brown Street
   East Stroudsburg, PA 18301

5. Ralf VanDer Sluis, M.D.
   Neurology Center
   232 Independence Road
   East Stroudsburg, PA 18301

6. Maurizio Cibischino, M.D.
   Mountain Valley Orthopedics
   600 Plaza Court, Suite C
   East Stroudsburg PA 18301

7. Chief D. Yeager
   A Pocono Country Place
   1 Country Place Drive
   Tobyhanna, PA 18466

8. AS IF ON CROSS EXAMINATION
   VanNess Daniel Robinson
   Albert Pylanski
   Diane Wildey
   James Dvoracek
   Joseph Catalano
   New York Central Mutual Insurance
   1899 Center Plaza East
   Edmeston, NY 13335

9. Charles E. Haddick, Jr., Esquire

10. Bryon R. Kaster, Esquire

11. Any and all necessary rebuttal witnesses.

## F. SUMMARY OF PLAINTIFFS' EXPERT WITNESS TESTIMONY

Please see, Plaintiffs' Expert Report of Stuart Setcavage, attached hereto and made a part hereof to Plaintiffs' Pre-Trial Memorandum as "Exhibit B".

## G. SPECIAL COMMENT ABOUT PLEADINGS/DISCOVERY

None at this time. However, Plaintiffs reserve the right to supplement at the Pre-Trial Conference.

## H. SUMMARY OF LEGAL ISSUES AND LEGAL AUTHORITIES RELIED UPON

1. Bad Faith

   (a) Legal Issue: Whether Defendant NYCM breached its duty of good faith and fair dealing, arising from the insurance contract with Plaintiffs, in the

handling of the underlying underinsured motorist claim.

(b) Legal Authority

- (i) "[I]n Pennsylvania, a contractual common law duty of good faith and fair dealing is implied in insurance agreement." Benevento v. Life USA Holding, Inc., 61 F.Supp. 2d 407, 424 (E.D. Pa. 1999).

- (ii) "Under the duty of good faith and fair dealing, the insurer need only accord the interest of the insured the same faithful consideration it gave its own interest; the good faith standard requires that the evaluation of the case by the insurance company most be honest, intelligent and objective." Keefe v. Prudential Prop. & Ins. Co., 203 F.3d 218, 227 (3d. Cir. 2000).

- (iii) Pennsylvania's Bad Faith statute, 42 Pa. Cons. Stat. § 8371 provides:

    In an action arising under an insurance policy, if the court finds that the Insurer has acted in bad faith toward the insured, the court may take all of the following actions;

    - (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

    - (2) Award punitive damages against the insurer.

    - (3) Asses court costs and attorney fees against the insurer.

- (iv) "...Any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct

1. After review of Defendant's proposed Points for Charge, Plaintiffs have concerns and objections regarding the same.

2. In regard to Defendant's proposed exhibit list, Plaintiffs have agreed to the authenticity of the documents. However, Plaintiffs have not agreed on the admissibility of the documents in Defendant's exhibit list.

3. Defendant in its previously filed Pretrial Memorandum raise issues with Plaintiffs' employment. One of the determinate issues in this case is what materials Defendant had at the time of evaluation. Unless Defendant had this employment information at the time of evaluation, it is not relevant.

4. Plaintiffs are seeking this Honorable Court to hold a separate hearing in regards to punitive damages and/ or attorneys' fees should the jury find in favor of Plaintiffs.

    a. Should this Honorable Court determine attorneys' fees should be a determination to be made by a jury, Plaintiffs respectfully request the jury to determine only if Plaintiffs are entitled to attorneys' fees without the specific monetary award determined. If the jury determines an award of attorney's fees is appropriate, Plaintiffs respectfully request the judge to review and determine the reasonableness as to rate and time of the submitted attorneys' fees.

    b. The same process should be applied to the interest determination.

imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will;..." <u>Terletsky v. Prudential Prop. & Cas. Ins. Co.</u>, 649 A.2d 688 (Pa. Super. Ct. 1994).

## I. STIPULATIONS DESIRED

1. The authenticity of the Expert Report/CV of Plaintiffs' Insurance Expert, Stuart Setcavage.

2. The admissibility of Plaintiffs' Statement of Undisputed Facts.

The parties have stipulated to the authenticity of each exhibit referred to in Plaintiffs' exhibit list. Whether the parties are able to agree upon the admissibility of the Defendants' proposed exhibits depends upon the testimony presented at time of trial and the purpose for which the exhibits are being offered. Plaintiffs also request that the parties stipulate to each and every fact set forth in Plaintiffs' comprehensive statement of undisputed facts.

## J. EXPECTED LENGTH OF TRIAL

Plaintiffs estimate that this case will require 5 to 6 days of trial not including jury selection.

## K. ANY OTHER PERTINENT MATTER

Plaintiffs respectfully submit the following issues:

    c. Should this Honorable Court determine a punitive damage issue should be a determination to be made by a jury, Plaintiffs respectfully request a separate second hearing be held in regard to the punitive damages.

If the aforementioned is not agreeable, Plaintiffs reserve their right to modify their proposed jury instructions and/or verdict slips to address these issues.

## L. PLAINTIFFS' SCHEDULE OF PRE-NUMBERED TRIAL EXHIBITS

Plaintiffs' scheduled of exhibits is attached hereto and made a part hereof as "Exhibit C." Plaintiffs respectfully request the same be admitted. By way of further, response, Plaintiffs reserve the right to supplement this response at the time of the Pre-Trial Conference.

## M. SPECIAL VERDICT QUESTIONS

Plaintiffs' proposed special verdict questions are appended hereto as Exhibit "D".

## N. DEFENDANT'S STATEMENT OF SETTLEMENT AUTHORITY

Plaintiffs defer to Defendant's Pre-Trial Memorandum as to this specific issue.

## O. CERTIFICATE OF CONSULTATION ON DEPOSITIONS PURSUANT TO L.R. 30.10

Pursuant to L.R. 30.10, Plaintiffs' Counsel hereby certifies that he will meet with opposing counsel prior to the start of trial and put forth a good faith effort to eliminate any irrelevancies, side comments, or objections that are not necessary for consideration by the trier of fact.

Respectfully submitted,

The Pisanchyn Law Firm

Date: September 23, 2015                By:<u>Michael J. Pisanchyn, Jr., Esquire</u>
                                        Michael J. Pisanchyn, Jr., Esquire
                                        I.D. 87542
                                        524 Spruce Street
                                        Scranton, PA 18503
                                        570-344-1234
                                        Attorneys for Plaintiffs

Date: September 23, 2015                By:<u>/s/ Marsha Lee Albright, Esquire</u>
                                        Marsha Lee Albright, Esquire
                                        I.D. 92765
                                        524 Spruce Street
                                        Scranton, PA 18503
                                        570-344-1234
                                        Attorneys for Plaintiffs