IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BERNIE CLEMENS AND NICOLE CLEMENS,** | Civil Action No. 3:13-cv-02447 |
| Plaintiffs, | |
| v. | [Mannion, J.] |
| **NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY AND/OR NYCM INSURANCE GROUP AND/OR NYCM HOLDINGS, INC.,** | JURY TRIAL DEMANDED |
| Defendant. | ELECTRONICALLY FILED |

**DEFENDANTS' TRIAL BRIEF**

**I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

This insurance claim was resolved within four days of the Plaintiff providing his insurance company what it had been requesting, over and over again, for three years.

On August 26, 2009, Plaintiff, Bernie Clemens, was the passenger in a vehicle owned and driven by Timothy Kruger that was struck by a vehicle driven by Ana Burrell. Ms. Burrell was at fault and was insured by Allstate Insurance Company pursuant to a policy of insurance that provided $15,000 in liability coverage.

On June 21, 2011, Plaintiffs' attorney, Keith Figured, Esquire, sent a letter to Defendant advising that a settlement had been reached with Allstate

1

and asserting a Supplementary Underinsured Motorist ("SUM") claim under Mr. Kruger's insurance policy ("the Policy"). Defendant NYCM will prove at trial that the Plaintiff was solely responsible for the three year period which followed before the claim was resolved in June, 2014.

### Plaintiff Refused to Provide Medical Authorizations

Defendant immediately sought authorizations from Plaintiffs in order to obtain medical and wage information relevant to Plaintiff's SUM claim.[1] To this end, the express terms of the Policy provide that any person making a claim under the Policy; i.e., the Plaintiffs, must "Authorize [Defendant] to obtain: a. Medical reports; and b. Other pertinent records." However, for almost three and a half years, Plaintiffs refused to provide Defendant with signed authorizations to obtain records relevant to their SUM claim. From April 12, 2010 until September 23, 2013, Defendant and its attorneys sent numerous letters to Plaintiffs' attorneys requesting authorizations. Upon notice of a "potential" SUM claim on April 12, 2010, Defendant sent a letter to Plaintiffs' counsel requesting that Plaintiffs provide certain information,

---

[1] On April 1, 2010, Plaintiffs' counsel, Michael Pisanchyn, Esquire, had sent a letter on Plaintiffs' behalf advising Defendant that "any and all authorizations and the like Mr. Bernie Clemens may have signed are immediately revoked." Accordingly, Defendant had to obtain new authorizations.

including "[m]edical and wage authorizations allowing the release of [Plaintiffs'] records."

After Plaintiffs asserted their SUM claim, Defendant's counsel, Jeffrey Kirsch, Esquire, sent his first letter asking that Plaintiff provide signed authorizations on September 20, 2011. Attorney Kirsch sent follow up letters requesting the authorizations on October 18, 2011, October 28, 2011, December 2, 2011, January 3, 2012, and February 23, 2012.

In addition to the six (6) letters from Attorney Kirsch, Defendant's second attorney, Charles E. Haddick, Jr., Esquire, sent letters to Plaintiffs' counsel requesting signed authorizations on December 26, 2012 and January 23, 2013. Plaintiffs did not provide Defendant with executed authorizations until January 25, 2013. However, because the records received pursuant to the initial authorizations revealed additional medical providers that had not previously been disclosed by Plaintiffs, Attorney Haddick sent another letter on June 13, 2013 to Plaintiffs' counsel requesting signed authorizations to obtain the additional records. On July 10, 2013, July 31, 2013, August 13, 2013, August 23, 2013, and August 27, 2013, Attorney Haddick sent letters to Plaintiffs' counsel following up on the request for authorizations to obtain the additional records. Plaintiffs did not provide Defendant with the executed

authorizations until September 23, 2013, over three (3) months after the additional authorizations were first requested by Attorney Haddick and, indeed, approximately one month after Plaintiffs filed the instant lawsuit on August 26, 2013, alleging that Defendant acted in bad faith by failing to "promptly offer payment of the reasonable and fair value of the claim to the Plaintiffs."

