**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BERNIE CLEMENS and | : | CIVIL ACTION NO: |
| NICOLE CLEMENS, | : | |
| | : | 3:13 –CV-02447 |
| Plaintiffs, | : | |
| v. | : | |
| | : | Judge Mannion |
| NEW YORK CENTRAL MUTUAL | : | |
| FIRE INSURANCE COMPANY | : | |
| and/orNYCM INSURANCE GROUP | : | |
| and/or NYCM HOLDINGS, INC. | : | ELECTRONICALLY FILED |
| Defendants. | : | |
| | : | JURY TRIAL DEMANDED |

## PLAINTIFFS', BERNIE CLEMENS AND NICOLE CLEMENS, BRIEF IN SUPPORT OF PLAINTIFFS' PETITION FOR ATTORNEYS' FEES, INTERESTS AND COSTS

AND NOW comes Plaintiffs, Bernie Clemens and Nicole Clemens, by and through their undersigned counsel, respectfully submits their Brief in Support of Plaintiffs' Petition for Attorneys' Fees, Interests and Costs, and respectfully submits as follows:

### I.   Factual/Procedural Background

Mr. Clemens was a passenger in a vehicle that was struck by a third party tortfeasor.  As evidenced in the medical and all records in the Insurance Companies possession, Mr. Clemens was injured through no fault of his own. The third party Insurance tendered its limits rather quickly with the Insurance Carrier Mr. Clemens was a passenger in, New York Central Mutual Fire

Insurance Company (hereinafter NYCM Insurance), having applicable under Insurance.

A straight forward underinsurance claim which the Insurance Company represented the limits at only $35,000 turned into close to 5 years of litigation. During these years of litigation there was over 200 filings filed with Your Federal Court.

Plaintiffs filed suit against NYCM Insurance alleging bad faith on over seven different grounds. The trial lasted five days with the culmination of the 8 member jury unanimously deciding by clear and convincing evidence that NYCM Insurance did in fact act in Bad faith and unfair dealing towards its Insured. After the unanimous verdict, the 8 member jury by clear and convincing evidence awarded $100,000 for the reckless conduct of Defendant NYCM Insurance; and also to send a message to other Insurance Companies that NYCM actions and inactions would not be tolerated in a civilized society.

On November 6, 2011, a judgment of the jury of $100,000 was entered into the docket.  As a result of the above, Plaintiffs brings this instant Petition seeking Attorneys' Fees, Interests and Costs, in accordance with the Federal Rules of Civil Procedure, the Bad Faith Statute, as well as the Pennsylvania Rules of Civil Procedure.[1]

---

[1] Plaintiffs have also filed their Bill of Costs.  This was not done as intentional redundancy, but as a

## II.   Questions Presented

### A.  Whether Plaintiffs are entitled to the award of attorney's fees, interest, and costs pursuant to Civil Procedure, Bill of Costs and 42 Pa.C.S., §8371 as well as an enhancement of fees?

**Suggested response:  In the affirmative.**

## III.   Argument

### <u>PLAINTIFFS SHOULD BE AWARDED ATTORNEYS FEES</u>

Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. Section 8371 state, Your Court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2)  Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

The parties agreed that the jury would determine if the Defendants committed bad faith by clear and convincing evidence. The parties agreed if so the jury would determine the amount of punitive damages. The parties also agreed that if the jury did both of the above, then Your Court would award the amount of interest,

precautionary measure in securing the costs owed to Plaintiffs

attorney's fees and costs as per the law. Since the jury, unanimously based on the

clear and convincing evidence proved by Plaintiffs, have in fact found in favor of

Plaintiff and awarded punitive damages Your Court now has been petitioned and bill

of costs filed to determine the other amounts as agreed to by the parties and as

required by Law, Rule(s), and Statute(s).

42 Pa. C.S.A. § 8371.

The purpose of an award of attorneys' fees, interests, and costs, upon a finding

of bad faith, is to make an insured whole.  Terletsky v. Prudential, 437 Pa. Super.

108, 649 A.2d 680 (1994).  As stated in Jurinko and Campbell,

> "A victim of bad faith by an insurer is left less than whole not only by the
> denial of benefits of the policy but also the legal fees it was forced to incur to
> prove the denial was in bad faith.  An award of attorneys' fees in addition to
> the benefits of the policy works to make the insured completely whole."
> Jurinko v. The Medical Protective, 2006 U.S. Dist. LEXIS 42923 (E.D.Pa.),
> quoting State Farm Mutual v. Campbell, 538 U.S. 408, 425 (2003).

