IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BERNIE CLEMENS,                                Civil Action No. 3:13-cv-02447
                   Plaintiffs,

          v.

                                               [MANNION, J.]

NEW YORK CENTRAL MUTUAL FIRE
INSURANCE COMPANY AND/OR                       JURY TRIAL DEMANDED
NYCM INSURANCE GROUP AND/OR
NYCM HOLDINGS, INC.,
                   Defendants.                 **ELECTRONICALLY FILED**

## <u>DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' PETITION FOR ATTORNEYS' FEES, INTERESTS AND COSTS</u>

Respectfully submitted,

Date: <u>December 4, 2015</u>         By: <u>/s/ *Charles E. Haddick, Jr.*</u>
                                      Charles E. Haddick, Jr., Esquire
                                      Attorney I.D. No. 55666

Date: <u>December 4, 2015</u>         By: <u>/s/ *Bryon R. Kaster*</u>
                                      Bryon R. Kaster, Esquire
                                      Attorney I.D. No. 91707
                                      Plaza 21, Suite 302
                                      425 North 21st Street
                                      Camp Hill, PA  17011-2223
                                      717-731-4800
                                      *Attorney for Defendants, New York*
                                      *Central Mutual Fire Insurance Company*
                                      *and/or NYCM Insurance Group and/or*
                                      *NYCM Holdings, Inc.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

COUNTER STATEMENT OF THE FACTS AND THE HISTORY OF THE CASE........ 1

COUNTER STATEMENT OF THE QUESTIONS INVOLVED .......................................... 2

ARGUMENT ............................................................................................................................... 2

    I.  ATTORNEY'S FEES........................................................................................................... 4

       A.  Lack of Specificity.................................................................................................... 4

       B.  Absence of Contemporaneously Recorded Time Sheets ........................ 7

       C.  Fees Sought Are Patently Unreasonable......................................................... 8

           1.  Time and Effort Reasonably Expended by the Attorney in the Litigation...................................................................................................10

           2.  Quality of Services Rendered.....................................................................12

           3.  Results Achieved and Benefits Conferred Upon the Class or Upon the Public..............................................................................................14

           4.  Magnitude, Complexity, and Uniqueness of the Litigation ...........14

           5.  Whether the Receipt of a Fee Was Contingent Upon Success .................................................................................................................15

       D.  "Fees On Fees"......................................................................................................... 17

       E.  Fee Enhancement .................................................................................................. 18

    II.  INTEREST ......................................................................................................................... 18

    III. COSTS ................................................................................................................................ 21

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page**

**Cases**

Accord, Keenan v. City of Phila., 983 F.2d 459 (3d Cir. 1992) .................... 4, 5, 6, 7

Desisto College v. Town of Howey-in-the-Hills, 718 F. Supp. 906
(M.D.Fla. 1989) ..................................................................................................... 22

Helms v. Walmart Stores, Inc., 808 F.Supp. 1568 (N.D.Ga. 1992) ........................ 22

Hensley v. Eckerhart, 461 U.S. 424 (1983) ................................................... 5, 6

In re Aspartame Antitrust Litig., 817 F.Supp.2d 608 (E.D.Pa. 2011) .................. 22

In re Penn Cent. Transp. Co., 630 F.2d 183, 191 (3d Cir. 1980) ........................... 23

Jean v. Nelson, 863 F.2d 759 (11th Cir. 1988) .................................................... 7

Jurinko v. The Medical Protective, 2006 U.S.Dist.LEXIS 13601, *15
(E.D.Pa. 2006) .............................................................................................. passim

Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230 (3d Cir. 1997) ..... 3, 8, 18

Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,
540 F.2d 102 (3d Cir. 1976) ............................................................................. 13

MacDissi v. Valmont Industries, Inc., 856 F.2d 1054 (8th Cir. 1988) ...................... 8

National Ass'n of Concerned Veterans v. Secretary of Defense, 675
F.2d 1319 (D.C.Cir. 1982) ................................................................................. 7

Neena S. v. Sch. Dist., 2009 U.S. Dist. LEXIS 65185, at *32 (E.D. Pa.
2009) ....................................................................................................................... 22

Pawlak v. Greenawalt, 713 F.2d 972 (3d Cir. 1983) ...................................... 5

Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524 (3d Cir. 1997) ....... passim

Prandini v. Nat'l Tea Co., 585 F.2d 47 (3d Cir. 1978) ................................. 17

Public Interest Research Group v. Windfall, 51 F.3d 1179 (3d Cir.
1995) ...................................................................................................................... 12

Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990) .................................... 5

Stevens v. D.M. Bowman, Inc., 2009 U.S. Dist. LEXIS 3065, at *12 (E.D.
Pa. 2009) ............................................................................................................... 22

The Birth Center v. The St. Paul Cos., Inc., 727 A.2d 1144 (Pa.Super.
1999) ............................................................................................................ 9, 10, 17

United States ex rel. John Doe I v. Pennsylvania Blue Shield, 54 F. Supp. 2d 410 (M.D.Pa. 1999) ............................................................................. 17

VanGerwen v. Guarantee Mut. Life Co., 214 F.2d 1041 (9th Cir. 2000) ............. 12

Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031 (3d Cir. 1996) .................................................................................................. 13

Webb v. County Bd. of Educ., 471 U.S. 234 (1985) ..................................................... 5, 7

Wesley v. Dombrowski, 2008 U.S. Dist. LEXIS 49544, at *10 (E.D. Pa. 2008) .................................................................................................................... 22, 23

Willow Inn, Inc. v. Public Service Mut. Ins. Co., 2002 U.S.Dist.LEXIS 8063, *8 (E.D.Pa. 2002) ................................................................................... 21

Younis Bros. & Co. v. CIGNA Worldwide Ins. Co., 1995 U.S.Dist.LEXIS 3191 (E.D.Pa. 1995) .................................................................................................. 4

**Other Authorities**

28 U.S.C. §1920 ...................................................................................................................... 21

42 Pa.C.S. §8371 .......................................................................................................... passim

Fed.R.Civ.P. 54 ........................................................................................................................ 2

Fed.R.Civ.P. 54(d)(2)(A) ..................................................................................................... 2

Pa.R.Civ.P. 1716 .............................................................................................. 9, 15, 18

Pa.R.Civ.P. 1717 .............................................................................................. 9, 15, 18

## COUNTER STATEMENT OF THE FACTS AND THE HISTORY OF THE CASE

Judgment was entered in favor of Plaintiff, Bernie Clemens, only, and against Defendant on November 6, 2015, following a week-long trial of Plaintiff's bad faith claim.  The jury found unanimously that Defendant acted in bad faith and awarded punitive damages in the amount of $100,000.

Plaintiff's brief contains assumptions about what the jury "agreed with" that are irrelevant to the instant motion and, therefore, not addressed in Defendant's Counter Statement.  (See Doc. 216, p. 6.)  For the purpose of this filing, the only relevant fact is that the jury found that Defendant acted in bad faith, thus entitling Plaintiff to ask the Court to award compensatory damages pursuant to 42 Pa.C.S. §8371.[1]

On November 20, 2015, Plaintiff filed documents entitled "Plaintiffs' Petition for Attorneys' Fees, Interests and Costs" and "Plaintiffs', Bernie Clemens and Nicole Clemens, Brief in Support of Plaintiffs' Petition for

---

[1] Defendant, however, is challenging the verdict, and will be filing a Rule 50 motion seeking Judgment as a Matter of Law, addressing the evidence that was presented to the jury.  A ruling on that Motion could have a substantial effect on whether the Plaintiff is entitled to any interest, costs, and fees at all.

Attorneys' Fees, Interests and Costs."[2]   (Doc. 214, Doc. 215, and Doc. 216.)

This brief is in response to the petition.

## COUNTER STATEMENT OF THE QUESTIONS INVOLVED

**I.    ATTORNEY'S FEES:**

**Has Plaintiff met his burden of establishing that the fees sought in the petition are reasonable?**

**Answer:  No.**

**II.    INTEREST:**

**What is the amount of interest that may be awarded to Plaintiff under the bad faith statute?**

**Answer:  $4,687.50 (or $4,986.58, if compounded annually).**

**III.    COSTS:**

**What is the lawful and reasonable amount of costs that may be awarded to Plaintiff under the bad faith statute?**

**Answer:  $3,837.76.**

## ARGUMENT

### Introduction

Pennsylvania's bad faith statute provides as follows:

> In an action arising under an insurance policy, if the
> court finds that the insurer acted in bad faith toward

---

[2] Plaintiff also filed a Bill of Costs seeking attorneys' fees, but Federal Rule of Civil Procedure 54 provides that "[a] claim for attorney's fees and related nontaxable expenses **must be made by motion** ...."   Fed.R.Civ.P. 54(d)(2)(A)(emphasis added).

the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. §8371.

