# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNIE CLEMENS and | : | CIVIL ACTION NO: |
| NICOLE CLEMENS, | : | |
| | : | 3:13 –CV-02447 |
| Plaintiffs, | : | |
| v. | : | |
| | : | Judge Malachy Mannion |
| NEW YORK CENTRAL MUTUAL | : | |
| FIRE INSURANCE COMPANY | : | |
| and/orNYCM INSURANCE GROUP | : | |
| and/or NYCM HOLDINGS, INC. | : | ELECTRONICALLY FILED |
| Defendants. | : | |
| | : | JURY TRIAL DEMANDED |

## PLAINTIFFS', BERNIE CLEMENS AND NICOLE CLEMENS, REPLY BRIEF IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES, COSTS AND INTEREST

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-23

1. **Fees are Patently Unreasonable (The Attorneys Fees Sought by the Clemens are "Patently" Permitted by Statute)** . . . . . . . . 6

2. **Lodestar Calculation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3. **Pa.R.C.P. 1717 Application** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4. **The quality of services rendered. (Quality of Service Was Exceptional)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5. **The result achieved (Results Achieved 4 Times Underlying Amount)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6. **The magnitude, complexity and uniqueness of the litigations. (Case was complex, of magnitude, and unique)** . . . . . . . . . . . . . . 17

7. **Fee contingent upon success. (Fee and Costs Were Contingent on Success)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

8. **Fee upon a Fee** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9. **Fee Enhancement (Enhancement of Lodestar is Applicable)** . . . 20

10. **Interest (Interest Must Be Awarded to the Clemens)** . . . . . . . . 21

11. **Costs (All Costs Should be Awarded To Make Plaintiff Whole)** 23

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1179 (3d Cir. 1985).

Blum v. Stenson,  465 U.S. 886, 896 n.11 (1984)

Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health and Human Resources, 532 U.S. 598, 603-604 (2001).

City of Burlington v. Dague,  505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed. 2d 449 (1992).

Fahy v. Nationwide Mut. Fire Ins. Co., 885 F. Supp. 678, 681-682 (M.D. Pa. 1995)

Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct 1933, 76 L.Ed.2d 40 (1983).

Hillock v. Erie Ins. Exchange,  842 A.2d 409 (Pa. Super. 2004).

Jurinko v. The Medical Protective, 2006 U.S. Dist. LEXIS 42923 (E.D. Pa.),

Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 236 (3d Cir. 1997).

Lanni v. State of New Jersey, 2001 LEXIS 16939 (3d Cir., June 2001)

Loughner v. University of Pittsburgh, 2001 LEXIS 15992 (3D Cir. July 18, 2001).

Maldonado v. Houstoun,  256 F.3d 181 (3d Cir. 2001).

Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524 (3rd Cir. 1997).

Rainey v. Philadelphia Housing Auth., 832 F.Supp. 127, 129 (E.D. Pa. 1993)

Rode v. Dellarprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

Somerset v. Mitchell, et. al., 454 Pa. Super 188, 685 A.2d 141 (1996).

State Farm Mutual v. Campbell, 538 U.S. 408 (2003.)

Swaayze v. Philadelphia Housing Auth., 1992 WL 81598 (E.D. Pa. Apr. 16, 1992)

Terletsky v. Prudential, 437 Pa. Super. 108, 649 A.2d 680 (1994).

Valenti v. Allstate Ins. Co., 243 F. Supp. 2d 201 207 (M.D. Pa. 2003)

Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1042

(3d Cir. 1996)

**STATE CASES**

Penneys v. Pennsylvania R.R. Co., 408 Pa. 276, 183 A.2d 544 (1962),

**FEDERAL STATUTES**

42 Pa.C.S. § 8371

**RULES**

Fed. R.Civ.P. 54(d)

Middle District for Pennsylvania LR 54.4


Pennsylvania Rule of Civil Procedure 1717


**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004).

## INTRODUCTION

This action for Bad Faith, Pursuant to 42 Pa.C.S. § 8371, was initiated by Complaint filed August 26, 2013 in the Court of Common Pleas of Monroe County. On September 24, 2013, Defendants removed the action to the United States District Court for the Middle District of Pennsylvania.  After a long and arduous road of stonewalling by the Insurance Company, Jury selection took place on November 2, 2015 with trial commencing immediately thereafter before the Honorable Malachy E. Mannion.  On Friday, November 6, 2015, the jury found that Defendant, New York Central Mutual Insurance Company (hereinafter "NYCM") had acted in bad faith and awarded the Plaintiffs the sum of $100,000 for the Insurance Company's outrageous actions.

