## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**BERNIE CLEMENS,**

                **Plaintiff,**           **Civil Action No. 3:13-cv-02447**

      **v.**

                                   **[MANNION, J.]**

**NEW YORK CENTRAL MUTUAL**
**FIRE INSURANCE COMPANY**           **JURY TRIAL DEMANDED**
**AND/OR NYCM INSURANCE**
**GROUP AND/OR NYCM HOLDINGS,**
**INC.,**                               **ELECTRONICALLY FILED**
          **Defendant.**

### *SUR* REPLY BRIEF IN FURTHER OPPOSITION TO PLAINTIFFS' PETITION FOR ATTORNEYS FEES, INTEREST AND COSTS

Charles E. Haddick, Jr., Esquire
Attorney I.D. No. 55666
Bryon R. Kaster, Esquire
Attorney I.D. No. 91707
Plaza 21, Suite 302
425 North 21st Street
Camp Hill, PA  17011-2223
717-731-4800
*Attorney for Defendants, New York*
*Central Mutual Fire Insurance Company*
*and/or NYCM Insurance Group and/or*
*NYCM Holdings, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

I.     SWORN VERIFICATIONS ................................................................................. 1

    A.     Non-Attorneys ............................................................................................ 2
    B.     Attorney – Keith Figured .......................................................................... 2

II.    ABSENCE OF CONTEMPORANEOUSLY RECORDED
    TIMESHEETS ....................................................................................................... 3

III.   ATTORNEYS' FEES – THE "LODESTAR" FORMULA ........................................ 5

    A.     Hours Reasonably Expended ..................................................................... 6
        1.     Lack Of Specificity .......................................................................... 6
            a.     Failure to identify by whom the work was
                performed ............................................................................ 7
            b.     "File maintenance" / "File management" ......................... 8
            c.     "Communicate" ................................................................... 9
            d.     "Other" ................................................................................. 9
        2.     Fees Sought Are Patently Unreasonable ..................................... 9
            a.     "Trial preparation" ............................................................ 9
            b.     "Trial attendance" ........................................................... 10
            c.     "Legal research" .............................................................. 11

    B.     Reasonable Hourly Rate .......................................................................... 12
        1.     Affidavit Of Lawrence Moran ...................................................... 12
        2.     CLS Fee Schedule ......................................................................... 14

IV.    RULE 1717 FACTORS ....................................................................................... 16

    A.     Time And Effort Reasonably Expended By The Attorney
        In The Litigation ...................................................................................... 16
    B.     Quality Of Services Rendered ................................................................. 17
    C.     Results Achieved And Benefits Conferred Upon The Class
        Or Upon The Public .................................................................................. 21
    D.     Magnitude, Complexity, And Uniqueness Of The Litigation ........... 23

V.     FEES ON FEES .................................................................................................. 24

CERTIFICATE OF WORD COUNT
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Blum v. Stenson, 465 U.S. 886, 895, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984) ............................................................................................................ 12

Hensley v. Eckerhart, 461 U.S. 424 (1983) ......................................................... 6

Jean v. Nelson, 863 F.2d 759 (11th Cir. 1988)................................................... 4

Jurinko v. The Medical Protective, 2006 U.S.Dist.LEXIS 13601, *29 (E.D.Pa. 2006) ........................................................................................... 20

Keenan v. City of Phila., 983 F.2d 459 (3d Cir. 1992) .............................. 5, 6

Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanatory Corp., 487 F.2d 161 (3d Cir. 1973)........................................... 6, 7

Maldonado v. Houstoun, 256 F.3d 181 (3d Cir. 2001)................................... passim

Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 532, n. 15 (3d Cir. 1997).................................................................................... 23, 25

Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179 (3d Cir. 1995) ......................................................................................... 6, 8

Rainey v. Philadelphia Housing Auth., 832 F.Supp. 127 (E.D.Pa. 1993) ............................................................................................................ 15

Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990)........................................ 6, 7, 12

Terletsky v. Prudential Property and Casualty Ins. Co., 437 Pa. Super. 108, 649 A.2d 680, 688 (Pa.Super. 1984)(quoting Black's Law Dictionary 139 (6th ed. 1990))(citations omitted) ...................................... 21

The Birth Center v. St. Paul Cos, 1999 PA Super 49; 727 A.2d 1144; 1999 Pa. Super. LEXIS 188 ...................................................................... 24

Webb v. County Bd. of Educ., 471 U.S. 234 (1985) ........................................ 5

## Other Authorities

42 Pa. CSA § 8371 ................................................................................................ 22

F.R.C.P. 11 ............................................................................................................. 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**BERNIE CLEMENS,**