### **Plaintiff Refused to Submit To An Examination Under Oath**

In addition to refusing to provide signed authorizations, Plaintiffs also did not cooperate with the scheduling of their examinations under oath, even though the Policy required the Plaintiffs to "Submit, as often as we reasonably require… b. To examination under oath and subscribe to same." On November 13, 2012, Attorney Kirsch scheduled Mr. Clemens's Statement Under Oath for December 27, 2012. On November 21, 2012, Plaintiffs' attorney, M. Lee Albright, advised Attorney Kirsch in a letter that "Mr. Clemens will not be attending the December 27, 2012 Statement Under Oath…" On March 17, 2014, Plaintiffs' examinations under oath and depositions were noticed by defense counsel, Bryon R. Kaster, Esquire, for Thursday, April 10, 2014. On April 4, 2014, however, Attorney Albright cancelled the examination under oath by sending a letter stating that "Plaintiffs unfortunately are not in

4

position to move forward with the depositions originally noticed for Thursday, April 10, 2014."

### **Plaintiff Delayed And Obstructed His UM/UIM Litigation**

Even after they filed the instant lawsuit arising from their SUM claim, Plaintiffs still refused to cooperate with Defendant's investigation, and their failure to answer straightforward discovery resulted in unnecessarily protracted discovery requiring the filing of several motions to compel by Defendant, all of which were granted. Written discovery in this matter commenced on November 11, 2013 when Defendant served Interrogatories and Request for Production of Documents on Plaintiffs. On March 11, 2014, a full three months after their answers were due, Plaintiffs finally provided "Responses and Objections" to the request for production of documents and "Answers and Objections" to the interrogatories. On March 8, 2014, Defendant served Interrogatories / Request for Production of Document to Plaintiff (Set 2). Plaintiffs provided responses on April 25, 2014 - almost a month after the answers were due – entitled: "Answers & Objections" to the Interrogatories / Request for Production of Documents to Plaintiff (Set 2). Plaintiffs' specious objections necessitated the filing of two (2) separate motions to compel, both of which were granted by this Honorable Court on

June 4, 2014. In granting the motions, the Court described the interrogatories and requests as largely "straightforward, unremarkable, and obviously relevant." On June 16, 2014, Plaintiffs provided "Supplemental Answers & Objections" to Defendant's Interrogatories, as well as W-2 information that had been ordered to be produced by the Court. Four days later, on June 20, 2014, the SUM claim settled.

## Plaintiff Provided Conflicting and Questionable Evidence In Support of His UM/UIM Claim

In addition to the delay caused by Plaintiffs' failure to cooperate in the investigation of their claim, Plaintiffs' SUM claim was also complicated by the fact that Plaintiffs provided varying and inconsistent descriptions of Mr. Clemens's injuries. For example, Plaintiffs submitted a Notice of Intention to Make Claim on July 6, 2010 describing Mr. Clemens's injuries as: "Injuries include but not limited to shoulder, back, nose, head, whiplash, + cuts." However, Plaintiffs had previously submitted an Application for Motor Vehicle No-Fault Benefits on or about September 29, 2009 describing his injuries as: "Broken vert. neck / Compression fractures / face lacerations."

Furthermore, Plaintiffs and their attorneys misrepresented the nature and extent of Mr. Clemens's injuries. For instance, Plaintiffs' counsel's sent a

letter on May 25, 2011 representing the following regarding Mr. Clemens's injuries: "On March 3 Bernie presented back to the Neurology Center. He was seen by Dr. Nathan Carr. Dr. Carr stated Bernie was suffering from L5 radiculopathy, L5 compression fracture, cervical spine desiccation, and C2 fracture." However, the record from March 3, 2010 that was referred to in the letter did not indicate that Mr. Clemens suffered a L5 compressions fracture, but, rather, the record noted a "***questionable*** history of L5 compression fracture" and "***questionable*** history of C2 fracture that apparently has not been evident on studies."

In paragraph 54 of the Complaint, Plaintiffs alleged that "Plaintiff, Bernie Clemens … will have to, and/or may have to undergo serious medical treatment, including surgery to help him deal with pain and injuries sustained in this incident." However, none of Mr. Clemens's records indicated that he would have to undergo surgery, and, in fact, during his deposition after the SUM claim settled, Mr. Clemens admitted that he had no recollection of any of his doctors telling him that he would have to undergo surgery.

### Plaintiff Failed to Provide Wage Loss Information

Plaintiffs' SUM claim was yet further complicated by their claim for lost earnings that was entirely lacking any supporting evidence. While Mr.

Clemens's earnings did appear to decrease following the accident, it did so as a result of circumstances entirely unrelated to the accident. According to his employer's records, on December 29, 2009, while employed at Pocono Country Place, Mr. Clemens was demoted from the rank of Sergeant to the rank of Patrol Officer for failing to "properly supervise shift." Thereafter, Pocono Country Place terminated Mr. Clemens's employment effective February 24, 2010 for violation of the company's "policy + procedure," and, in particular, "falsifying patrol logs." Nevertheless, Plaintiffs, through their attorneys, continued to claim up until the settlement of the SUM claim that Mr. Clemens suffered lost earnings as a result of the accident.