An insured should not be required to pay from the proceeds of a claim,

wrongfully withheld, the costs of litigation since the purpose of the Bad Faith Statute

is to allow an insured to recoup the funds unnecessarily expended to force a

Defendant Insurance Company to pay that which they should have paid in the first

place.  Polselli v. Nationwide, 156 F.3d 524 (3d. Cir. 1997). The entitlement to the

fees apply to both the services rendered for the putting forth of the Bad Faith cause

of action as well as the time and efforts spent on the underlying underinsured

motorist claim. (Polselli, Id.)

In the matter at hand, Defendant, NYCM Insurance Company actions and in-actions as delineated at length in Expert Setcavage's report marked as an exhibit of record and proved by clear and convincing evidence at time of trial by Plaintiffs, delayed and in fact did not pay the proper amount of Plaintiffs' underlying underinsured motorist claim.  Defendant NYCM's conduct forced the Clemens family to hire an attorney in order to enforce their rights under the insurance contract.  As such, a separate award of attorney's fees is necessary in this matter in order to make the Plaintiffs whole.  (See <u>Polselli v. Nationwide Mut. Fire Ins. Co.</u>, Id.)

Defendant NYMC's conduct from the inception, and as determined unanimously by the jury of 8, was clearly bad faith and not fair dealing with its Insured the Clemens. The testimony, and case presented by Plaintiff, demonstrated that there were over seven material breaches that established the Defendant NYCM Insurances reckless behavior which was motivated by its own financial interests. The testimony, amongst numerous other violations, demonstrated the Defendants refused to create and produce authorizations, refused to hold a statement under oath in a reasonable time period and reasonable distance, refused to pay the proceeds it knew was due and owing, and refused to arbitrate the case which would have saved Plaintiff substantial attorney's fees and costs; all motivated by its own financial interests.

Plaintiff stated the point of the Bad Faith Statute is to level the playing field between persons situated such as the Plaintiffs and big insurance companies who have millions (in this case over 400 million) in surplus and can only have a level playing field in the court system. See trial testimony

The evidence the jury agreed with when rendering its verdict and award was that NYCM was in possession of all and any materials it needed to pay the limits of this case. Despite NYCM Insurance having this information it continually requested the same information as well as made its Insured "jump through hoops" so that NYCM could protect what it held so dearly, that is its money[2].

Due solely to NYCM Insurance actions in not paying this minimal amount of Insurance, Plaintiffs were forced to produce over 7000 pages of materials, but not limited to correspondence, medical records, and expert reports to prove Defendants bad faith. Defendants did everything in its power to wear down Plaintiffs with "papering to death this case" in hopes Plaintiff and their attorneys would be forced to give in and accept anything the Defendant would offer.

The Defendants even continued this approach to make Plaintiffs file documents and to try to muddle the case up to the eve of trial by filing Motions in Limine both untimely and redundant in nature where this Honorable Court had

---

[2] The Plaintiff finds no reason to go on about Defendants actions and inactions since the five day trial recently ended and there is a trial transcript that sets forth at length all witness sworn testimony, exhibits and Plaintiff and Defendant's arguments to the jury. Suffice to say the jury sided with Plaintiffs and awarded a substantial sum of money to Plaintiffs for Defendants reckless and punitive actions and inactions.

already made determinations on the exact issues in which Defendant alleged.

As a result of Defendant's conduct the docket on this matter grew to over 200 filings causing Plaintiffs' Counsel to be forced to respond to the continual barrage of redundant materials without ever substantially responding to Mr. Clemens request for an evaluation of his underinsured motorist claim.  The consequence of Defendant's actions to "beat into submission" Plaintiffs and their attorneys has now resulted in over 2478 hours of services rendered by Plaintiffs' Counsel during the course of the underinsured and Bad Faith Cause of action.  (Please see Exhibit 1 and Exhibit 2 of Plaintiffs' instant Petition.)