While punitive damages are awarded to punish a defendant, the object of an award of attorney fees, interest, and costs "is to make the successful plaintiff completely whole." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 236 (3d Cir. 1997). Such damages may not be used in order to exert further punishment on the defendant, but, rather, they are meant solely "to compensate the plaintiff." Id.

While the statute provides for an award of fees, interest, and costs, such awards are not an entitlement; they are "wholly within the discretion of the trial court, whose discretion will not be disturbed on appeal absent abuse of discretion." Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 534 (3d Cir. 1997). Therefore, while the bad faith statute provides that "a trial court '*may*'

assess attorney's fees and costs against an insurer upon a finding a bad faith," it "need not award such fees."[3] <u>Id</u>. (emphasis added).

## I.   ATTORNEY'S FEES

### A.   <u>Lack of Specificity</u>

Plaintiff's filings do not appear to appreciate that he has the burden of establishing that the fees claimed are reasonable.  <u>Accord, Keenan v. City of Phila.</u>, 983 F.2d 459, 473 (3d Cir. 1992) ("Some of the assertions made by plaintiffs' counsel clearly misread the process of documenting a fee petition. The burden is on the party filing a fee petition to establish that the rate claimed is reasonable.").  Plaintiff notes that "[t]ime logs have been redacted out of concern for privilege … but will be made available immediately for in camera inspection by the Honorable Court upon request."  (Doc. 215, p. 2, n. 2; and p. 3, n. 4.)  However, in <u>Keenan</u> the appellate court rejected a similar offer to make time records "available to the Court for in camera review 'immediately upon request'," as "misleading in view of the burden placed on

---

[3] In <u>Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.</u>, the district court held that, even though a jury found that bad faith existed, the defendant's bad faith did not "rise to the level that moves this Court to exercise its discretion to award either interest or attorneys' fees and court costs."  <u>Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.</u>, 1995 U.S.Dist.LEXIS 3191 (E.D.Pa. 1995).  The Third Circuit Court of Appeals affirmed a district court's decision.  <u>See</u> <u>Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.</u>, 91 F.3d 13 (3d Cir. 1996).

the plaintiff." <u>Keenan</u>, 983 F.2d at 473.  It certainly is not sufficient to establish is entitled to any award of fees.  <u>Id</u>.

Rather, according to the Third Circuit Court of Appeals, "[a]ny hours to be used in calculating attorneys' fees must be detailed with sufficient specificity" within the fee petition.  <u>Keenan,</u> 983 F.2d at 472.  "A fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'"  <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1190 (3d Cir. 1990), <u>citing</u> <u>Pawlak v. Greenawalt</u>, 713 F.2d 972, 978 (3d Cir. 1983).  As the Third Circuit succinctly explained in <u>Keenan</u>:

> A fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.  However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.

<u>Keenan,</u>  983 F.2d at 473 (internal quotations omitted).

The United States Supreme Court has similarly held "that the party seeking an award of fees has the burden of submitting 'evidence supporting the hours worked and rates claimed.'"  <u>Webb v. County Bd. of Educ.</u>, 471 U.S. 234, 242 (1985), <u>citing</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  "The

party seeking an award of fees should ***submit evidence*** supporting the hours worked and rates claimed. ***Where the documentation of hours is inadequate, the district court may reduce the award accordingly***." Hensley, 461 U.S. at 433 (emphasis added).

In <u>Keenan</u>, the Third Circuit found that a summary giving "in chronological order the date, the time consumed, and a general description of the activities provided by each lawyer" met the standards of specificity, as did a summary of "counsels' time spent in various general activities such as arbitration, pretrial preparation, and trial." <u>Id</u>. However, "monthly cumulative totals" of an attorney's hours were "not sufficiently specific," such that, when "[f]aced with the monthly summaries the trial court could only have speculated as to the work performed." <u>Id</u>.

Here, Plaintiff has merely attached self-serving exhibits setting forth the *cumulative totals* of the hours allegedly spent and a rate that Plaintiff argues is reasonable, along with a total dollar amount. (<u>See</u> Doc. 215-1, Doc. 215-2, and Doc. 215-6.) Although Plaintiff claims to have spent a mindboggling sixty-four (64) and a half hours preparing the petition; (Doc. 215-6), the petition is entirely lacking in any of the requisite information; i.e., "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of

attorneys, e.g., senior partners, junior partners, associates."    Therefore, Plaintiff's petition is not sufficiently specific to "allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'"

In the absence of sufficient specificity, neither Defendant nor – more importantly – the Court can determine whether the hours claimed are reasonable or unreasonable for the work performed, and, thus, Plaintiff has failed to meet his burden of establishing that the $902,655 in fees is, in fact, reasonable.  The request should, therefore, be denied.