Plaintiffs now seek an award of attorney's fees, costs and interest pursuant to the Bad Faith statute, and respectfully submit their Reply Memorandum in support of Plaintiffs' Petition for Attorneys' Fees, Interest, and Costs and aver as follows:

## ARGUMENT

The Pennsylvania Bad Faith Statute provide as follows:

"In an action arising under an insurance policy, if the Court finds that the insurer has acted in bad faith towards the insured, the Court may take all of the following actions: (1) award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate plus 3%, (2) award punitive damages against the insurer, (3) assess court costs and attorney's fees against the insurer. 42 Pa.C.S. § 8371.

**A. <u>Lack of Specificity</u> (Itemized Bill Provided)**

**B. <u>Absence of Records</u> (Itemized Bill Provided)**

The first issue within Defendants brief in opposition of attorney's fees is lack

of specificity. In addition this Court in its Order (Document 225) seems to be

perplexed in reference to the 64.5 hours to create a "straight forward petition for

attorney fees." The Court may not have considered the time to go through the

materials and information to come to an itemized bill which was exactly and

potentially slightly more than 64.5 hours.

To alleviate the concern of both the Court and The Insurance Company, this

itemization which was created within the 64.5 hours is being submitted for an in-

camera review without waiving any and all applicable privileges[1].

Based on this submission to the Court, the Defenses arguments (Pages of their

brief 4-7) have no merit. There is nothing either "mindboggling" or unbelievable

when the Court reviews the detailed itemized bill that was created along with

Plaintiff's Petition, research and the like  in only 64.5 hours.

**C. Fees are Patently Unreasonable (The Attorneys Fees Sought by the Clemens
are "Patently" Permitted by Statute)**

Upon a determination that there has been Bad Faith by the insurer, the "trial

court may assess attorney's fees against an insured for the time spent (1) litigating

---

[1] Plaintiff believes and therefore avers should the Court request the Defense billing, this Court will see
that the hours expended and billed by the Defense are the same if not more than Plaintiff is submitting
within their petition

the claim under the policy and (2) litigating the bad faith claim itself." Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524 (3rd Cir. 1997). An "award for attorney's fees under section 8371 is meant to compensate the plaintiff for having to pay an attorney to get that to which (the plaintiff was) contractually entitled. Along with interest, costs and delay damages, the object of an attorney fee award is to make the successful plaintiff completely whole." Id., quoting Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 236 (3d Cir. 1997).

When considering the amount of reasonable attorneys' fees to award in a Bad Faith case, the honorable courts are to be guided by Pennsylvania Rule of Civil Procedure 1717, which provides as follows:

> "In all cases where the court is authorized under applicable law to fix the amount of counsel fees it shall consider, among other things, the following factors:
>
> (1) The time and effort reasonably expended by the attorney in the litigation;
>
> (2) The quality of the services rendered;
>
> (3) The results achieved and benefits conferred upon the class or upon the public;
>
> (4) The magnitude, complexity and uniqueness of the litigation; and
>
> (5) Whether the receipt of a fee was contingent on success. Pa.R.C.P. 1717. See also, Polselli v. Nationwide Mut. Fire Ins. Co., supra.[2]

---

[2] It is important to note, within the commentary of Pa.R.C.P. 1717 it is emphasized that "the order in which these factors are listed in the Rule is not in any way intended to suggest an order of priority on comparative importance in the determination of the fee." Pa.R.C.P. 1717.

Clearly, Plaintiffs are entitled to their attorney's fees.  As such, it does at least seem that both parties agree that the starting point for the court's determination of the amount of reasonable attorney's fees is the lodestar calculation, which entails multiplying the number of hours reasonably expended by each attorney by a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct 1933, 76 L.Ed.2d 40 (1983). The Insurance Company, as it has no choice, does within its brief seem to concede there has been well over 200 documents filed in this case. Its main argument in essence states  Plaintiff's petition does not set forth the claim for attorneys' fees with "sufficient specificity," to determine "excessive, redundant or otherwise unnecessary" matters  which should be subtracted. As stated previously, the itemized bill has now been submitted to the Court so this argument too is now moot[3].

Clearly, the lodestar is strongly presumed to yield a reasonable fee.  City of Burlington v. Dague,  505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed. 2d 449 (1992). Once the fee applicant has made this initial showing, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id.  The opposing party then has the burden of making specific objections to the proposed fee by affidavit or brief.  See Rode v. Dellarprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

---

[3] Plaintiff has offered to accept the same amount all Defense Counsel was paid for handling this matter. It stands to reason that what all Defense Counsel, its staff has billed seems relevant when the Court considers the time Plaintiff has spent on this case.