    **Plaintiff,**   **Civil Action No. 3:13-cv-02447**

  **v.**
          **[MANNION, J.]**

**NEW YORK CENTRAL MUTUAL
FIRE INSURANCE COMPANY**  **JURY TRIAL DEMANDED**
**AND/OR NYCM INSURANCE
GROUP AND/OR NYCM HOLDINGS,
INC.,**         **ELECTRONICALLY FILED**
   **Defendant.**

**_SUR_ REPLY BRIEF IN FURTHER OPPOSITION TO PLAINTIFFS' PETITION
FOR ATTORNEYS FEES, INTEREST AND COSTS**

**I. SWORN VERIFICATIONS**

The Court's December 11, 2015 order required Plaintiff to submit "a sworn verification, under penalty of perjury, from **each** attorney or non-attorney for whom fees have been requested in this action verifying that the fees requested are accurate and were for the actual and necessary services performed in the representation of the plaintiff in this matter." (Doc. 225.)

Plaintiff submitted "Affidavits" from the following individuals, all of whom are believed to be attorneys:  Doug Yazinski; Michael Pisanchyn, Jr.; Marsha Lee Albright; Daniel D'Antonio; and Bradley D. Moyer.  (See Doc. 234.) Plaintiff did not provide sworn verifications from any non-attorneys, and it

also appears that a sworn verification is lacking from at least one attorney, Keith Figured.

## A.   <u>Non-Attorneys</u>

The "itemized bill" contains entries for work allegedly performed by paralegals and information technology professionals under the headings "PARALEGAL" and "IT", respectively.[1]  (<u>See</u> Doc. 234-2.)

Plaintiff, however, has not submitted sworn verifications from any paralegals or IT professionals.  Therefore, Plaintiff has failed to comply with the Court's order, and, as such, these fees should not be awarded in this case.

## B.   <u>Attorney – Keith Figured</u>

Furthermore, Plaintiff has not submitted an affidavit for Keith Figured. However, it appears that Plaintiff is requesting fees related to his involvement in the case.

For example, a July 6, 2010 entry states:   "Attorney review of correspondence."  (Doc. 234-2, p. 2.)  The "correspondence" was a letter from Attorney Figured to Defendant.  (<u>See</u> Exhibit 1.)  A June 21, 2011 entry refers

---

[1] By defense counsel's calculation, Plaintiff is requesting fees for 304.5 hours of paralegal work and for 109.75 hours of work for IT professionals, which, at $80 an hour for paralegals and $100 an hour for IT, amounts to $35,335 in fees.

to a "Telephone conference from carrier." (Doc. 234-2, p. 8.) That "conference" took place between Mr. Figured and James Dvoracek. (See Exhibit 2 (06-21-2011 entry).) A July 20, 2011 entry references a "Correspondence from carrier,"[2] which is a letter to Mr. Figured. (See Exhibit 3.) An August 22, 2011 entry refers to a "Correspondence to carrier." (Doc. 234-2, p. 9.) That "correspondence" was a letter from Mr. Figured. (See Exhibit 4.)

Unfortunately, the bill does not identify the individual that performed each task, making it impossible for Defendant to identify all of the entries that relate to work allegedly performed by Mr. Figured. However, to the extent that Plaintiff is now seeking fees for Mr. Figured, these fees should not be awarded in this case because Plaintiff has failed to provide a sworn verification from Mr. Figured.

## II.   ABSENCE OF CONTEMPORANEOUSLY RECORDED TIMESHEETS

Plaintiffs state that "this itemization was created within the 64.5 hours (allegedly spent preparing the petition for fees)." (Doc. 227, p. 6.) Therefore, it can fairly be assumed that Plaintiff's attorneys did not maintain contemporaneously recorded time sheets.

---

[2] (Doc. 234-2, p. 9.)

The bill includes references to documents, letters, correspondence, and telephone calls that are not similarly reflected in Defendant's file.   For example, the bill refers to communications with "carrier"[3] that purportedly occurred on March 30, 2010, April 1, 2010, and April 6, 2010.   (Doc. 234-2, pp. 1-2.)   However, Defendant first received notice that the Pisanchyn Law Office was representing Plaintiff on April 12, 2010.   (See Exhibit 2 (04-12-2010 entry).)   The bill also refers to telephone conferences and calls with the "carrier" on July 22, 2010, July 26, 2010, July 31, 2010, September 28, 2010, October 5, 2010, January 7, 2011, and February 3, 2011 .   (Doc. 234-2, pp. 1-5.)   Defendant's logs, however, do not reflect any conferences or calls with Plaintiff's counsel on those dates.[4]   (See Exhibit 2.)

Even the courts that have excused the absence of contemporaneous time records still require that there be some way to confirm that the records are reliable.   See, e.g., Jean v. Nelson, 863 F.2d 759, 772 (11th Cir. 1988)

---

[3] It is presumed that Plaintiff is referring to Defendant.  However, if Plaintiff later claims that his attorneys are referring to conversations with the tortfeasor's insurance carrier, then Defendant objects because fees related to the underlying third party claim are not recoverable as part of this lawsuit.