*Within four days of Plaintiff's finally furnishing wage loss information on June 16, 2014, NYCM settled his UM/UIM claim on June 20, 2014.*

## II. QUESTION PRESENTED

    A. **Can the Plaintiff Prove By Clear and Convincing Evidence That NYCM Acted In Bad Faith Pursuant to 42 Pa.C.S.A. §8371?**

       **[Suggested Answer In The Negative]**

## III. ARGUMENT

### A. Plaintiff Cannot Prove By Clear and Convincing Evidence That NYCM Acted In Bad Faith Pursuant to 42 Pa.C.S.A. §8371

Pennsylvania's bad faith statute, 42 Pa.C.S.A. §8371, provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. §8371.

The statute does not define "bad faith"; however, appellate courts within Pennsylvania, including the Third Circuit Court of Appeals, have defined "bad faith" on the part of an insurer as:

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Terletsky v. Prudential Property and Casualty Ins. Co., 437 Pa. Super. 108, 649 A.2d 680, 688 (Pa.Super. 1984)(quoting Black's Law Dictionary 139 (6th ed. 1990))(citations omitted); see, also, Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005)(predicting that the Pennsylvania Supreme Court would define "bad faith" according to the definition set forth in Terletsky).

In order to recover on a bad faith claim, a plaintiff must show both "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997), citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa.Super. 1994). Harm is also "an essential element of a bad faith claim." Kubrick v.

Allstate Ins. Co., 2004 WL 45489, at *10 (E.D.Pa. 2004). "[A] plaintiff in a bad faith claim must show that the outcome of the case would have been different if the insurer had done what the insured wanted done." Blaylock v. Allstate Ins. Co., 2008 U.S.Dist.LEXIS 1098 (M.D.Pa. 2008)(Caldwell, J.), citing, Zappile v. AMEX Assurance Co., 928 A.2d 251, 262 (Pa.Super. 2007).

Moreover, the "issue in a bad faith case is whether the insurer acted recklessly or with ill will towards the plaintiff in a particular case, not whether the defendants' business practices were generally reasonable." Santer v. Teachers Ins. and Annuity Association, 2008 WL 755774 (E.D.Pa. 2008). "[A]n insurance company's review of a claim file need not conform to a perfect standard in order to avoid liability for bad faith." Id.

Furthermore, delay, alone, does not give rise to a finding of bad faith. See Aquila v. Nationwide Mut. Ins. Co., 2008 U.S.Dist.LEXIS 101518, *32 (E.D.Pa. 2008)("It is well-settled, however, that a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith."). Rather, "legitimate, if frustrating delays that are an ordinary part of legal and insurance work" do not constitute bad faith. See Kosierowski v. Allstate Ins. Co., 51 F.Supp.2d 583, 590 (E.D.Pa. 1999). "In determining whether delay is indicative of bad faith, courts have looked to the degree to which a defendant insurer *knew* that it had no reasonable basis to deny the

claimant; if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." Brown v. Great Northern Ins. Co., 2009 WL 453218, *5 (M.D.Pa. 2009)(emphasis in original; internal quotations omitted).

Plaintiffs have the burden of proving bad faith by "clear and convincing evidence." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005).

The evidence at trial will show that the delay – which was considerable – was caused solely by Plaintiffs and their attorneys' failure to cooperate in the Defendant's investigation of the SUM claim by not providing authorizations, refusing to submit to an EUO, and failing to answer straightforward discovery requests after this lawsuit was commenced, as well as inconsistent descriptions of Plaintiff's injuries and Plaintiffs' and their attorneys' misrepresentation of the nature and extent of Mr. Clemens's injuries. Accordingly, given the evidence that will be presented at trial, a jury cannot find bad faith on the part of Defendant by the stringent level of clear and convincing evidence.