The Defendants actions, by a simple hindsight review of the dockets, will clearly demonstrate what Defendant NYCM's litigation strategy was during this case; delay, increase Plaintiff's costs, increase Plaintiffs hours put into the case, and increase Plaintiffs and Plaintiff's attorneys risk to the point where there would be no choice but to give in. Now, since Plaintiff has prevailed, Defendant must be held responsible for the fees and costs it solely created because of the course/strategy it consciously decided to undertake in this litigation.

In light of the above, Plaintiffs have respectfully requested this Honorable Court to award the Lodester calculated fees to make the Plaintiffs whole[3].

---

[3] See all documents filed, trial testimony, and Plaintiff's petition wherein the enhancement is requested for Plaintiff's position and all reasons for the upward percentage the court should add to the base attorney fees Plaintiff has submitted.

## FEE ENHANCEMENT PURSUANT TO PA. R.C.P 1716

When calculating a reasonable award of attorneys' fees under the provisions of 42 Pa. C.S.A., 8371, the trial court should consider the factors set forth in Pa. R.C.P. 1716, The time and effort that was reasonably expended by the attorneys in litigation; (here it was most certainly substantial as evidence by Plaintiff's submissions); the quality of the services rendered; (here the Plaintiff's prevailed and even without presenting Plaintiffs, the jury awarded $100,000 of punitive damages unanimously and by clear and convincing evidence); the results achieved and the benefits conferred upon the public; (Punitive Damages have a strong deterrent value along with the attorney's fees and cost will be sure other Insurance Companies treat its Insured in good faith and fair dealings); the magnitude, complexity and uniqueness of the litigation; (this case was complex and unique in numerous regards including which State law applied, the seatbelt defense issue, if Plaintiffs had to actually produce authorizations or only sign them, did the Plaintiff have to travel to New York for a statement under oath despite being from Pennsylvania much of which was questions of first impression(s)); and Whether the receipt of a fee was contingent on success. (Here the Defendants intentionally created substantial risk with costs and hours it made Plaintiff's attorney invest in this case hoping that the pressure would force the Plaintiffs to accept a settlement and a jury would not have the opportunity to judicially determine the Defendant NYCM Insurance actions and

inactions were bad faith and reckless when awarding punitive damages) (<u>Polselli,</u> <u>Id.</u>)

The calculation of reasonable attorneys' fees for bad faith by an insurer in handling a claim should begin with the actual number of hours spent in pursuing the claim multiplied by a reasonable rate. Both the number of hours and the rate per hour should be calculated on a basis reasonably reflective of the relevant market and the magnitude, complexity and uniqueness of the claim and the related task. <u>Birth</u> <u>Center v. St. Paul Companies, Inc.,</u> 727 A.2d 1144 (Pa.Super 1999). In the present case, Plaintiffs have submitted this evidence within its petition including affidavits and exhibits in terms of the dollar amount per hour. Further, Plaintiffs have submitted the hours employed solely in relation to this case.

Here, the total number of hours expended by Plaintiffs' counsel in pursuit of this matter over the period of over 5 years certainly reflects a reasonable amount of time, especially given the litigation posture adopted by Defendant, NYCM Insurance. Despite NYCM Insurance having numerous documents and continually receiving updated records, it never once reconsidered its position. NYCM made issues of every aspect of the underlying underinsured motorist claim and bad faith case, but not limited to unilaterally scheduling Statements Under Oath out of State, refusing to send authorizations like Insurance Adjuster Dvorcek stated NYCM always had done, as well as numerous other delay and aggressive litigation tactics.

The Defendants turned this simple straight forward underinsured claim into a complex, large magnitude, and very unique claim. Defendant created a multitude of "issues," which delayed and required large amounts of research, work and hours of time as evidence by the docket and over 7000 documents produced and bates stamped at time of trial by Plaintiffs not including Defendants own exhibits. All of this litigation strategy by Defendant NYCM very well could have resulted in non-payment of attorneys' fees either by wearing down the will of the attorney; and/or clients; and/or; Your Court; and/or the Jury.

Throughout this process, Plaintiffs incurred substantial risk after substantial delay and costs that they might never recover.  Defendant was hoping that Plaintiff had too much costs into the case and working on a contingent fee agreement had too much risk and would be forced by Defendants to take any settlement the Defendants would offer. Due to the substantial risk of non-recovery undertaken by Plaintiffs without any guarantee of payment, as well as all other factors specifically references in Plaintiffs Petition, the case, documents filed and this brief, Plaintiffs are entitled to a substantial enhancement pursuant to Pa. R.C.P. 1716.