### B.    <u>Absence of Contemporaneously Recorded Time Sheets</u>

The United States Supreme Court has expressly recognized that "[c]ontemporaneously recorded time sheets are the preferred practice." <u>Webb</u>, 471 U.S. at 238, n. 6.  <u>See</u>, <u>also</u>, <u>Keenan</u>, 983 F.2d at 472.   At least one circuit strictly requires contemporaneous records.  The Court of Appeals for the D.C. Circuit has stated that:

> Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney.

<u>National Ass'n of Concerned Veterans v. Secretary of Defense</u>, 675 F.2d 1319, 1327 (D.C.Cir. 1982).  <u>But</u>, <u>see</u>, <u>Jean v. Nelson</u>, 863 F.2d 759, 772 (11th Cir. 1988)("contemporaneous time records are not indispensable where there is

other reliable evidence to support a claim for attorneys' fees"); and <u>MacDissi v. Valmont Industries, Inc.</u>, 856 F.2d 1054, 1061 (8th Cir. 1988)("the question of whether reconstructed records accurately document the time attorneys have spent is best left to the court most familiar with the litigation.").

In this case, Plaintiff has not adduced any time sheets whatever, let alone contemporaneously recorded time sheets, and, in the absence of such, Defendant requests that the request for fees be denied.

## C.   <u>Fees Sought Are Patently Unreasonable</u>

According to the Third Circuit Court of Appeals:

> [A]n award of attorney's fees under section 8371 is meant "to compensate the plaintiff for having to pay an attorney to get that to which [the plaintiff] was contractually entitled.  Along with interest, costs, and delay damages, the object of an attorney fee award is to make the successful plaintiff completely whole."

<u>Polselli v. Nationwide Mut. Fire Ins. Co.</u>, 126 F.3d 524, 527 (3d Cir. 1997), <u>citing</u> <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230, 236 (3d Cir. 1997).   Stated another way, "[a]n award of attorneys' fees serves to compensate a victorious plaintiff rather than punish a losing defendant." <u>Jurinko v. The Medical Protective</u>, 2006 U.S.Dist.LEXIS 13601, *15 (E.D.Pa. 2006).   An attorneys' fees petition is not the Plaintiff's second chance to put on a bad faith case.  <u>Id</u>.

8

The Pennsylvania Superior Court has stated that "[t]he court's ultimate responsibility is to award a 'reasonable' fee.'"[4]  The Birth Center v. The St. Paul Cos., Inc., 727 A.2d 1144, 1161 (Pa.Super. 1999).   "Because Section 8371 provides no guidance on how a trial court should calculate attorney's fees," that court held that, "when calculating a reasonable fee under Section 8371," the trial court must consider the following factors:   a. time and effort reasonably expended by the attorney in the litigation; b. quality of services rendered; c. results achieved and benefits conferred upon the class or upon the public; d. magnitude, complexity, and uniqueness of the litigation; and e. whether the receipt of a fee was contingent upon success.  Id., 727 A.2d at 1160, citing Pa.R.Civ.P. 1716.  See, also, Polselli, 126 F.3d at 532 ("Courts deciding cases under Pennsylvania law are guided by Pennsylvania Rule of Civil Procedure 1716 when considering the amount of a reasonable fee.").[5] "The calculation of a reasonable fee should begin with the actual number of hours spent in pursuing the claim multiplied by a reasonable rate."  The Birth Center, 727 A.2d at 1160.  "Both the number of hours and the rate per hour shall be calculated on a basis reasonably reflective of the relevant market and

---

[4] The Court may award fees for time spent prosecuting the underlying insurance claim, as well as fees for prosecuting the bad faith claim itself.  See Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 527 (3d Cir. 1997).
[5] Pa.R.Civ.P. 1716 was renumbered as Rule 1717, effective July 1, 2012.

the magnitude, complexity and uniqueness of the claim and related task."  Id.,

727 at 1161.

### 1.    Time and Effort Reasonably Expended by the Attorney in the Litigation

Plaintiff contends that the attorneys' time and effort "was most certainly

substantial as evidenced by Plaintiff's submissions."  (Doc. 216, p. 8.)  In the

Petition, Plaintiff states – without citation to the record – that Defendant

"complicated  pre-trial  discovery  by  its  conduct  resulting  in  a  great

expenditure  of  time  by  Plaintiff's  Counsel   for  preparation  of  repeated

requests, motions, most which were decided in favor of Plaintiffs and against

[Defendant] including over **200 documents** filed as evidenced by the docket."