## Lodestar Calculation

The first step in the lodestar calculation is the determination of the number of hours reasonably expended.  The second step is to decide whether the claimed rates are reasonable.  The Honorable Courts start with the market rates prevailing at the time of the petition, which the party seeking fees has the burden of establishing by satisfactory evidence. Maldonado v. Houstoun,  256 F.3d 181 (3d Cir. 2001).  The fee schedule established by the Community Legal Services, Inc. ("CLS") has been approvingly cited by the Third Circuit as being well developed and has been found by the Honorable Courts to be a fair reflection of the prevailing market rates.[4] Id. See also Blum v. Stenson,  465 U.S. 886, 896 n.11 (1984); Rainey v. Philadelphia Housing Auth., 832 F.Supp. 127, 129 (E.D. Pa. 1993) *citing* Swaayze v. Philadelphia Housing Auth., 1992 WL 81598 (E.D. Pa. Apr. 16, 1992); and  Lanni v. State of New Jersey, 2001 LEXIS 16939 (3d Cir., June 2001)("the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates of prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").  If there is evidence that the market has established different rates for different categories of legal work, the district court should assign the appropriate rate to each category.  Loughner v. University of

---

[4] Plaintiffs have submitted both the CLS attorney fee schedule effective September 12, 2014, indicating the attorney rates at the time of the filing of this instant petition for attorney fees.  (Document 215-5 filed 11/20/15).  Also in support of the same, Plaintiffs have filed the affidavit of Lawrence J. Moran, Esquire wherein Attorney Moran affirms that an hourly rate in the range of $400-$500 is customary and reasonable in accord with the prevailing market rate for litigation in the Middle District of Pennsylvania. (Document 215-4 filed 11/20/15).

Pittsburgh, 2001 LEXIS 15992 (3D Cir. July 18, 2001).

## Pa.R.C.P. 1717 Application

### 1.  The time and effort spent by Plaintiffs' Counsel (Time and Effort Spent By Counsel Was Enormous)

Plaintiffs' Counsel seek their hourly rate of $420 for its firm's attorneys.  The Pisanchyn Law's billing rates are reasonable in light of its attorneys' expertise, experience, and the work its attorneys performed that was necessary in protecting their clients' rights.

The itemization demonstrates the hours of work put into making sure the Law Firm's client obtained justice.[5]  In fulfilling their duties on this matter, the members of the Pisanchyn Law Firm undertook extensive research, writing, and deposition/hearing/trial preparations.

The docket is truly indicative of the adversarial posture of the parties.   As early as October 1, 2013, Plaintiffs' Counsel entered their appearance on behalf of their clients Mr. and Mrs. Clemens.  Immediately after Plaintiffs entering their appearance, Defendants began their barrage of "document warfare" and filed their first of numerous motions, a Motion to Dismiss the action filed as Document 7 on October 1, 2013.  More specifically review of the docket evidences a staggering number of Defendants' submissions, many redundant in nature, in excess of eighty-

---

[5] Plaintiffs began representation of Plaintiffs over six years ago in 2009.  During that time, attorneys and/or staff have since left employment with the firm.  As such, Plaintiffs have provided affidavits of the attorneys employed by the firm at the time of this filing.

two documents requiring a response from Plaintiffs' Counsel in protecting Mr. and Mrs. Clemens' claims.

Ms. Albright took the lead in drafting the responses/replies, including performing the necessary legal research regarding the protective orders sought by Defendants, and the numerous Motions in Limine filed by Defendants.  Defendant's blatant actions were directly addressed by this Honorable Court.  For instance, on the eve of trial, when Plaintiffs were preparing the presentation of their case, Defendants filed two "bench Memoranda" in an attempt to have Your Court consider issues already determined by the Honorable Court.  Defendants were warned that "such gamesmanship will not be entertained as the time for filing such motions has long passed.  It is an uncommon event in this court when a party continues to either misunderstand or misconstrue a clear court direction as here. It would be a grave mistake to continue such questionable conduct." (Document 193, October 30, 2015 Order of this Honorable Court.

As a result of conduct of Defense Counsel, Plaintiffs' Counsel had no choice but to respond to the claims made within Defendant's surge of filings.  As a result, Plaintiffs' Counsel expended a considerable portion of their time and resources on the same.[6]

Defendants, however, in their Brief in Opposition to Plaintiffs' instant petition

---

[6] Plaintiffs have provided their calculation of attorneys' fees for the representation of Mr. and Mrs. Clemens in the underlying underinsured motorist claim, the Bad Faith claim, as well as the instant petition.  (Document 215-1, Document 215-2, and Document 215-6, respectively.)

for fees in an attempt to mask the issue, continually refer to four motions to compel alleging all four to have been granted by the Honorable Court.  This is simply not the case.  The motions, as appears to be the status quo for Defendants, were redundant in nature seeking the same materials; with said materials having been in possession of and/or always within reasonable access of the Defendants themselves.  Further, Defendants had made the same argument at time of trial, that they could not possibly settle the case without the discovery materials, and used this argument as the basis of their delay.  The jury did not buy this argument, and neither should this Honorable Court.