[4] Conversely, Defendant also has record of activities that occurred that do not appear to be reflected in the bills, such as a call from Plaintiff's attorney's office on March 16, 2011, which is not reflected in the bill.  (See Exhibit 2 (March 16, 2011 entry); and Doc. 234-2, p. 6.)

("contemporaneous time records are not indispensable where there is other reliable evidence to support a claim for attorneys' fees"). Here, there is no such reliable evidence, and, in the absence of such, Plaintiff has failed to meet his burden.[5]

## III.   ATTORNEYS' FEES – THE "LODESTAR" FORMULA

The "lodestar" formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).

With respect to establishing "the number of hours reasonably expended" and the "reasonable hourly rate," that burden falls squarely upon Plaintiff. See Webb v. County Bd. of Educ., 471 U.S. 234, 242 (1985) ("the party seeking an award of fees has the burden of submitting 'evidence

---

[5] In footnote 1, Plaintiff "avers" that "should the Court request the Defense billing, this Court will see that the hours expended and billed by the Defense are the same if not more than Plaintiff is submitting within their petition." (Doc. 227, p. 6, n. 1.)  Not unlike the plaintiff's attorney in Keenan v. City of Phila., this argument by Plaintiff shows that he "clearly misread the process of documenting a fee petition."  Keenan v. City of Phila., 983 F.2d 459, 473 (3d Cir. 1992).  With respect to identical "suggestions that defense counsel 'need only consult their own files' to ascertain the nature of the work being performed at any point in time," the Third Circuit rejected the plaintiff's position as "misleading in view of the burden placed on the plaintiff." Id.  The burden is on Plaintiff as "the party filing a fee petition to establish that the rate claimed is reasonable," and, as the Third Circuit Court of Appeal made clear in Keenan, he may not meet this burden by relying upon defense counsel's bills.

supporting the hours worked and rates claimed.'"), <u>citing</u> <u>Hensley v.</u> <u>Eckerhart</u>, 461 U.S. 424, 433 (1983); and <u>Keenan v. City of Phila</u>., 983 F.2d 459, 473 (3d Cir. 1992).

### A.   <u>Hours Reasonably Expended</u>

Courts have "a positive and affirmative function in the fee fixing process, not merely a passive role," and, thus, the following framework exists for determining the hours reasonably expended under the "lodestar" method:

> In calculating the hours reasonably expended, a court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" <u>Public Int. Research Group of N.J., Inc. v. Windall</u>, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); <u>see</u> <u>also</u> <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The district court should exclude hours that are not reasonably expended.").

<u>Maldonado</u>, 256 F.3d at 184.

### 1.   Lack Of Specificity

A fee petition must be sufficiently specific so that a court can determine whether the fees requested are reasonable.  <u>See</u> <u>Rode</u>, 892 F.2d at 1190 ("A fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'"), <u>citing</u> <u>Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard</u>

Sanatory Corp., 487 F.2d 161, 167 (3d Cir. 1973).  "A fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.'" Id.

Plaintiff's petition lacks the requisite specificity.

### a.    Failure to identify by whom the work was performed

As stated above, the Third Circuit requires that a fee petition include "some fairly definite information as to ... the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." Rode, 892 F.2d at 1190.  While it is not necessary to know "the specific attainments of each attorney," the fee petition is required to be specific enough to allow the court "to determine if the hours claimed are unreasonable for the work performed." Id.

With the exception of three entries that include parenthetical references to "MJPJ" and "LA",[6] presumably referring to Attorneys Pisanchyn and

---

[6] (See Doc. 234-3, p. 41.)

Albright, respectively, Plaintiff has not identified the attorney or "classes of attorneys" that performed the tasks identified in the bill.

The failure to identify the specific attorney prevents the court from determining whether the fees being sought are reasonable because Plaintiff seeks to rely upon the fee schedule established by Community Legal Services, Inc., which assigns different rates based upon the experience of the attorney. (See Doc. 215-5; and https://clsphila.org/about-cls/attorney-fees.)   By not disclosing which of their variously experienced attorneys performed what activities, it is impossible for this Court to assign an appropriate hourly rate based upon the fee schedule and, thus, determine whether the fees sought are "unreasonable for the work performed."

### b.    "File maintenance" / "File management"

By defense counsel's calculation, the bill includes 316 entries amounting to 112 hours spent on "File maintenance" and "File Management."[7]   (See Doc. 234-2 and 234-3.)

"Hours that would not generally be billed to one's own client are not properly billed to an adversary." <u>Maldonado</u>, 256 F.3d at 184, <u>citing</u> <u>Public Interest Group</u>, 51 F.3d at 1188.