## **Reverse Bad Faith of the Plaintiff**

Both the insured and the insurer share the duty to act in good faith under an insurance contract. Federal courts have held that such a rule is in conformity with the language of Section 205 of the Restatement (2d) of Contracts and not inconsistent with Pennsylvania precedents. <u>Greater New York Mutual Insurance Co. v. North River Ins. Co.</u>, 872 F. Supp 1403, 1407-1408, as cited in, <u>Garvey v. National Grange Mutual Insurance Company</u>, 1995 WL 461228 (E.D.Pa. 1995 at p. 2. *See also*, Richard McMonigle, Jr., Ed., <u>Insurance Bad Faith In Pennsylvania, 5th ed</u>. (Philadelphia: ALM Publishing, 2005), sections 17:01 through 17:05. See also, <u>New Concept Beauty Academy v. Nationwide Mutual Ins. Co.,</u> No. Civ. A. 97-5406, 1997 WL 746203 (E.D. Pa. Dec. 1, 1997); see also, <u>Keefe v. Prudential Property and Casualty Ins. Co.</u>, 1998 WL 409011 (E.D. Pa.) at p. 3.[2]

The conduct of an insured who delays claims investigation, and does not cooperate by providing requested documents is germane to bad faith analysis. See, <u>Somerset Industries v. Lexington Insurance Co.</u>, Slip Copy, 2009 WL 1971385 (E.D.Pa. 2009)( insured contributed to delay in claims investigation.)

---

[2] Defendants have pled the Plaintiff's delay, lack of cooperation, and provision of conflicting and inconsistent information with respect to the subject insurance claim as an affirmative defense. See, Answer to the Complaint, Doc. ___ at par. 81.

Reverse bad faith has been recognized as the legitimate subject of bad faith litigation in this district. See also, e.g., Javorski v. Nationwide Insurance, Civil Action No. 3:06-CV-1071, at pp. 6-8 (M.D. Pa. November 30, 2006)(Conaboy, J)(specifically authorizing a reverse bad faith claim against an insured), attached hereto as Exhibit A. A copy of this opinion is attached hereto as Exhibit A. See also, Shannon v. New York Central Mutual Insurance Company, Civil Action No. 3:13-CV-1432, at pp. 4-5 (Conaboy, J.)(reverse bad faith an appropriately pled defense under FRCP 8(c). A copy of this opinion is attached hereto as Exhibit B.

 NYCM will prove that the Plaintiff's conduct not only was the sole cause of the delay in the resolution of his claim, but that the Plaintiff's had, and breached, their own duty of good faith and fair dealing under Pennsylvania law. The failure to provide medical and wage information after repeated requests, failure to submit to an examination under oath, and the providing of inconsistent and conflicting information all constitute breaches of the Plaintiff's duty of good faith and fair dealing under Pennsylvania bad faith law. Such conduct is a legitimate subject matter, and provides a defense to an insurer, in a bad faith case.

## IV.   CONCLUSION

This insurance claim was resolved within four days of the Plaintiff providing his insurance company what it had been requesting repeatedly for three years. The Plaintiff cannot prove via clear and convincing evidence that NYCM was guilty of bad faith. To the contrary, the evidence will show that the Plaintiff, who delayed his own claim for three years and provided inconsistent information, breached his duty of good faith and fair dealing, a duty which is a bilateral one in every insuring agreement, under Pennsylvania law.

>Respectfully submitted,
>
>**DICKIE, McCAMEY & CHILCOTE, P.C.**

Date: <u>October 28, 2015</u>    By: <u>/s/ *Bryon R. Kaster*    </u>
Bryon R. Kaster, Esquire
Attorney I.D. No. 91707
Plaza 21, Suite 302
425 North 21st Street
Camp Hill, PA  17011-2223
717-731-4800
*Attorney for Defendants, New York Central Mutual Fire Insurance Company and/or NYCM Insurance Group and/or NYCM Holdings, Inc.*

Date: <u>October28, 2015</u>    By: <u>/s/ *Charles E. Haddick, Jr.*    </u>
Charles E. Haddick, Jr., Esquire
Attorney I.D. No. 55666
Plaza 21, Suite 302
425 North 21st Street
Camp Hill, PA  17011-2223
717-731-4800
*Attorney for Defendants, New York Central Mutual Fire Insurance Company and/or NYCM Insurance Group and/or NYCM Holdings, Inc.*

3069326.1

# **CERTIFICATE OF SERVICE**

AND NOW, October 28, 2015, I, Charles E. Haddick, Jr., Esquire, hereby certify that the foregoing document has been electronically filed and is available for viewing and downloading from the ECF system by the undersigned counsel of record.

    M. Lee Albright, Esquire
    Michael J. Pisanchyn, Jr., Esquire
    Pisanchyn Law Firm
    524 Spruce Street
    Scranton, PA  18503

Date: October 28, 2015       By:    <u>/s/ Charles E. Haddick, Jr., Esquire</u>