As a result of the efforts of counsel, the Plaintiffs were awarded a jury verdict in their favor of $100,000 in punitive damages against Defendant, NYCM.  In fact, NYCM never made **<u>any</u>** written offer to resolve the Bad Faith case. It was only a

few days before trial, after Plaintiff expended tens of thousands of dollars on experts and costs, as well as hundreds upon hundreds of hours of time, Defendant made an oral offer. Instead, NYCM maintained their posture right up to the trial in hopes of beating Plaintiffs into submission.

The litigation in the lawsuit was large in scope and fairly complicated.  A number of witnesses were compelled to testify live at time of trial to assist the jury in understanding the complex issues.  This Honorable Court permitted the testimony of Plaintiffs' expert, Mr. Setcavage, based on the complicated nature of the case including the seatbelt defense, what state law applied as well as other numerous issues which were decided in the first instance in this litigation.  The number of exhibits which were presented were staggering, not to mention countless Motions in Limine filed by the parties.

As indicated, the Contingency Fee Agreement entered into between Mr. and Mrs. Clemens and their attorneys made the payment of counsel fees contingent upon a successful result.  This was an enormous risk of both money and time by Plaintiff's attorneys. In light of all of the above, Plaintiffs should be entitled to the enhancement of fees pursuant to Pa. R.C.P. 1716.

<u>INTEREST</u>

As per the agreement, now that the jury unanimously by clear and convincing evidence have held the Defendant liable and awarded punitive damages for the

reckless conduct of Defendants actions and inactions, Plaintiffs requests interest be

paid as per the Bad Faith Statute. Defendant NYCM Insurance has had access to this

money and used it for almost 5 years while the Clemens were forced to wait. Justice

requires Plaintiffs to receive the statutory interest on this money which is currently

due and owing.

## COSTS

Like attorneys' fees, an award of costs under Section 8371 is designed to

make the Plaintiffs whole.  One of the purposes of Section 8371 is to punish an

insurance company who has acted in bad faith to deter their similar future conduct.

Throughout the process, Plaintiffs were forced to expend approximately

$43,871.43 in costs in the underlying underinsured motorist claim and in the present

litigation.  Section 8371 places no limitation upon Court costs.  In determining the

payment of the same, this Honorable Court's inquiry should be toward that which is

necessary to fulfill the legislative purpose behind Section 8371.  In light of the same,

NYCM should be required to reimburse these costs to Plaintiffs in order that

Plaintiffs be made whole.

## ATTORNEYS' FEES REQUESTED FOR SERVICES PROVIDED IN THE INSTANT PETITION

The Court of Appeals also determined that Pennsylvania courts allow attorney

fees for the time spent preparing and litigating the fee petition itself.  Polselli, 126

F.3d at 538.  This is permissible except unless the efforts to receive the same are

directly and solely to benefit the attorney and not the client.  Polselli, Id.  The client

must have a material interest in the fee litigation. In the present case, Plaintiff will

benefit from this petition since they will then be able to retain all proceeds awarded

by the jury as opposed to only a percentage after the attorney's fees.

In addition to the hours of services rendered in the representation of Plaintiffs

in both the underinsured motorist claim and the Bad Faith claim, Plaintiffs are

entitled to be compensated for the attorneys' fees generated during the preparation of

the instant petition.  Since no settlement was offer by Defendants after the jury

verdict, Plaintiffs' Counsel has expended to date 64.5 hours in the instant petition.

In light of the agreement between the Plaintiffs and their counsel, The

Clemens have a material interest in the fee litigation because a major portion of the

fee assessment in regard to the award for services rendered in production of this

instant petition will be paid directly to them under their agreement with counsel.

Thus, Plaintiffs clearly have a material interest in the fee recoveries for this instant

petition and should be awarded the attorneys' fees for the same.

## IV. **CONCLUSION**

Plaintiffs, Mr. and Mrs. Clemens respectfully request this Honorable Court to

grant them interest, attorneys' fees and costs in accordance with their petition. .

Respectfully submitted,

**The Pisanchyn Law Firm**

**By:** /s/ Marsha Lee Albright, Esquire
Marsha Lee Albright, Esquire
I.D. 92765
524 Spruce Street
Scranton, PA 18503
Attorneys for Plaintiffs