(Doc. 215, p. 7, ¶18(d).)

Even a cursory review of the docket, however, provides no support for

Plaintiff's  claim  that  Defendant  "complicated"  this  matter.   Rather,  it  was

Plaintiff's conduct that made this matter as protracted as it was.

As for "pretrial discovery" and the "motions" filed by Plaintiff – which

Plaintiff  describes  as  being  "decided  in  favor  of  Plaintiffs  and  against

[Defendant]" – the docket shows that Plaintiff filed only two (2) such motions

(excluding motions related to motions for summary judgment and motions *in*

limine).   (See Doc. 21 and 48.)   Neither of the two motions was granted or otherwise "decided in favor of Plaintiffs."  (See Doc. 31 and 66.)

Defendant, on the other hand, was forced to file four (4) separate motions to compel, *all of which were  granted* (see Doc. 34, 36, 40, 55, 61, and 87), as well as a motion to dismiss / strike and motion for protective order that were granted in part (see Doc. 7, 23, 42, and 51).  Defendant even had to file yet another motion to compel (see Doc. 91) to get Plaintiff to comply with one of the Court's orders compelling discovery.   In granting Defendant's first two motions to compel, Judge Conaboy described the requests as largely "straightforward, unremarkable, and obviously relevant." (Doc. 40, p. 3.)  In addressing both parties' motions for summary judgment, Judge Conaboy further noted:  "the Court will observe that, due to Plaintiffs' burden to prove its case by clear and convincing evidence, and *Plaintiffs' persistent failures to cooperate in the discovery process* and a failure to observe the literal requirements of Rule 56.1 of the local rules of court, Plaintiff escaped a judicial determination that bad faith cannot be determined from this record by the narrowest of margins."  (Doc. 84, p. 10 (emphasis added).)   Thus, while Plaintiff accuses Defendant of causing "delay" and increasing "Plaintiffs hours put into the case;" (Doc. 216, p. 7), the docket clearly shows that it was Plaintiff's dilatory conduct that alone necessitated

the numerous filings in this case.  The Plaintiff should not be compensated for the time his own lawyer wasted.

Because Plaintiff's petition does not set forth the claim for attorneys' fees with "sufficient specificity," it is impossible to determine what portion of the claim was devoted to opposing Defendant's efforts to conduct discovery or any other unnecessary matters.   Regardless, any time for "unrelated" or "excessive, redundant or otherwise unnecessary" matters should be properly subtracted by the Court from the amount sought by Plaintiff.   <u>See</u> <u>Public Interest Research Group v. Windfall</u>, 51 F.3d 1179, 1188 (3d Cir. 1995); and <u>VanGerwen v. Guarantee Mut. Life Co.</u>, 214 F.2d 1041, 1047-1048 (9th Cir. 2000).   Given Plaintiff's conduct of record, time attributable to such matters surely comprises a substantial portion of the over 2478 hours now being sought by Plaintiff, and, accordingly, if the Court determines that a fee award is appropriate, Defendant requests that the hours be reduced significantly.

### 2.   Quality of Services Rendered

In assessing the quality of services rendered, the court should examine the following factors: (i) the results obtained for the plaintiffs in comparison to the best possible recovery; (ii) the overall benefit conferred on the plaintiffs; and (iii) counsel's professional methods.   <u>Jurinko</u>, at *29, <u>citing</u>

<u>Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.</u>, 540 F.2d 102, 117-118 (3d Cir. 1976).

While Defendant defers to the Court regarding any assessment of Plaintiff counsel's "professional methods," the first two factors clearly do not support an award of $902,655 in fees.  The benefit conferred to Plaintiff was a settlement of the SUM claim for $25,000 and a punitive damages verdict in the amount of $100,000, for a total award of $125,000 to Plaintiff.  However, according to the Third Circuit, "[t]he amount of damages *awarded,* when compared with the amount of damages *requested,* may be one measure of how successful the plaintiff was in his or her action ...."  <u>Washington v. Philadelphia County Court of Common Pleas</u>, 89 F.3d 1031, 1042 (3d Cir. 1996).  In this case, both before and during the trial, Plaintiff's demand was $9,000,000, compared to an offer by Defendant in the amount of $75,000.  When compared to the $9,000,000 requested by Plaintiff (and the $75,000 offered by Defendant), the award of only $100,000 (1.1% of the amount requested by Plaintiff) diminishes Plaintiff's success substantially, and, under such circumstances, $902,655 in fees is patently unreasonable.