Plaintiffs' Counsel stood "toe-to-toe" with defense in this case in response to the "trench warfare" of Defendants.  As such, the amount of fees that are subsequently being sought by Plaintiffs' Counsel are reasonable and necessary as a result of said representation and should be awarded accordingly.

## 2.  The quality of services rendered. (Quality of Service Was Exceptional)

Defendant in opposition to Plaintiffs' Fee Petition cite <u>Washington v. Philadelphia County Court of Common Pleas</u>, 89 F.3d 1031, 1042 (3d Cir. 1996).  In <u>Washington</u>, the Honorable Court noted as the prevailing party, they had the burden of demonstrating "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity."  The Honorable Court found that the prevailing party did, in fact, meet his burden in that he submitted

affidavits of other attorneys within the area who represent plaintiffs in similar litigation[7]. These affidavits stated that the prevailing party's fees being sought were reasonable and within the range of the prevailing rates charged by attorneys in the area with the same skill and experience. Most importantly, the opposition failed to rebut Plaintiffs' submissions on this point, and therefore did not effectively challenge the content of the submitted affidavits. As such, Plaintiff had met his prima facie burden under the "community market rate" lodestar test, and the opposing party had not produced contradictory evidence. Therefore, the district court was not permitted to reduce the requested rate. Washington, Id.

In the matter at hand, Plaintiffs have submitted the affidavit of Lawrence J. Moran, Esquire wherein Attorney Moran affirms that an hourly rate in the range of $400-$500 is customary and reasonable in accord with the prevailing market rate for litigation before this Honorable Court. Defendants, NYCM, failed to challenge, rebut, or provide any evidence to the contrary in regard to this affidavit. As such, their argument must fail.[8]

Moreover, it is important to note, Defendants continually claim, without citing to any documentation, that Plaintiffs' demand at time of pretrial was $9,000,000.

---

[7] As the Insurance Company states the Federal Judge stated that Plaintiff had their case not dismissed by the "slimmest margins." To go from that to proving by clear and convincing evidence bad faith by a unanimous verdict, without having the Plaintiffs testify and receiving over four (4) times the underlying amount should speak volumes.

[8] Defendants further appear to make a personal attack beginning their argument under this section stating they will defer to this Honorable Court regarding the assessment of plaintiff counsel's "professional methods." It is noted, but will not be dignified with a response. Instead, Plaintiffs will address the legal issues at hand and argue them accordingly.

This is completely false.

On September 16, 2014, the parties appeared before the Honorable Court, specifically the Honorable Richard P. Conaboy, wherein extensive discussions were held with both Plaintiffs' Counsel and Defense Counsel.  At the time of said conference Plaintiff demanded $245,000.[9]  Despite these demands, Defendants continue to hyperbolize, misconstrue and/or ask this Honorable Court to take out of context discussions that had occurred between the parties.

Defendants have never made a written offer to resolve the bad faith claim despite the correspondence of October 19, 2015, less than two weeks before trial.  It was this information, Plaintiffs' demands of $245,000 and $450,000, that Plaintiff was attempting to clarify for the Honorable Court at the time of the Preliminary Hearing before Your Honor. Obviously, an offer of $75,000 on the eve of trial is unfathomable for the Plaintiff to accept as they would receive $0 dollars in there pocket after attorney's fees and expenses.

As such, if Defendant, NYCM, had resolved the claim for $245,000 on September 16, 2014, or even the $450,000 on October 19, 2015, Mr. and Mrs. Clemens, after taking into consideration attorneys fees and costs, would have received close to the $175,000 they are receiving after the trial since now Defendant, NYCM has to pay the attorney's fees and costs of the prevailing party.  Therefore,

---

[9] Also, on October 19, 2015, Plaintiffs' Counsel sent correspondence to Defense Counsel wherein Plaintiff demanded $450,000 as a low to resolve the case.  This written demand was made less than fourteen days before the commencement of trial.

since clients did prevail on the ultimate issue, that Defendant, NYCM, committed bad faith, the amount demanded was very reasonable.

Thus, Plaintiffs substantially prevailed, especially in light that Defendants have provided no documentation evidencing <u>any written</u> offer other than the oral offer of $75,000 made a few days before the trial date. By that time Plaintiff had to prepare the case for trial and had, and as evidenced by the in-camera submission and costs, an enormous amount of time and money invested into this case.

Also, it is important to note, at the time of trial, if the jury would have asked to determine the costs and attorneys' fees of Plaintiffs, since they found bad faith had been committed, this would have been included in the verdict.  Thus, even during trial, Plaintiffs' Counsel reiterated that if Defendant, NYCM, came to $1,000,000, then the case would be settled.  If all the amounts were considered by the jury, the jury verdict would have been the $100,000 plus attorneys' fees, costs, and interest, which as per the calculations would be equal to the amounts sought by Plaintiffs in this instant petition[10].  Therefore, Defendant's argument fails.