---

[7] 54 hours spent by attorneys, and 58 hours spent by paralegals.

The undersigned attorneys have roughly 35 combined years of experience practicing law, all of which has included completing daily timesheets, and they have never billed a client for "file maintenance" or "file maintenance."  Furthermore, Defendant has attached an affidavit from Glori Onufrak, who has over 25 years' experience in the field of legal billing.  (See Exhibit 5.)  According to the affidavit, Ms. Onufrak "is unaware of any client that would pay for "File management" or "File maintenance."  (Exhibit 5.)

### c.     "Communicate"

There are 50 entries indicating only:  "Communicate."  These entries amount to 40 hours of time allegedly spent by attorneys.  Defendant submits that it is impossible "to determine if the hours claimed are unreasonable for the work performed" based solely upon the word "Communicate."

### d.     "Other"

Defendant submits that it is likewise impossible "to determine if the hours claimed are unreasonable for the work performed" based solely upon the word "Other," which appears 25 times in the bill.

### 2.     Fees Sought Are Patently Unreasonable

### a.     "Trial preparation"

By defense counsel's calculation, Plaintiff is claiming that from August 12, 2015 to November 1, 2015, alone, his attorneys spent 641 hours

preparing this case for trial.[8]  (See Doc. 234-3, p. 41 to p. 46.)  This amounts to

an average of 12.5 hours spent each of those 51 days (including weekends and

holidays) preparing this case for trial.  Incredibly, this calculation includes the

following entries devoted to "Trial preparation":

a.   17.5 hours on September 10, 2015;
b.   16.25 hours on September 25, 2015;
c.   21.5 hours on October 12, 2015;
d.   21 hours on October 16, 2015;
e.   22 hours on October 18, 2015;
f.   17 hours on October 21, 2015;
g.   17 hours on October 25, 2015; and
h.   20.25 hours on October 26, 2015.

(See Doc. 234-3, p. 41 to p. 46.)

Defendant submits that 641 hours spent preparing this case for trial – a

case that involved only five witnesses and that this Honorable Court described

during the pretrial conference as a "simple, straightforward bad faith claim" –

is unreasonable.  (Doc. 231-3, p. 5.)

### b.   "Trial attendance"

Plaintiff is seeking fees for three attorneys to attend trial; (see

Doc. 243-3, p. 46), and, while there were certainly three attorneys that sat at

plaintiff's counsels' desks, only Attorney Pisanchyn spoke to the jury or asked

---

[8] At $420 an hour, 641 hours amounts to $269,220.00 in fees for preparing this case for trial.

any of the witnesses questions.  As the Third Circuit recognized:  "If a private client had agreed to pay for such services, so be it. But in fee shifting, there are standards to be maintained."  <u>Maldonado</u>, 256 F.3d at 187.   Accordingly, Defendant believes that Plaintiff has failed to establish that the fees related to the other two attorneys – amounting to 96 hours at $420 an hour, or $40,320 in fees – are reasonable.

### c.    "Legal research"

Plaintiff is seeking fees related to approximately 93.25 hours allegedly spent by his attorneys on "Legal research."   This Court has repeatedly described this case as "simple" and "straightforward."  (<u>See</u> Doc. 84, p. 8; and Doc. 231-3, p. 5 (describing case as a "simple run of the mill bad faith case" and a "simple, straightforward bad faith claim.").)  Furthermore, during trial, the Court described the complexity and uniqueness of the bad faith claim as follows:

> As far as the complexity of this case, I disagree.  This is a bad faith claim that is relatively cut and dry, and that is the question of whether or not the defendant's activities were designed to drag the case out in an unfair method when they could have resolved the case.  This is not, in my mind, any different or more complex than any other bad faith claim than I have seen.  There is nothing, in fact, unusual that I can see about this claim.  It's just a classic bad faith claim.

(Day 1 Trial Transcript, p. 101, ln. 3-11.)

Defendant submits that 93.25 hours is an unreasonable amount of time spent on legal research in a case such as this one.

**B.    Reasonable Hourly Rate**

"Plaintiffs' Counsel seek their hourly rate of $420 for its firm's attorneys."   (Doc. 227, p. 10.)   Defendant believes that $420 an hour is unreasonable based upon the prevailing market rates in the relevant community.

According to the Third Circuit Court of Appeals, "a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community."  Maldonado, 256 F.3d at 184.  See, also, Blum v. Stenson, 465 U.S. 886, 895, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984); and Dellarciprete, 892 F.2d at 1183.  The court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Maldonado, 256 F.3d at 184, citing Dellarciprete, 892 F.2d at 1183.