The Plaintiff's lawyers obtained at trial only $25,000.00 more they could have obtained by settling the matter before trial, and a staggering $8.9 million less than the Plaintiff's pre-trial demand.  When viewed within this context,

the result provided to the Plaintiff by his attorneys was substantially less than optimum.

### 3.  Results Achieved and Benefits Conferred Upon the Class or Upon the Public

In <u>Jurinko</u>, the court justified a fee award in the amount of $323,167.50, by noting that the punitive damages award in the amount of $6.25 Million "sent a clear and powerful message to [the insurer] and other insurers that intentional bad faith conduct toward their insureds can be subject them to large financial responsibility." <u>Jurinko</u>, at *32.  Here, the jury award of $100,000 was neither clear nor powerful, especially in regard to the exorbitant sum the Plaintiff sought.  The amount of the award in this case does not make an award of $902,655 in fees at all reasonable; to the contrary, the request is patently unreasonable.

### 4.  Magnitude, Complexity, and Uniqueness of the Litigation

According to Plaintiff, "this case was complex and unique in numerous regards ...."  (Doc. 216, p. 8.)  Judge Conaboy, however, in denying both parties' summary judgment motions, described the underlying claim as "a relatively straightforward claim for underinsured motorist benefits."  (Doc. 84, p. 8.)  The Court both at commencement and during trial made reference to the fact that the case was a very straightforward bad faith case involving the failure to

promptly settle a claim.   In <u>Jurinko</u>, the district court described the "actual legal issues and factual disputes" in a bad faith case as "not considerably complex."   <u>Jurinko</u>, at \*33.   Defendant submits that, while the lawsuit may have generated many documents, the magnitude and complexity of the litigation does not warrant an award of attorneys' fees in the amount of $902,655.

### 5.      Whether the Receipt of a Fee Was Contingent Upon Success

According to the Explanatory Comment to Pennsylvania Rule of Civil Procedure 1717 (formerly 1716), "[t]he court is not bound by the amount or percentage of the fee set forth in the contingent fee agreement between the representative party and his attorney, although the contingent nature of the fee is a factor to be considered in approving the fee."   Pa.R.Civ.P. 1717 (Explanatory Comment – 1977).

Here, Plaintiff and his attorneys entered into a "Contingent Fee Agreement," in which any attorneys' fees are presumably paid out as a percentage of the amount of the settlement and award.   (Doc. 216, p. 11.) Therefore, in order for Plaintiff to truly be made "completely whole," Plaintiff should receive the amount that was actually paid to his attorneys and *only* the amount that was actually paid.   Any less and Plaintiff would not be made

whole; any more would not only make Plaintiff whole but also provide him with a windfall.

Here, if Plaintiff's attorneys were paid 40% of the settlement of the SUM claim ($25,000) and are to be paid the same percentage of the punitive damages award ($100,000), the amount necessary to make Plaintiff "completely whole" would be $50,000.  Plaintiff, instead, is asking that this Court award him $902,655, over eighteen (18) times that amount.  (See Doc. 215, p. 8.)  Such an award would do much more than make Plaintiff "completely whole", it would (assuming a 40% contingency fee) also provide him and / or his lawyers with a windfall in the amount of $852,655.  Such a windfall is patently unreasonable, given that "the object of an attorney fee award is to make the successful plaintiff completely whole."  Polselli, 126 F.3d at 537.

Moreover, to the extent that the windfall may flow to Plaintiff's attorneys, the Third Circuit recognizes that "[f]ee-shifting statutes," such as the bad faith statute, "were not designed as a form of economic relief to improve the financial lot of lawyers."  Id., n. 15.  Yet Plaintiff appears to approach the instant fee petition in exactly that fashion.

### D.   "Fees On Fees"

Plaintiff is asking the Court to award fees based upon the "64.5 hours" allegedly spent preparing "the instant petition." (Doc. 216, p. 13.)  Certainly, "the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award."[6] Polselli, 126 F.3d at 537 (citing Prandini v. Nat'l Tea Co., 585 F.2d 47, 53 (3d Cir. 1978)).  However, such "fees on fees" are only recoverable "if the client retains a material interest in the fee litigation." The Birth Center, 727 A.2d at 1161.  According to the Third Circuit, "a client has a material interest in the outcome of the fee proceeding when those proceedings could affect the client's duty to pay her attorney." Polselli, 126 F.3d at 538.