### 3.  The result achieved (Results Achieved 4 Times Underlying Amount)

The purpose of an award of attorneys' fees, interests and costs, upon a finding of bad faith, is to make an insured whole.  <u>Terletsky v. Prudential,</u> 437 Pa. Super. 108,

---

[10] Due to the parties agreeing Your Court would add these additional costs, attorney's fees, and interests the jury was not allowed to hear this evidence and award the total amount due and owing as per the statute. If the jury did hear these amount after finding bad faith and were allowed to award these amount the award would be $300,000 over what Plaintiff was demanding mid-trial.

649 A.2d 680 (1994).  Should the Insurance Company's arguments be accepted by

Your Court, that would mean that Insurance Company would be able to financially

bully normal every day Insureds knowing that at the end of the day all small claims

can be defeated by aggressively defending them because no attorneys would accept

cases that require hours of work which they would never be paid for doing.

This at the same time as the Defense attorney representing the Insurance

Company receives the benefit of "no risk of getting paid," getting paid each month

on time, and is allowed to "paper the case to death" so that the Plaintiff and their

attorney gives in to both to the financial and pressure of the risk of no recovery or

one that even if they are successful a court does not award the amount expended to

obtain the result. Courts in this regard have stated,

> "A victim of bad faith by an insurer is left less than whole not only by the
> denial of benefits of the policy but also the legal fees it was forced to incur to
> prove the denial was in bad faith.  An award of attorneys' fees in addition to
> the benefits of the policy works to make the insured completely whole."
> Jurinko v. The Medical Protective, 2006 U.S. Dist. LEXIS 42923 (E.D. Pa.),
> quoting State Farm Mutual v. Campbell, 538 U.S. 408 (2003.)

Defendants in opposition argue, that the punitive damage award in Jurinko is

distinguishable from the damage award of $100,000 in the present case and as such,

alledge Plaintiffs fees sought to be unreasonable.  Defendant's argument is

misplaced in that in Jurinko, the Plaintiffs urged the Honorable Court to use the

"percentage-of-recovery method" to calculate attorneys' fees.  However, the court

found the lodestar method applied because Pennsylvania Rule of Civil Procedure

1716 (now 1717) requires it, and because no court had ever adopted the percentage-of-recovery method in a bad faith case.  <u>Jurinko</u>, Id.  As such, the court applied the lodestar method, thereby awarding $323,167.50 in attorneys' fees.[11]

In the matter at hand, Plaintiffs are not requesting the court to entertain or evaluate a reasonableness of a ratio.  There is no ratio presented.  Plaintiffs are asking this Honorable Court to award Plaintiffs' attorneys' fees based upon the lodestar calculation and taking the enhancement factors into consideration.

Further, the Insurance Company, itself, at the pretrial conference held right before trial on October 23, 2015,  stated to Your Court that the most Plaintiff could recover based on the ratio of punitive damages is as much as Plaintiff actually received. In addition, the Court is well aware of the strong deterrent value of Punitive damages, which are designed and in fact do deter this type of future conduct of this and other Insurance Companies. This clearly is of enormous benefit upon the public.

### 4. The magnitude, complexity and uniqueness of the litigations. (Case was complex, of magnitude, and unique)

The Insurance Company argued as an officer of the Court to a jury of 8 that this case and issues within it were so complex that it took a Federal Judge with more than 50 years of experience to come to a decision concerning matters months later in

---

[11] The <u>Jurinko</u> Court also awarded $15,438.06 in costs as well as additional interest at the rate of prime plus three percent despite the fact that the parties had entered into a stipulation in regard to interest during trial.

this case. That clearly speaks volumes in reference to the magnitude, complexity and

uniqueness of this litigation. Plaintiff has not found <u>any other</u> bad faith cases that

was/were tried before a jury based on a guest passenger UIM case.

The case was so unique there is not even any Standard Federal Jury Instructions.

Thus, Your Court's instructions are precedential. There were numerous other issues

addressed, such as whether the Insurance Company owed a heightened duty,[12]

whether Pennsylvania or New York law applied etc… Plaintiff can go on in regard

magnitude, complexity and uniqueness of this litigation; however, a simple review

of, but not limited to, 1) the docket and amount of entries; 2) the number of motions

in limine the parties filed; 3) Plaintiffs' expert report, which documents all the

matters the jury had to consider clearly and unequivocally demonstrates that the case

was not straightforward.  Obviously, otherwise there would not be over 200 filings

and all of the other issues spoken about above.