**1.    Affidavit Of Lawrence Moran**

Plaintiff submitted an affidavit from Attorney Lawrence Moran, who indicates that he has "been certified by the National Board of Trial Advocacy" for 20 years and "been a practicing attorney within the Commonwealth of

Pennsylvania for over thirty-seven years."   (See Doc. 215-4, ¶2 and ¶3.) Mr. Moran says that his practice "consists mostly of civil litigation, with a primary emphasis on personal injury, insurance bad faith and civil right," as well as criminal defense."  (Doc. 215-4, ¶5.)  He says that his "current hourly rate is in the range of $400-$500," although "[m]ost of the fee charges in civil cases are on a contingency basis."  (Doc. 215-4, ¶5 and ¶6.)

Here, the court must compare the rate being sought by Plaintiff to "the rates prevailing in the community for similar services by lawyers of **reasonably comparable skill, experience, and reputation**."   Maldonado, 256 F.3d at 184 (emphasis added).  Defendant defers to this Honorable Court with respect to assessing the skill of Plaintiff's attorneys.  However, it is clear that none of Plaintiff's attorneys have the experience or reputation of Mr. Moran, who has "been certified by the National Board of Trial Advocacy" for 20 years and "been a practicing attorney within the Commonwealth of Pennsylvania for over thirty-seven years."  (See Doc. 215-4, ¶2 and ¶3.)

In contrast to Mr. Moran's 37 years of experience, the five attorneys that submitted affidavits in response to the Court's order of December 11, 2015 did not have a *combined* experience of 37 years on March 11, 2010, the date of the first billing entry.  It is the undersigned counsel's' belief that the following accurately reflects the years of experience of each attorney:

a.   Michael Pisanchyn, licensed since 2001;

b.   Marsha Lee Albright, licensed since 2004;

c.   Douglas Yazinski, licensed since 2006;

d.   Daniel D'Antonio, licensed since 2011; and

e.   Bradley Moyer, licensed since 2014.

When this case was tried in 2015, the most senior of the attorneys, Attorney Pisanchyn, had less than half of Mr. Moran's 37 years of experience.[9]

As for the attorneys' reputations, while Mr. Moran has been certified by the National Board of Trial Advocacy, to Defendant's knowledge, none of Plaintiff's attorneys have received any similar certifications or accolades.

Therefore, while Mr. Moran may in fact command a rate in the range of $400 to $500 an hour, Plaintiff's attorneys clearly lack Mr. Moran's experience and reputation.  Accordingly, Defendant submits that the rate being sought by Plaintiff is unreasonable.

2.   **CLS Fee Schedule**

Plaintiff also relies upon the fee schedule established by Community Legal Services, Inc., which "has been approvingly cited by the Third Circuit as

---

[9] The consequence of the attorneys' lack of experience is perhaps best illustrated by the fact that they are now claiming to have spent an incredible 93.25 hours on "Legal research" related to this matter.

being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." Maldonado, 256 F.3d at 187, citing Rainey v. Philadelphia Housing Auth., 832 F.Supp. 127, 129 (E.D.Pa. 1993).

According to the Community Legal Services' website, its current "RANGE OF HOURLY RATES" is as follows:

| | |
|---|---|
| Attorneys post-law school experience under 2 years | $180-200 |
| Attorneys 2-5 year's experience | $200-$250 |
| Attorneys 6-10 year's experience | $265-$335 |
| Attorneys 11-15 year's experience | $350-$420 |
| Attorneys 16-20 year's experience | $435-$505 |

(See Doc. 215-5; and https://clsphila.org/about-cls/attorney-fees)

As stated above, it is believed that the following accurately reflects the years of experience of each attorney:

a.    Pisanchyn, licensed since 2001;

b.    Albright, licensed since 2004;

c.    Yazinski, licensed since 2006;

d.    D'Antonio, licensed since 2011; and

e.    Moyer, licensed since 2014.

Plaintiff, however, is seeking $420 an hour for all work performed by all attorneys. (See Doc. 227, p. 10 ("Plaintiffs' Counsel seek their hourly rate of $420 for its firm's attorneys.").) That rate is the top of the range established

15

by CLS for attorneys with 11 to 15 year of experience.  However, on March 11, 2010, the date of the first entry on the itemized bill, Mr. Pisanchyn had been licensed to practice law for approximately nine years, which would put him in the $265 to $335 an hour range.  At that time, Ms. Albright had six years of experience.  Mr. Yazinski had only four years of experience, and neither Mr. D'Antonio nor Mr. Moyer was yet licensed to practice law.

Therefore, if the Court is to apply the fee schedule, then Defendant submits that it should do so at lower rates, commensurate with each attorney's experience.