Plaintiff is seeking $27,090.00 for the fees allegedly incurred in the preparation of his petition, but he has not produced a copy of the fee agreement (or any other such evidence) so that the Court may determine whether the client has a "material interest" in the fee litigation. (See Doc. 215, p. 2, n. 3 ("Plaintiffs Fee Agreement has been redacted out of concern for privilege, but not limited to attorney/client privilege but will be made available immediately for in camera inspection by the Honorable Court upon

---

[6] Such an award has been referred to by this Court as "fees on fees."  United States ex rel. John Doe I v. Pennsylvania Blue Shield, 54 F. Supp. 2d 410, 414 (M.D.Pa. 1999)

request.").)  Absent such proof, Plaintiff has not met his burden of establishing that he may recover any "fees on fees."

Alternative, Defendant objects to amount sought, as excessive on its face.  Sixty-four and a half (64 ½) hours for the petition is unreasonable, unnecessary, and unsubstantiated by the filings.

### E.     **Fee Enhancement**

Plaintiff asks that this Honorable Court apply "the Rule 1716 enhancements" to the fee request.  As stated in Section I(C), above, the factors set forth in "Rule 1716" (now Rule 1717) do not even support the fees being sought by Plaintiff in the first place, let alone an *enhancement* of those fees. Accordingly, Plaintiff's request that the fees be enhanced should be denied.

## II.    INTEREST

As with an award of attorney fees, the object of an award of interest under the bad faith statute "is to make the successful plaintiff completely whole."  Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 236 (3d Cir. 1997).  Such damages are meant solely "to compensate the plaintiff" and may not be used to punish the defendant.  Id.

Section 8371 permits the Court to award, at its discretion, "interest on the amount of the claim from the date the claim was made by the insured in an

amount equal to the prime rate of interest plus 3%."   42 Pa.C.S. §8371 (emphasis added).

Here, the "claim was made" on June 21, 2011 and settled on June 20, 2014,[7] and, accordingly, the Court may only award interest on the $25,000 SUM claim for the three (3) year period from June 21, 2011 until June 20, 2014.   (See Doc. 160, p. 6 (opinion of Judge Conaboy rejecting Plaintiff's argument that claim began with notice of a "potential SUM claim" on April 12, 2010 and holding that the "relevant time frame" runs from June 21, 2011 until June 20, 2014).)  As Plaintiff correctly notes, the "prime interest rate remained steady at 3.25%" during these three years.  (Doc. 215, ¶15.)  Accordingly, the amount of the annual interest is $1,562.50, which for three (3) years totals **$4,687.50**.  If the Court permits the interest to be compounded annually, the amount of interest would be:

---

[7] Although Plaintiff refers to the "unpaid balance of $125,000" – presumably to inflate the interest claim by suggesting that Defendant has not yet paid the $25,000 SUM claim – the check for $25,000 was deposited on July 22, 2014.

*June 21, 2011 – June 20, 2012*

   *($25,000 x 6.25%) = $26,562.50*

*June 21, 2012 – June 20, 2013*

   *($26,562.50 x 6.25%) = $28,222.66*

*June 21, 2011 – June 20, 2012*

   *($28,222.66 x 6.25%) = $29,986.58*

*Total (minus the $25,000 already paid) = **$4,986.58***

Therefore, even if the Court decides to award interest and compound the interest annually, the maximum interest owed under the bad faith statute would be $4,986.58.

Plaintiff, however, is asking the Court to award interest in the amount of $50,630.00.  (See Doc. 215, ¶15.)  Plaintiff's calculation is premised upon the erroneous belief that interest began to accrue on April 1, 2010, when, according to Plaintiff, the "claim began."  (Doc. 215, ¶15.)

Section 8371 only allows for the award of "interest on the amount of the claim **from the date the claim was made by the insured** ..."  42 Pa.C.S. §8371 (emphasis added).  The Court has already ruled that the claim was not made until June 21, 2011; (see Doc. 160, pp. 5-6), and, as such, under the express provisions of the bad faith statute, interest cannot begin to run until June 21, 2011.  See 42 Pa.C.S. §8371.