### 5.  Fee contingent upon success. (Fee and Costs Were Contingent on Success)

Defendants correctly cite <u>Polselli</u> in stating the object of an attorney fee award is

to make the successful plaintiff completely whole.  <u>Polselli</u>, 126 F.3d at 537.  This is

exactly what Plaintiffs intent herein by the filing of this instant petition.[13]

The Court has requested and the Plaintiffs have submitted Plaintiffs fee

---

[12] Defendant Insurance Company has stated they will be appealing based on the Court's instruction in this regard.
[13] In this section as well, Defendants again resort to personal attacks against Plaintiffs' Counsel by suggesting Plaintiffs' Counsel seek a "windfall" in order to improve the "financial lot of lawyers."  The comments are noted but will not be dignified with a response.  Again, Plaintiffs will continue, as they always have, to argue the issues on the merits.

agreement for an in-camera inspection. Plaintiff's attorney faced great risk that the over $50,000 of money put into the case and the numerous hours worked on the case would never yield a penny. Despite this risk, despite the hours put into the case, despite not getting paid monthly, Plaintiffs' Firm withstood the Insruance Company's barrage of filing, withstood the Insurance Company stating that Plaintiff was "pulling the handle of a slot machine," withstood the Insurance Company calling Mr. Clemens a liar, and in fact after it all prevailed by proving by clear and convincing evidence when 8 unanimous jurors verdict slip stated the Insurance Company did act in bad faith.

The case law is clear that the contingent fee and the risk associated there with requires consideration by Your Court. The simple fact is that but for attorneys who are willing to put large amounts of costs into a case with no guarantee of success, big Insurance Companies who have hundreds of millions in surplus would be allowed to "bully" every citizen and make them do whatever is required. For this reason, Courts have recognized the importance of these arrangements and the Plaintiff's attorneys should be compensated for the same.

**D. <u>Fee upon a Fee</u> (See the Invoice and Plaintiffs Original Brief)**

This was addressed in Plaintiffs original brief. This is for the client benefit as will be clearly evidenced upon a review of the fee agreement submitted to the Court. In regard to the amount of time it took to calculate the fee once the Court reviews the

specificity of the invoice, we believe the Court will reconsider and acknowledge that this invoice taken with the petition, the amount requested is clearly not excessive.

### E. Fee Enhancement (Enhancement of Lodestar is Applicable)

The lodestar calculation may be adjusted upwards to compensate counsel for high quality work or for the risks associated with undertaking the litigation. Id. at 1184. The party seeking the adjustment has the burden of proving that it is appropriate. Lanni v. State of New Jersey, supra at 9. "If that party meets the burden of proving that an adjustment is appropriate, the lodestar amount may be increased or decreased at the discretion of the District Court." Id.

Clearly, taking all the factors into consideration in terms of whether the Plaintiffs' fee should be enhanced all fall in favor of the enhancement. Courts have enhanced Plaintiffs' fees in cases of this nature as evidenced in Plaintiffs' original Petition and Brief. Just because Plaintiff was forced to expend numerous hours on litigating this case should not be a factor that the Court considers when determining not to enhance the fee.

At first blush, the amount Plaintiff is requesting seems to be "astronomical;" however, when any neutral person looks at the invoice and amount of time expended with the "gamesmanship" the Insurance Company has played for years, there is no doubt it is reasonable. Further, a upward enhancement is, in fact, warranted based on all of the factors, the risk, the money invested without any guarantee to be sure the

Plaintiff in this case and general public will not taken advantage of in the future is more than warranted.


## II. __Interest__ (Interest Must Be Awarded to the Clemens)

The Bad Faith Statute provides for an award of interest on the amount of the claim from the date the claim was made by the insured in amount equal to the prime rate plus three percent.  42 Pa.C.S. § 8371(1).   The Bad Faith Statute "makes clear that the prejudgment interest authorized by the Pennsylvania General Assembly is of the nature that historically had been committed to the discretion of the trial court. Fahy v. Nationwide Mut. Fire Ins. Co., 885 F. Supp. 678, 681-682 (M.D. Pa. 1995).

Pennsylvania Courts have recognized the appropriateness of an award of interest in contract cases and the court's ability to mold the same following a jury's verdict.  Somerset v. Mitchell, et. al., 454 Pa. Super 188, 685 A.2d 141 (1996).  "Our courts have generally regarded the award of pre-judgment interest not only a legal right, but also as an equitable remedy awarded to an injured party at the discretion of the trial court."  Id.

In Penneys v. Pennsylvania R.R. Co., 408 Pa. 276, 183 A.2d 544 (1962), the Pennsylvania Supreme Court adopted § 354 of the Restatement (Second) of Contracts (1981) formerly §337A, which provides that "[i]f the breach [of a contract] consists of a failure to pay a definite sum of money or to render a

performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled."  "Under the Restatement view and that of the more recent Pennsylvania cases, the award of interest in contract disputes is not based on punitive considerations but on compensation for the loss of the use of the money." Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1179 (3d Cir. 1985).