## IV.   RULE 1717 FACTORS

### A.   <u>Time And Effort Reasonably Expended By The Attorney In The Litigation</u>

In arguing that the "Time and Effort Spent by Counsel Was Enormous," Plaintiff references filings by Defendant.  Plaintiff specifically refers to "bench Memoranda."  (Doc. 227, p. 11.)  However, while Plaintiff represents that "Plaintiffs' Counsel had no choice but to respond to the claims made within Defendant's surge of filings" and that they "expended a considerable portion of their time and resources on the same;" (Doc. 227, p. 11), the docket reveals that Plaintiff never actually responded to the "bench Memoranda."  Moreover, the itemized bill makes no reference whatsoever to responding to these

filings, let alone evidence that "Plaintiffs' Counsel expended a considerable portion of their time and resources on the same."

### B.   <u>Quality Of Services Rendered</u>

Plaintiff attempts to distance himself from his $9,000,000 demand made before the Pretrial Conference and during the conference.  Plaintiff goes so far as to asserts that Defendant's claim that "Plaintiffs' demand at time of pretrial was $9,000,000" is "completely false."  (Doc. 227, pp. 13-14.)

The record reflects, however, that the demand was, in fact, $9,000,000.00.  In fact, prior to October 19, 2015 the demand greatly exceeded $9,000,000.00.

In an e-mail dated October 19, 2015, Plaintiff makes a demand for "2% of the surplus of NYCM Insurance."  (Doc. 231-4 ("We believe that a fair settlement in this case would be 2% of the surplus of NYCM Insurance…. Honestly, from the limited focus groups we have done you may be looking at 5% to 10% of the surplus.")  Defendant's net worth is, as testified to during trial, approximately $450,000,000.00.   Therefore, Plaintiff's demand on October 19, 2015 was $9,000,000.00.

Lest there be any confusion, during the Pretrial Conference conducted on October 23, 2015, Plaintiff's counsel responded in the affirmative to the

following question from the Court:  "Let me – let me just say, are you demanding nine million dollars?"[10]  (Doc. 231-3, p. 55, ln. 1-4.)

The $9,000,000.00 demand was actually a substantial decrease from Plaintiff's earlier demand.  On June 24, 2015, Plaintiff sent an e-mail to defense counsel in which Plaintiff made a demand for "1/3 of the net worth of NYCM insurance for a full and complete release of Plaintiffs' claims."  (Doc. 231-2.)  As Defendant's net worth was approximately $450,000,000.00, Plaintiff's demand on June 24, 2015 was approximately $150,000,000.00.[11]

Plaintiff represents that he "demanded $245,000" during a September 16, 2014 conference with Judge Conaboy.  (Doc. 227, p. 14.)  Defense counsel, Bryon R. Kaster, Esquire, who attended the conference on Defendant's behalf, hereby states that he has no recollection of a demand for $245,000 being

---

[10] THE COURT:  Let me – let me just say, are you demanding nine million dollars?

MR. PISANCHYN:  When they are at 15, yes, your Honor.  And to be honest with you, let me –

(Doc. 231-3, p. 55, ln. 1-4.)

[11] This demand was – according to Plaintiff's e-mail – based upon "Plaintiffs jury research and focus groups," which "demonstrated that this is a case wherein a jury is going to enter an award of at least of 1/3 of the net worth plus all of the aforementioned damages."  (231-2, p. 2.)  In actuality, the jury entered an award of approximately .02% of Defendant's net worth.

made by Plaintiff at the September 16, 2014 conference or at any other time.[12]

Attorney Kaster makes this statement well aware of his obligation of truthfulness and candor to the tribunal found in the applicable rules of professional conduct and encompassed in Rule 11 of the Federal Rules of Civil Procedure.  To be clear, Defendant disputes that Plaintiff demanded $245,000 to resolve this matter during the September 16, 2014 conference or at any other time and demands strict proof thereof.

In footnote 9 on page 14, Plaintiff states that he "demanded $450,000 as a low to resolve the case."  (Doc. 227, p. 14, n. 9.)  Later, Plaintiff references this offer as a "demand" for $450,000, which is misleading.  (Doc. 227, p. 14 ("Plaintiffs' demands of $245,000 and $450,000").)  In regard to a proposed "high low" agreement, Plaintiff advised he would agree to "$450,000 to 5% of the surplus (an amount totaling $22,500,000.00)" in the October 19, 2015 e-mail.  (Doc. 231-4.)  To be clear, however, Plaintiff never demanded to

---

[12] It is defense counsel's recollection that settlement discussions did not take place during the conference because Plaintiff produced his expert report for the first time during the conference and Defendant required time to review the report before engaging in any meaningful settlement negotiations.  The Court's order following the conference seems to be consistent with Attorney Kaster's recollection, stating that "Defense counsel is to be accorded ten (10) days to review documents recently provided by Plaintiff's counsel and to advise the Court whether, in light of said documents, further settlement negotiations would be advisable."  (Doc. 66, ¶2.)

resolve the bad faith claim for $450,000, only that he would accept that amount as a floor to his recovery.