In addition, Plaintiff argues that interest on the SUM claim should continue to accrue until the present date, even after the claim was settled in June of 2014. While Defendant was unable to locate any case law addressing this precise issue, such a request flies in the face of the objective of awarding interest pursuant to Section 8371, which is simply to make the plaintiff "completely whole." Here, Plaintiff is not asking the Court to make him "completely whole," but to provide him with interest on monies that were paid over a year ago.

Furthermore, Plaintiff is asking the Court to award interest going back to April of 2010 on the punitive damages award that was not even entered until November 6, 2015. There is simply no support in the language of the statute or the applicable law for an award of interest on the punitive damages award going back to April 1, 2010.

## III.  COSTS

In the Petition, Plaintiff is asking the Court to award $43,871.43 in costs, including $32,325 for their expert, Stuart Setcavage. (See Doc. 215-3, p. 3.) However, the costs recoverable under the bad faith statute are no different than those recoverable under 28 U.S.C. §1920, "which does not include private expert fees." Jurinko, at *38. See, also, Willow Inn, Inc. v. Public Service Mut. Ins. Co., 2002 U.S.Dist.LEXIS 8063, *8 (E.D.Pa. 2002)("Most of these expenses

are excluded because they relate to the Willow Inn's expert fees ....").
Therefore, Plaintiff's request for $32,325 for expert fees should be disallowed.

Furthermore, as stated in more detail in Defendant's Objections to
Plaintiff's Bill of Costs; (see Doc. 218), Plaintiff's request for fees for printing /
copies and trial exhibits fails to "show[] the nature of the documents copied,
including how they were used or intended to be used in the case" and,
therefore, should also be disallowed. Helms v. Walmart Stores, Inc., 808
F.Supp. 1568, 1570 (N.D.Ga. 1992). See, also, Desisto College v. Town of
Howey-in-the-Hills, 718 F. Supp. 906, 914 (M.D.Fla. 1989).

In addition, Plaintiff's attempt to recover the costs in obtaining costs in
obtaining **both** the transcripts **and** the videotapes of depositions is not
permissible, nor is the request for shipping costs for the transcripts. See In re
Aspartame Antitrust Litig., 817 F.Supp.2d 608, 617 (E.D.Pa. 2011), citing
Stevens v. D.M. Bowman, Inc., 2009 U.S. Dist. LEXIS 3065, at *12 (E.D. Pa.
2009)("[T]he costs of a videotape or a deposition transcript may be taxed, but
not both."); and Wesley v. Dombrowski, 2008 U.S. Dist. LEXIS 49544, at *10
(E.D. Pa. 2008) (same). See, also, In re Aspartame Antitrust Litig., 817
F.Supp.2d at 617 ("A party may not recover the shipping and handling costs
associated with depositions."). See, also, Neena S. v. Sch. Dist., 2009 U.S. Dist.
LEXIS 65185, at *32 (E.D. Pa. 2009)(stating that the Third Circuit "disallows"

costs for postage and courier fees), quoting In re Penn Cent. Transp. Co., 630 F.2d 183, 191 (3d Cir. 1980); and Wesley v. Dombrowski, 2008 U.S. Dist. LEXIS 49544, at *10-11 (E.D. Pa. 2008)(refusing to grant costs for shipping and handling).

Accordingly, should the Court decide to award costs, the amount of the lawfully and reasonably recoverable costs do not exceed $3,837.76.

Respectfully submitted,

**DICKIE, McCAMEY & CHILCOTE, P.C.**

Date: <u>December 4, 2015</u>      By:<u> /s/ Bryon R. Kaster</u>
Bryon R. Kaster, Esquire
Attorney I.D. No. 91707
Plaza 21, Suite 302
425 North 21st Street
Camp Hill, PA  17011-2223
717-731-4800
*Attorney for Defendants, New York Central Mutual Fire Insurance Company and/or NYCM Insurance Group and/or NYCM Holdings, Inc.*

Date: <u>December 4, 2015</u>      By:<u> /s/ Charles E. Haddick, Jr.</u>
Charles E. Haddick, Jr., Esquire
Attorney I.D. No. 55666
Plaza 21, Suite 302
425 North 21st Street
Camp Hill, PA  17011-2223
717-731-4800
*Attorney for Defendants, New York Central Mutual Fire Insurance Company and/or NYCM Insurance Group and/or NYCM Holdings, Inc.*

## **CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing Brief contains 4,534 words according to the word processing system used to prepare the Brief.  This complies with Pa. R.A.P. 2135(a)(2).


Date: _December 4, 2015_                    By: _/s/ Charles E. Haddick, Jr._
                                                  Charles E. Haddick, Jr., Esquire