The underlying claim by Mr. and Mrs. Clemens was made known to Defendant, NYCM, at the very latest, April 1, 2010.[14]  Defendant, NYCM, had the opportunity to set reserves, invest and earn income since Plaintiffs loss over five years ago.  Clearly, the Plaintiffs, "being the innocent parties in the action, have the weight of the equities on their side."  Penneys v. Pennsylvania R.R. Co., supra at 546-547.

In opposition to Plaintiffs' instant petition, Defendants allege that the time period that the interest should be calculated should limited to a three year period from June 21, 2011 until June 20, 2014.  Defendants base their position on the determination made by Judge Conaboy in deciding the Motions in Limine in the matter.

A motion in limine is a pretrial request that ceratin inadmissible evidence not

---

[14] A simple review of the Corporate Designee's sworn testimony demonstrates the date NYCM Insurance itself states they were put on notice of the claim. See Deposition of Corporate Designee, Joseph Catalano Plaintiffs Bates 6108 Lines 12-20 (Trial Exhibit 338).

be referred to or offered at time of trial.  <u>Black's Law Dictionary</u> (8th ed. 2004).  The ruling made by Judge Conaboy limiting the time period was made to the "extent that the relevant time frame for establishing Plaintiff's bad faith claim will run from June 21, 2011 through June 20, 2014." (Document 160 at page 6.)  Thus, at time of trial, Plaintiffs were excluded from presenting any evidence during that time period pursuant to the decision.  Despite this restriction, Plaintiffs were still successful in that the jury determined Defendant, NYCM, to have acted in bad faith.  As such, pursuant to the Bad Faith Statute as well as the authorities cited above, Plaintiffs are entitled to the interest beginning April 1, 2010 through November 6, 2015 at a rate of prime plus 3 percent pursuant to 42 Pa.C.S.A. § 8371.

## III. Costs (All Costs Should be Awarded To Make Plaintiff Whole)

In addition to attorneys' fees, the Bad Faith Statute also provides for an award of costs against the insurer.  <u>42 Pa.C.S.A. § 8371(3)</u>.   For a party to receive its costs under the Act, the party must have prevailed and the costs must be reasonable.  A party prevails if it "succeed[s] on **any significant issue in litigation** which achieves some of the benefit the parties sought in bringing the suit."  <u>Hensley</u>, 461 U.S. at 433.  Succeeding means that a party achieves a court-ordered change in the legal relationship between the plaintiff and the defendant.  <u>Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health and Human Resources,</u> 532 U.S. 598, 603-604 (2001).

On November 6, 2015, an eight (8) member jury panel unanimously found that Defendant, NYCM, had acted in Bad Faith during the handling of the underinsured motorist claim.  The Clemens accordingly are the prevailing parties in this matter.[15]

## Conclusion

An insurance company has a duty to deal with its insured on a fair and frank basis, and at all times, to act in good faith.  *Hillock v. Erie Ins. Exchange*, 842 A.2d 409 (Pa. Super. 2004). The duty of good faith originates from the insurer's status as a fiduciary for its insured under the insurance contract, which gives the insurer the right, *inter alia*, to handle and process claims. In a bad faith case, the insured must prove that the insurer did not have a reasonable basis for denying benefits under the policy. The insured must also show that the insurer breached a known duty, such as the duty of good faith and fair dealing, through a motive of self-interest or ill will. In insurance bad faith cases, the insured Plaintiffs must prove the insurers' bad faith by clear and convincing evidence, a higher burden than by preponderance of the evidence. In the case sub judice, all of this was proven to the Jury and punitive damages were awarded. This is exactly what the Plaintiff set out to prove and in fact did so.

---

[15] The attorneys fees and costs are further permitted by Fed. R.Civ.P. 54(d), which permits a court to award attorneys' fees and costs to a prevailing party.  See Fed. R.Civ. P. 54(d)1 and (2).  In addition, United States District Court for the Middle District of Pennsylvania Rule of Court ("Local Rule") 54.4 permits the award of, among other fees, clerks' fees, witness fees, transcript fees, copying fees and docket fees.  Local Rule 54.4

Defendant's conduct forced its Insured to institute litigation as the only possible means to receive proper policy benefits. A reading of Plaintiff's expert report summarizes the misconduct the Insurance Company committed for financial gain through the "bonus structure" it put in place for its employees to pay less on valid claims. NYCM chose to litigate this case rather than ever attempting to negotiate a reasonable settlement.  In so doing, it spent well in excess of "who-knows-how-much"in a failed attempt to have a jury find in its favor.