Finally, Plaintiff also makes a puzzling argument about what would have happened "if the jury would have asked to determine the costs and attorneys' fees of Plaintiff…," and argues that "[i]f all the amounts were considered by the jury, the jury verdict would have been the $100,000 plus attorneys' fees, costs, and interest, which as per the calculations would be equal to the amounts sought by Plaintiffs in the instant petition."  (Doc. 227, p. 15.)  In footnote 10, Plaintiff states, "If the jury did hear these amount (sic) after finding bad faith and were allowed to award these amounts the award would be $300,000 over what Plaintiff was demanding mid-trial."  (Doc. 227, p. 15, n. 10.)  With all due respect to Plaintiff's attorneys, Defendant does not at all understand the argument being made here by Plaintiff.  If Plaintiff is speculating as to what the jury might have done, Defendant submits that such supposition is entirely without foundation, and, moreover, such speculation is irrelevant to the Court's assessment of fees, costs, and interest.[13]

---

[13] Defense counsel would be remiss if they did not respond briefly to footnote 8 of the Reply Brief.  The Court must consider "counsel's professional methods."  Jurinko v. The Medical Protective, 2006 U.S.Dist.LEXIS 13601, *29 (E.D.Pa. 2006).  Neither Defendant nor its attorneys, however, can think of any
(footnote cont.)

C.     **Results Achieved And Benefits Conferred Upon The Class Or Upon The Public**

Plaintiff cites to <u>Terletsky</u> for the proposition that an award of attorneys' fees, interest and costs "is to make an insured whole."  (Doc. 227, p. 15.)  Defendant does not dispute the proposition that such an award serves to make the insured whole.

Although the parties appear to agree on this principle of law, there is a clear disagreement on its application.   Plaintiff argues that "[s]hould [Defendant]'s argument be accepted by Your Court, that would mean that [Defendant] would be able to financially bully normal every day Insureds knowing that at the end of the day all small claims can be defeated by aggressively defending them because no attorney would accept cases that require hours of work which they would never be paid for doing."  (Doc. 227,

_____

benefit to one party's attorneys giving their opinions about the professional methods of the other party's attorneys where, as in this case, the Court has undoubtedly seen enough of the attorneys to come to its own conclusion. Accordingly, in an effort to avoid any further animosity between counsel, Defendant has simply deferred to the Court regarding any assessment of Plaintiff counsel's "professional methods."   (Doc. 222, p. 13.)   Defendant regrets that Plaintiff nevertheless appears to have been offended, but, in truth, it is baffling why Plaintiff would construe such deference as a "personal attack" that "will not be dignified with a response."  (Doc. 227, p. 13, n. 8.)

p. 16.)  To be clear, Defendant makes no such argument.  If a jury believes that an insurance company acted in bad faith by "financially bully[ing]" its insured, then, under Pennsylvania law, that insurance company should be punished in order to deter it from doing the same to other insureds in the future, which is precisely why Section 8371 provides for an award of punitive damages.  While such a result may be properly considered when deciding on an appropriate punitive damages award, such a consideration, however, is improper when determining the amount of fees to be awarded.

The punitive damages phase of this lawsuit is now over, and, on this issue, the jury was instructed:

> If you decide that the plaintiff is entitled to an award of punitive damages, it is your job to fix the amount of such damages. In doing so, you may consider any or all of the following factors:... 3. **the wealth of the defendant insofar as it is relevant in fixing an amount that will punish it, and deter it and others from like conduct in the future.**

(See Doc. 206, p. 29 (Punitive Damages instruction)(emphasis added).)  If the jury in this case concluded that Defendant acted in bad faith by "financially bully[ing]" the Plaintiff, then – in accordance with the instruction specifically allowing them to consider "the wealth of the defendant insofar as it is relevant in fixing an amount that will punish it, and deter it and others from like conduct in the future – the jury was free to take that into consideration when

22

awarding punitive damages.  It is not, however, a proper consideration for an award of attorneys' fees, which is solely intended to make Plaintiff whole.

Incidentally, it is not actually the insured that Plaintiff is arguing may be left un-whole by the result; rather, it is Plaintiff's attorneys that perhaps would end up uncompensated for their time.  (See Doc. 227, p. 16 ("Should [Defendant]'s argument be accepted by Your Court, that would mean that [Defendant] would be able to financially bully normal every day Insureds knowing that at the end of the day all small claims can be defeated by aggressively defending them because *no attorney would accept cases that require hours of work which they would never be paid for doing*." (emphasis added)).)  However, on this subject, the Third Circuit recognizes that "[f]ee-shifting statutes," such as the bad faith statute, "were not designed as a form of economic relief to improve the financial lot of lawyers." Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 532, n. 15 (3d Cir. 1997). Therefore, Plaintiff's argument is misplaced.