As stated in the Berg case, We live in a civilized society in which we solve disputes in a civilized manner through our courts of law.  We cannot always level the playing fields of our playgrounds, but we must have a level playing field in our courts.  The reality is that the courts may be the only place where such rules that guarantee a level playing field are strictly enforced. If we cannot achieve fair resolutions in our courts, anarchy with retaliation and retribution will rule the day. Instead, civil disputes must be resolved civilly-not by bullying, economic strength, or by self-help measures and just compensation must be ordered.

The lawmakers have distinguished criminal offenses from civil wrongs.  Thus, society, through it lawmakers, prioritizes criminal conduct over civil negligence and encourages the justice of civil relief to take place not at society's expense but by the plaintiff himself paying for all the means to prosecute the case.  This is not done for criminal behavior because the people's tax dollars pay for the police and their tools

to investigate and bring criminal charges; society even pays for the legal fees of attorneys to prosecute the case.  Justice in criminal conduct is society's highest priority.  The victim does not bear any expense of paying the costs to file, nor does he or she need to pay for legal representation to prosecute.  This system has developed this way over time because a civil wrong is an injustice against the individual while a crime is an act against society and is prosecuted by society.

Civil penalties are imposed in the spirit of making the victim whole. However, there are some types of damages that are allowed in special civil cases to send a message by punishing the defendant for egregious conduct that rises above simple negligence. These are exemplary damages to prevent this type of conduct from ever again occurring by the defendant or anyone else.  Society sends a message to warn all people and institutions that if they cause similar damage by the same type of egregious behavior, they are going to pay dearly.  The goal is to punish the wrong doer and to motivate everyone to make certain that it never happens again.

Punitive damages are permitted only in special cases where absolutely merited. The burden of proof is much higher than by the preponderance of the evidence.  Consequently, the importance of awarding punitive damages is great. Punitive damages, when merited, serve a high purpose and are a special relief or punishment rarely applied in our system of jurisprudence.  It is exemplary of the highest interest that society has in the civil law and approaches criminal law in its

weight in the prosecution of appalling and shocking behavior.  It is sometimes the only type of justice available to deter powerful entities from using their position of strength to defeat the lesser party only because that party cannot compete on the same level as the giant.  It is the epitome of leveling the unbalanced playing field.

In our case, NYCM Insurance strong armed its own policyholder rather than negotiating in good faith to compensate Plaintiff for the loss suffered in the automobile collision. Defendant did not compensate Plaintiffs for their losses.  In fact, Defendant applied extensive examples of bad faith contained within Expert Setcavage's report and testimony.

What Defendant tried and trying again to do is to send the ultimate message to Plaintiffs, their attorney, and the Plaintiffs' bar in smaller cases of $25,000 or less. Simply put, what Plaintiff, and more importantly, what lawyer in his right mind, will compete with a conglomerate insurance company if the insurance company can drag the case out years and is willing to spend tons in defense expenses to keep the policyholder from getting just compensation under the contract?

Its message is 1) that it is a defense minded carrier, 2) do not mess with us if you know what is good for you, 3) you cannot run with the big dogs, 4) there *is* no level playing field to be had in your case, 5) you cannot afford it and what client will pay thousands of dollars to fight the battle, 6) so we can get away with anything we want to, and 7) you cannot stop us. The message to Plaintiffs' bar that no one can

win in a small claim against Defendant; or even if they can win, they can ill afford the costs of matching litigation expenses with this big corporation.

Plaintiffs' attorneys undertook this case on a contingency fee basis. The high risk of losing the case was compounded by the large amount of documents filed and costs that had to be fronted to litigate this case. Plaintiffs' attorneys have not yet been paid anything for the bad faith case, their effort, expenses, and risk. They have funded this lawsuit for years at astonishing cost, risk, and exposure.

Given the above facts, in the interest of fundamental fairness this court should be reluctant to award counsel fees to the Plaintiffs in any amount less than Defendant paid its own attorneys who were paid timely and without risk. After reviewing the Fee Petition, contingent fee agreement, and itemized bill including the number of hours reasonably expended in prosecuting this complex litigation matter, as well as the fact that Plaintiffs' attorneys advanced all legal fees and costs, have not received any compensation for the Bad Faith case, and were led through a murky, tumultuous sea of litigation facing deadly obstacles every stroke of the way. Their risk in taking this case and then staying with it when hit between the eyes by Defendant's insurmountable defense strategy would have resulted in most attorneys giving up a long time ago.  It merits that Plaintiffs' counsel receive in compensation what Defendant launched at Plaintiffs to fight them for years at every front. Thus, it is respectfully requested that Your Court award attorney's fees, costs, and

interests.

Respectfully submitted,

**The Pisanchyn Law Firm**

**By:** /s/ Marsha Lee Albright, Esquire
Marsha Lee Albright, Esquire
I.D. 92765
524 Spruce Street
Scranton, PA 18503
Attorneys for Plaintiffs