### D.   **Magnitude, Complexity, And Uniqueness Of The Litigation**

In the end, it does not matter how either Defendant or Plaintiff or the partys' attorneys has characterized this case.  It matters only that the Court has remarked that neither the underlying contract claim nor the bad faith claim was either complex or unique.  In response to summary judgment

23

motions filed by both Plaintiff and Defendant, the Court described the underinsured motorist claim as "relatively straightforward."  (Doc. 84, p. 8.) At the Pretrial Conference, the Court described this case as a "simple run of the mill bad faith case" and a "simple, straightforward bad faith claim." (Doc. 231-3, p. 5.)   During trial, the Court described the complexity and uniqueness of the bad faith claim as follows:

> As far as the complexity of this case, I disagree.  This is a bad faith claim that is relatively cut and dry, and that is the question of whether or not the defendant's activities were designed to drag the case out in an unfair method when they could have resolved the case.  This is not, in my mind, any different or more complex than any other bad faith claim than I have seen. There is nothing, in fact, unusual that I can see about this claim. It's just a classic bad faith claim.

(Day 1 Trial Transcript, p. 101, ln. 3-11.)

## V.   FEES ON FEES

As stated in Defendant's Brief in Opposition, "fees on fees" are only recoverable "if the client retains a material interest in the fee litigation."  The Birth Center, 727 A.2d at 1161.  Section 7 of Plaintiff's fee agreement, entitled "Recovery during or after trial / arbitration," however, is blank or redacted. (See Doc. 234-1, §7.)   Accordingly, it is still unknown whether the fee proceedings could affect the Plaintiff's duty to pay his attorney.  If they do not, then Plaintiff does not have a material interest in the fee litigation, and, thus,

fees on fees are not recoverable.  See <u>Polselli</u>, 126 F.3d at 538 ("a client has a material interest in the outcome of the fee proceeding when those proceedings could affect the client's duty to pay her attorney.").

Respectfully submitted,

**DICKIE, McCAMEY & CHILCOTE, P.C.**

Date: <u>February 7, 2017</u>          By: <u>/s/ Bryon R. Kaster</u>
                                       Bryon R. Kaster, Esquire
                                       Attorney I.D. No. 91707
                                       Plaza 21, Suite 302
                                       425 North 21st Street
                                       Camp Hill, PA  17011-2223
                                       717-731-4800
                                       *Attorney for Defendants, New York*
                                       *Central Mutual Fire Insurance Company*
                                       *and/or NYCM Insurance Group and/or*
                                       *NYCM Holdings, Inc.*


Date: <u>February 7, 2017</u>          By: <u>/s/ Charles E. Haddick, Jr.</u>
                                       Charles E. Haddick, Jr., Esquire
                                       Attorney I.D. No. 55666
                                       Plaza 21, Suite 302
                                       425 North 21st Street
                                       Camp Hill, PA  17011-2223
                                       717-731-4800
                                       *Attorney for Defendants, New York*
                                       *Central Mutual Fire Insurance Company*
                                       *and/or NYCM Insurance Group and/or*
                                       *NYCM Holdings, Inc.*

## WORD COUNT CERTIFICATE

AND NOW, this ___7th___ day of ___February___, 2017, I, Charles E. Haddick, Jr., Esquire, hereby certify that the content of  Defendant, New York Central Mutual Fire Insurance Company's Sur Reply Brief contains 4,498 words in compliance with M.D. Pa. Local Rule 7.8(b)(2).


Date: February 7, 2017                    By: /s/ Charles E. Haddick, Jr.
                                          Charles E. Haddick, Jr., Esquire
                                          Attorney I.D. No. 55666
                                          Plaza 21, Suite 302
                                          425 North 21st Street
                                          Camp Hill, PA  17011-2223
                                          717-731-4800
                                          *Attorney for Defendants, New York*
                                          *Central Mutual Fire Insurance Company*
                                          *and/or NYCM Insurance Group and/or*
                                          *NYCM Holdings, Inc.*

26

## CERTIFICATE OF SERVICE

AND NOW, this 7TH  day of February, 2017, I, Charles E. Haddick, Jr.,

Esquire, hereby certify that I did electronically file a true and correct copy of

the foregoing document, said document is available for viewing via ECF by the

following counsel for record:

> Michael J. Pisanchyn, Esquire
> M. Albright, Esquire
> 524 Spruce Street
> Scranton, PA 18503

Date: February 7, 2017                    By: /s/ Charles E. Haddick, Jr.
                                          Charles E. Haddick, Jr., Esquire
                                          Attorney I.D. No. 55666
                                          Plaza 21, Suite 302
                                          425 North 21st Street
                                          Camp Hill, PA  17011-2223
                                          717-731-4800
                                          *Attorney for Defendants, New York*
                                          *Central Mutual Fire Insurance Company*
                                          *and/or NYCM Insurance Group and/or*
                                          *NYCM Holdings, Inc.*