**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BERNIE CLEMENS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:13-2447** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **NEW YORK CENTRAL MUTUAL** | : | |
| **FIRE INSURANCE COMPANY,** | | |
| | : | |
| **Defendant** | : | |
| | : | |

## MEMORANDUM

Pending before the court is the plaintiff's counsels' petition for attorneys' fees, interest and costs brought pursuant to the provisions of 42 Pa.C.S.A. §8371.[1] (Doc. 215). In reviewing the petition, the plaintiff's counsel have apparently overlooked the fact that attorneys "are quasi-officers of the court and they are expected to be careful and scrupulously honest in their representations to the court . . . [they] must exercise care, judgment, and ethical sensitivity in the delicate task of billing time and excluding hours that are [vague, redundant, excessive or] unnecessary." See Hall v. Borough of Roselle, 747 F.2d 838, 842 (3d Cir. 1984). When they fail to do so, counsel should be conscious that their fees may be denied in their entirety. See id.

---

[1]At all relevant times, the plaintiff's counsel as of record were Michael J. Pisanchyn, Jr., who was the supervising attorney on the case and who acted as lead counsel at the trial in this matter, and Marsha Lee Albright, who held first position on the case and submitted a vast majority of the written filings in this matter.

(citations omitted). See also M.G. v. Eastern Regional High School Dist., 386 Fed.Appx. 186, 189 (3d Cir. 2010) ("If . . . the Court remains convinced that [counsel's] hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all."); Deptford Twp. Sch. Dist. v. H.B. ex rel. E.B., 279 Fed.Appx. 122, 126 n.2 (3d Cir. 2008).[2]

## I.    PROCEDURAL HISTORY

By way of relevant background, the above-captioned insurance bad faith action was tried before a jury from November 2, 2015, through November 6, 2015.[3] Despite the conduct of the plaintiff's lead trial counsel[4], the plaintiff

---

[2]The plaintiff's counsel have requested an astounding $1,122,156.43 in attorneys' fees, costs and interest in this matter, for which the underlying claim was $25,000. The total recovery in this action was $125,000, with the underlying uninsured motorist ("UIM") claim settling for $25,000 and the bad faith claim going to a verdict in the amount of $100,000. In reviewing the petition, as discussed more thoroughly herein, too many of the entries for which fees are requested are vague, redundant, excessive and/or unnecessary. As other courts have noted, "a fee request is not the opening salvo in a back and forth negotiation with the court. The request is not the sticker price on a used car that all parties understand is the starting point for spirited dickering." See M.G. v. Eastern Regional High School Dist., 2009 WL 3489358, at *11 (D.N.J. Oct. 21, 2009), vacated and remanded on other grounds, 386 Fed.Appx. 186 (3d Cir. 2010).

[3]This matter had originally been assigned to the Honorable Richard P. Conaboy. By order dated August 3, 2015, the case was re-assigned to the (continued...)

managed to obtain an award of punitive damages by way of the jury's $100,000 verdict. On November 6, 2015, judgment was entered in favor of the plaintiff in the amount of $100,000. (Doc. 203). On November 20, 2015, the plaintiff's counsel submitted the instant petition for attorneys' fees, interest and costs[5], (Doc. 215), along with a brief in support thereof, (Doc. 216). The defendant filed a brief in opposition to the plaintiff's petition on December 4, 2015. (Doc. 222). On December 21, 2015, the plaintiff filed a reply brief in support of the petition for attorneys' fees. (Doc. 227).

---

[3](...continued)
undersigned for trial and all further proceedings. (Doc. 162).

[4]On approximately 75 occasions during the course of the five day trial in this matter (the fifth day of which was devoted exclusively to jury instructions and closing arguments) Attorney Pisanchyn had to be admonished for his conduct which included, but was not limited to, his repeated failure to properly identify exhibits introduced at trial, his continuous improper use of videotaped depositions to show prior consistent (versus inconsistent) statements which greatly and unnecessarily lengthened the time of trial, and his repeated failure to follow instructions given by the court which, on at least one occasion, resulted in the court having to threaten Mr. Pisanchyn with the use of the United States Marshals. Attorney Pisanchyn demonstrated an astonishing lack of familiarity with the Federal Rules of Civil Procedure and the Federal Rules of Evidence, as well as a complete disrespect for the rulings of the court, the likes of which this court has never experienced.

[5]The plaintiff's counsel contemporaneously filed a bill of costs seeking $914,201.43. (Doc. 214). The court has addressed the requested costs by way of a separate memorandum and order and has directed the Clerk of Court to tax costs in the amount of $4,382.36. As such, the issue of costs will not be addressed herein.

3

In the meantime, by order dated December 11, 2015, the court noted that the plaintiff's counsel are seeking $1,122,156.43 in attorneys' fees, interest and costs for prevailing on a claim the total award of which was $125,000 - a $25,000 settlement on the UIM claim and a $100,000 punitive damages verdict on the bad faith claim. (Doc. 225). Given the astounding amount of fees requested by the plaintiff's counsel, the court directed that, ". . . in relation to the petition for attorneys' fees, interest and costs, counsel for the plaintiff are to submit a copy of the fee agreement entered into with their client for the court's consideration. Counsel are also to submit a sworn verification, under penalty of perjury, from **each** attorney or non-attorney for whom fees have been requested in this action verifying that the fees requested are accurate and were for the actual and necessary services performed in the representation of the plaintiff in this matter. Finally, plaintiff's counsel [are] advised to maintain and not destroy **any** time records for **any** client covering the period of time relevant to this case, including the time since its inception to the present date."[6] The plaintiff's counsel were directed to file the foregoing information on or before December 21, 2015.

On December 21, 2015, Attorney Albright hand-delivered several items

---

[6]The plaintiff's counsel billed approximately 2,583 hours for working on this case alone. Assuming an eight-hour billable work day, this would mean that the plaintiff's counsel worked on nothing else but this case, every day, for approximately 323 days.

to the court for *in camera* inspection. Included among these items were the affidavits of five attorneys[7] from the Pisanchyn Law Firm, which indicated each attorney's affirmation that the hours and fees requested were accurate and for the actual and necessary services performed in the representation of the plaintiff; an undated contingent fee agreement entered into between the plaintiff and the Pisanchyn Law Firm; and two sets of time logs - one covering the plaintiff's underlying UIM claim and one covering the plaintiff's bad faith claim.[8]

On January 11, 2016, the defendant filed a motion to file a sur-reply in opposition to the plaintiff's fee petition. (Doc. 231). By order dated January 24, 2017, the court noted that the plaintiff's counsel had asserted no privilege with respect to the documents submitted *in camera* and, in addition, there did not appear to be any privilege which could be asserted with respect to the documents. (Doc. 233). As such, the court directed that the documents

---

[7]The attorneys providing affidavits were Attorney Pisanchyn, Attorney Albright, Attorney Douglas Yazinski, Attorney Daniel D'Antonio, and Attorney Bradley D. Moyer.

[8]Although the plaintiff's counsel billed for non-attorney services performed by paralegals and information technology personnel, according to filings by the plaintiff's counsel, these individuals no longer work for the Pisanchyn Law Firm. Therefore, counsel provides that no affidavits could be provided on behalf of these individuals. This explanation has a hollow ring to it as one would assume that the former employees could be reached by mail, e-mail, telephone or some other reasonable method for purposes of affirming the bill for their services submitted by the Pisanchyn Law firm.

5

submitted by the plaintiff's counsel *in camera* be docketed and placed on the record. The defendant's motion for leave to file a sur-reply was granted and the plaintiff's counsel were, of course, given additional time to respond to the defendant's sur-reply.

On February 7, 2017, the defendant filed its sur-reply in opposition to the plaintiff's petition for attorneys' fees, interest and costs. (Doc. 235). The plaintiff's counsel filed a response on February 13, 2017. (Doc. 236).

Upon review of the original and supplemental materials submitted by the plaintiff's counsel in support of their request for attorneys' fees, the court found the materials to be wholly inadequate to allow the court to make a determination as to what, if any, fees the plaintiff's counsel were entitled. Given the dearth of information submitted by the plaintiff's counsel, the court scheduled a hearing in order to allow the plaintiff's counsel yet one more opportunity to provide sufficient information to support their petition. A hearing was held on the petition for attorneys' fees on August 11, 2017. In attendance for the plaintiff were Attorney Pisanchyn, Attorney Albright, Attorney Yazinski, and Attorney Michael R. Mey[9]. Attorney Charles E. Haddick, Jr., and Attorney Bryon R. Kaster, who were both present for the trial in this matter, were present for the defendant. Attorney Albright was the only witness called to

---

[9]Attorney Mey entered his appearance as co-counsel for the plaintiff on August 3, 2017, and acted as the lead counsel for purposes of the hearing on the petition for attorneys' fees.

provide testimony in support of the petition for attorneys' fees. The plaintiff's counsel presented no other witnesses and did not submit any other documentary evidence in support of the petition. Defense counsel, for their part, called Attorney Pisanchyn to testify.

With the plaintiff's counsel now having been given every opportunity to properly support their request for attorneys' fees, the court considers the merits of the petition.

## II.    DISCUSSION

As the prevailing party, the plaintiff's counsel are requesting attorneys' fees on the UIM claim in the amount of $48,050.00; on the bad faith claim in the amount of $827,515.00, and for the preparation of the petition for attorneys' fees in the amount of $27,090.00, for a total of $902,655.00 in attorneys' fees.[10] In addition, counsel are requesting interest in the amount of $175,630.70.

The Pennsylvania bad faith statute provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court **may** take all of the following actions:

---

[10]These are the amounts reflected in the summary of the petition for attorneys' fees; however, as discussed where necessary herein, the amounts billed by the plaintiff's counsel as reflected in the time logs are apparently greater.

7

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. §8371 (emphasis added).

Although the court may assess attorneys' fees, costs and interest upon a finding of bad faith, as emphasized above, it is not required to do so. Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 534 (3d Cir. 1997). Instead, the decision whether to assess attorneys' fees, costs, and interest under §8371 is completely within the discretion of the trial court. Id.

## A. Interest

Section 8371 permits courts to "[a]ward interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%." 42 Pa.C.S.A. §8371(1). An award of interest is wholly within the discretion of the trial court. The purpose of an interest award is to make the plaintiff whole. Jurinko v. Medical Protective Co., 305 Fed.Appx. 13, 14 (3d Cir. 2008) (quoting Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 236 (3d Cir. 1997)). It has been recognized that interest is equitable in nature. "Interest is not to be recovered merely as

compensation for money withheld but, rather, in response to considerations of fairness. It should not be imposed when its exaction would be inequitable." Thomas v. Duralite Co., 524 F.2d 577, 589 (3d Cir. 1975).

In requesting the court to award interest in this case, the plaintiff's counsel argue that the plaintiff's claim began April 1, 2010, and became fully payable as of November 6, 2015, the date of the jury's verdict. Counsel argue that the "unpaid balance of $125,000 should bear interest from April 1, 2010 through November 6, 2015". At the rates provided for in Pa.R.Civ.P. 238 relating to damages for delay and §8371, the plaintiff's counsel argue that the plaintiff is entitled to interest in the amount of $175,630.70.

Counsels' argument on the calculation of interest in this case is flawed for a number of reasons. Initially, the plaintiff's counsel are seeking interest dating back to April 1, 2010. While this case was with Judge Conaboy, he ruled that the relevant time frame for purposes of the plaintiff's claim runs from June 21, 2011 through June 20, 2014. (Doc. 160, pp. 5-6). Moreover, in addition to the amount of the underlying claim, i.e., $25,000, the plaintiff's counsel are seeking interest on the $100,000 in punitive damages awarded at trial. Counsel has provided no support whatsoever that the plaintiff would be entitled to interest on the amount of punitive damages awarded at trial. In fact, there is no support either in the statute or in the applicable case law for such interest. Instead, the amount subject to interest is, as the statute

9

provides, the amount of the underlying claim which, in this case, is $25,000. Finally, in requesting interest in the amount of $175,630.70, the plaintiff's counsel failed to deduct the principle amount of $125,000 upon which they calculated the interest. Even under counsels' flawed calculation, if the $125,000 were deducted as it should have been, the amount of interest owed would be reduced to $50,630.70[11].

Rather than the $175,630.70 requested by the plaintiff's counsel, the court will award interest to the plaintiff in the amount of $4,986.58.[12] This calculation is based upon the prime rate, which the parties agree remained steady at 3.25% at all relevant times, plus 3%, on the $25,000 underlying claim, compounded annually, dating from June 21, 2011 through June 20, 2014. The calculation breaks down as follows:

June 21, 2011 - June 20, 2012

_____

[11]This is the amount which the defendant's counsel erroneously assumed the plaintiff's counsel were seeking. To the contrary, it is clear from the plaintiff's counsels' filings that they are seeking interest in the full amount of $175,630.70.

[12]There is a huge discrepancy between the amount of interest requested by the plaintiff's counsel and the amount of interest to which the court finds the plaintiff is actually entitled - to the tune of $170,644.12 (a reduction of approximately 97% of what counsel have requested). It is unclear to the court whether the amount requested by the plaintiff's counsel was intentional, through deliberate indifference or gross negligence. In any case, this is but one example of counsels' failure to exercise care, judgment and ethical sensitivity when making representations to the court.

$25,000 x 6.25% = $1,562.50

$25,000 + $1,562.50 = $26,562.50

June 21, 2012 - June 20, 2013

$26,562.50 x 6.25% = $1,660.16

$26,562.50 + $1,660.16 = $28,222.66

June 21, 2013 - June 20, 2014

$28,222.66 x 6.25% = $1,763.92

$28,222.66 + $1,763.92 = $29,986.58

The total ($29,986.58) minus the principal amount already paid on the underlying claim ($25,000) leaves the plaintiff with interest in the amount of $4,986.58. This is the amount of interest which will be awarded to the plaintiff.

## B.    Attorneys' Fees

The purpose of any attorneys' fees award under §8371 is to make the successful plaintiff whole by allowing the plaintiff to recoup funds unnecessarily expended to force an insurance company to pay that which it should have paid. Polselli, 126 F.3d at 531 (quoting Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d at 236).[13]

---

[13]Although the court is aware that the lodestar method, not the percentage of recovery method, is the proper method for computing fees requested under §8371, See Jurinko v. Medical Protective Co., 305 Fed.Appx.

(continued...)

at 14-15, it is noted that plaintiff's counsel in this case have represented that the plaintiff has paid or, in the alternative, is only liable to pay them on a contingency fee basis. The agreement provided by counsel reads, in relevant part:

      6.     Recovery before trial.

      If a recovery is obtained my attorneys will receive thirty-three and one half (33 ½) percent (%) of net recovery as a fee for and in consideration of the professional services rendered by them in the investigation, instituting and general prosecution of my claim. The remainder of the net recovery will go to me.

      7.     Recovery during or after trial/arbitration.

      If a recovery is obtained my attorneys will receive Forty (40) percent (%) of net recovery as a fee for and in consideration of the professional services rendered by them in the investigation, instituting and general prosecution of my claim. The remainder of the net recovery will go to me.

(Doc. 234).

The plaintiff obtained a $25,000 settlement on the underlying UIM claim prior to trial and a $100,000 verdict on the bad faith claim after trial. On these amounts, the plaintiff is, at most, liable to his counsel for approximately $48,375, as this calculation is based on the gross, not net, recovery amount. This is pointed out merely to show the vast discrepancy in the amount for which the plaintiff is potentially liable to his counsel (at most, approximately $48,375) and the amount which his counsel are seeking in attorneys' fees ($902,655) claiming that the latter amount is necessary "to make the plaintiff whole". As plaintiff's counsel presented at the hearing in this matter that the plaintiff will not receive the benefit of any portion of the amount recovered for attorneys' fees, the court has serious concerns about who the plaintiff's

(continued...)

12

The Third Circuit has previously predicted how the Pennsylvania Supreme Court would calculate attorneys' fees in bad faith insurance claims. Jurinko v. Medical Protective Co., 305 Fed.Appx. at 31 (citing Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d at 534). In Polselli, the Third Circuit determined that a trial court must consider the factors set forth in Pa.R.Civ.P. 1717[14]/[15]. Polselli, 126 F.3d at 534. Although the Pennsylvania Supreme Court has not addressed the issue, in Birth Ctr. v. St. Paul Cos., Inc., 727 A.2d 1144, 1160 (Pa.Super.Ct. 1999), the Pennsylvania Superior Court adopted the approach. In doing so, the Superior Court stated that a calculation of attorneys' fees under Rule 1717 begins with the lodestar method. Id. Since "[t]he lodestar method is more commonly applied in statutory fee-shifting cases . . .", In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d

_____

[13](...continued)
counsel are trying to make whole.

[14]Formerly Pa.R.Civ.P. 1716, renumbered effective July 1, 2012.

[15]Pa.R.Civ.P. 1717 requires a court to consider the following factors:
(1)    the time and effort reasonably expended by the attorney in the litigation;
(2)    the quality of the services rendered;
(3)    the results achieved and benefits conferred upon the class or upon the public;
(4)    the magnitude, complexity and uniqueness of the litigation; and
(5)    whether the receipt of a fee was contingent on success.

283, 333 (3d Cir. 1998), and §8371 is a fee-shifting statute, the Third Circuit has determined that the use of the lodestar method is appropriate in §8371 cases.

In light of the foregoing, the court begins its inquiry here by determining what reasonable attorneys' fees would be in this case under the lodestar method.[16] Under the lodestar method, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Under the lodestar method, the court applies a burden-shifting type of procedure. Evans v. Port Authority of N.Y., 273 F.3d 346, 361 (3d Cir. 2001). The party seeking attorneys' fees bears the initial burden of demonstrating the reasonableness of the fees. See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 (3d Cir. 2005) (citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). To meet this burden, the fee petitioner "must submit evidence supporting the hours worked and the rates claimed." Dellarciprete,

---

[16]While this court adopts Pa.R.Civ.P. 1717 and the lodestar method to calculate attorneys' fees in this case, no separate discussion is presented with respect to Rule 1717's factors. Instead, the court integrates those factors throughout its discussion of the lodestar calculation.

892 F.2d at 1183 (quoting Hensley, 461 U.S. at 433). Once the fee petitioner has met his or her initial burden, the party challenging the request bears the burden of showing that the request is unreasonable. McKenna v. City of Phila., 582 F.3d 447, 459 (3d Cir. 2009). In light of any objections, the court must provide its reasoning when awarding fees and should provide a clear and concise explanation for the award. Planned Parenthood of Cent. N.J. v. Att'y Gen. of State of N.J., 297 F.3d 253, 266 (3d Cir. 2002). If the opposing party meets its burden of showing that it is appropriate to adjust the lodestar, "the lodestar amount may be increased or decreased at the discretion of the District Court." Dee v. Borough of Dunmore, 2013 WL 685144 at *4 (M.D.Pa. Feb. 25, 2013), *aff'd* 548 Fed.Appx. 58 (3d Cir. 2013) (quoting Lanni v. State of N.J., 259 F.3d 146, 149 (3d Cir. 2001)). If the lodestar is reduced, "the type of reduction made by a district court need not be exactly the same as that requested by the adverse party, 'as long as the fee applicant is given sufficient notice to present his or her contentions with respect to the reduction that the district court ultimately makes.'" McKenna, 582 F.3d at 459 (quoting Bell v. United Princeton Prop., Inc., 884 F.2d 713, 722 (3d Cir. 1989)).

### 1.    Reasonable Hours

The court begins making its determination of the hours reasonably expended on a matter with the claimed hours for which the applicant has

provided some evidentiary support. The plaintiff's counsel must submit evidence of the hours worked that is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Washington v. Phila. County Court of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996). In calculating the hours reasonably expended on a matter, the district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." Pa. Envtl. Def. Found. v. Canon-McMillan School Dist., 152 F.3d 228, 232 (3d Cir. 1998). Where documentation of the hours expended is inadequate, "the district court may reduce the award accordingly." Hensley, 461 U.S. at 433. As noted above and in Hensley, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. Id. at 434. Further, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Id. (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001).

As evidence of the hours worked in this matter, the plaintiff's counsel submitted two sets of time logs, one for the UIM claim, which dates from

16

March 11, 2010 through December 30, 2013, and one for the bad faith claim, which dates from December 20, 2013 through November 6, 2015. In addition, the plaintiff's counsel have submitted the affidavits of five attorneys, who claim to have represented the plaintiff's interests in this matter, indicating their belief that the hours set forth in the time logs are accurate. Counsel suggest that these materials demonstrate the reasonableness of the hours billed in this case.

In initially reviewing the time logs submitted by the plaintiff's counsel, although various attorneys from the Pisanchyn Law Firm submitted affidavits indicating their belief as to the accuracy of the hours contained therein, the court had some serious concerns regarding the reasonableness of the number of hours billed. Adding to the court's concerns is the testimony of Attorney Albright, who testified at the hearing on the petition that contemporaneous time records were not kept in this matter and therefore the time logs had to be reconstructed. Initially, with regard to the reconstruction of time records in this case, the court observes that Attorney Albright testified that she and Attorney Pisanchyn knew "relatively early in the case" that a bad faith claim would be asserted. Although Attorney Albright testified that this was her first bad faith claim, the testimony was that it was not Attorney Pisanchyn's, and the court presumes that the plaintiff's counsel were aware that, if they prevailed on their bad faith claim, they would be filing a petition for

attorneys' fees under the bad faith statute. The court also presumes that the plaintiff's counsel knew then that it would be their duty to establish entitlement to fees under the statute and that the documentation they submitted in support of their request would be the subject of the court's scrutiny. Under such circumstances, it is not only reasonable to expect that contemporaneous time records be maintained noting the type of work performed on the case, when the work was performed, who performed the work, and the actual time dedicated to such. Counsel surely knew that, if they prevailed on their claim, the court must evaluate the reasonableness of the requested fee and would require the factual basis to do it. Irrespective of what the plaintiff's counsel knew or should have known with respect to fee petitions under the bad faith statute, they did not maintain contemporaneous records but, instead, relied upon Attorney Albright to "reconstruct" records for every attorney, paralegal or IT staff member billing time on this matter over an approximately six year period.

Attorney Albright's testimony relating to her reconstruction of records for every attorney, paralegal or IT staff member billing time on this matter for a period of over six years is troubling to the court. To this extent, Attorney Albright testified that it was her responsibility, as the primary attorney on this case, to reconstruct the time logs in support of the instant petition for fees. According to Attorney Albright's testimony, the time logs she submitted are

her "guess" as to the hours spent on this case based upon information that she extracted from the Pisanchyn Law Firm's "NEEDLE" system[17], which she then compared, where possible, to information and documents contained in the hard file. Because the NEEDLE system, until recently, did not track the time expended on any particular task, Attorney Albright testified that, for each entry in the NEEDLE system, she would review the description of the task entered, consult the hard file, and then she would essentially guess how much time each task had taken. Attorney Albright testified that she did this, not only for her own entries in the NEEDLE system, but for entries which other attorneys, paralegals and information technology, ("IT"), staff had placed in the system. With respect to the other individuals' entries, she testified that, on some occasions, she was present during the task being performed, but on most occasions she was not. In fact, she testified that some of the entries which she estimated hours for were placed in the system by individuals who were no longer employed with the Pisanchyn Law Firm and who had placed

---

[17]Attorney Albright testified that the NEEDLE system is an electronic case management system which tracks the time and date of an entry into a case, a brief description of the task being performed in the case, and who performed the task. Until recently, Attorney Albright testified that the NEEDLE system would not track the time spent by each entrant on any particular task. The first time either the court or defense counsel heard of the use of the NEEDLE system to compile the summary of the time logs was at the hearing on the instant petition. As such, neither the court nor defense counsel had the opportunity to view, or even request to review, the actual entries in the NEEDLE system.

the entries in the system before she was employed with the Pisanchyn Law Firm.[18] In other words, in 2016 when Attorney Albright was reconstructing the time logs, she went back and reviewed entries pre-dating the start of her own employment with the law firm in July of 2011. She testified that she would look at the description of a task performed by another attorney or a paralegal, with whom she had not worked and who had since left the law firm, and essentially make up how much billable time she thought should be assigned to the task. Although the plaintiff's counsel have not produced for the court's inspection the actual NEEDLE system entries, for various entries in the system, such as those that may have simply been described as a "telephone call" or "conference" with an individual, it would be next to impossible for Attorney Albright to know how much time to assign to such a task without having been there herself or having the attorney who performed the task provide information regarding the actual time spent. For Attorney Albright to go back over six years of entries in the NEEDLE system and "guess" how much time it took other attorneys, paralegals or IT staff to perform entered tasks prior to her own employment with the firm, or even after she was employed with the firm when she had no personal knowledge of the actual time spent on such tasks, is flabbergasting to the court and, quite frankly, disturbing.

---

[18]As indicated, the records in this case date back to March 2010 and Attorney Albright testified that she did not become employed by the Pisanchyn Law Firm until July of 2011.

In the best of circumstances, reconstructed records create many problems for a court charged with the duty of calculating a lodestar, and courts have often emphasized the need for counsel to exercise good billing judgment in their fee requests. <u>See</u>, <u>e.g.</u>, <u>Hensley</u>, 461 U.S. at 434; <u>In re Fine Paper Litig.</u>, 751 F.2d 562, 594-95 (3d Cir. 1984). Retrospective estimates of time expended on various tasks necessarily produce inaccuracy in the number of hours billed. While manifest unreasonableness is relatively easy to discover, slight but consistent overstatement is not. Even with the assistance of correspondence files and dockets to refresh an attorney's recollection of tasks performed, some of the requested hours may be misclassified. Moreover, should the court deny a particular category of fees, any misclassification by counsel could yield an erroneous fee.

Despite the apparent problems with reconstructed time records, courts in the Third Circuit have accepted reconstructed records as a basis for awarding fees. <u>See</u> <u>Pawlak v. Greenawalt</u>, 713 F.2d 972, 978 (3d Cir. 1983), *cert. denied sub nom.* <u>Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Pawlak</u>, 464 U.S. 1041 (1984). <u>See</u> <u>also</u> <u>Blair v. Protective Nat'l Ins. Co.</u>, 1999 WL 179743 (E.D.Pa., Mar. 10, 1999); <u>Smith v. Int'l Total Serv., Inc.</u>, 1997 WL 667872 (E.D.Pa., Oct. 9, 1997) (warning counsel that the court would not expect to see reconstructed time records again in an action in which counsel knows that they may recover fees, as they

21

may create the perception of unaccountability and unfairness and because of the potential for systematic overstatement or misclassification of hours) (citing Contractors Ass'n of Eastern Pennsylvania v. City of Philadelphia, 1996 WL 355341 (E.D.Pa., June 20, 1996); Fletcher v. O'Donnell, 729 F.Supp. 422 (E.D.Pa. 1990)). Here, although the plaintiff's counsel did not maintain contemporaneous time records, and the manner in which the time logs were reconstructed in this case is subject to extreme credibility issues, the reconstructed records have permitted the defendant's counsel to challenge specific items. See Fletcher v. O'Donnell, 729 F.Supp. at 429 (reaching a similar conclusion on the facts before it). Moreover, the reconstructed time records also permit this court to make a thoughtful determination as to the reasonableness of the services performed. As such, the court will consider the reconstructed time records for the purpose of the lodestar calculation in this case, but will scrutinize them carefully.

### i.    Paralegal Hours - UIM Claim

The plaintiff's counsel have billed 106.50 paralegal hours on the UIM claim.[19] The defendant objects to the hours billed in the petition for fees on

---

[19]In the Statement of Services rendered by counsel on the underlying UIM claim, counsel indicates 104.50 hours were expended for paralegal services. However, when adding the number of hours billed in the time log for
(continued...)

several bases. Included among these are that the time logs provided for both paralegals and attorneys contain several generic categorical descriptions which do not allow either defense counsel or the court to determine whether the fees requested for such are reasonable. For example, the defendant argues that entries for fees simply described as "file maintenance", "file management", "communicate", "other" and "legal research" are not sufficiently specific to allow the court to determine whether the fees charged are reasonable.[20] In this regard, the party requesting fees must submit "fairly definite information as to hours devoted to various general activities". United Auto Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 291 (3d Cir. 2007) (quoting Evans v. Port Auth., 273 F.3d at 361). The petition "must be specific enough for the district court 'to determine if the hours claimed are unreasonable for the work performed.'" Souryavong v. Lackawanna Cnty., 159 F.Supp.3d 514, 534 (M.D.Pa. 2016) (quoting

---

[19](...continued)
paralegal services on the UIM claim, the actual total is 106.50. The court assumes the difference between the number of hours in the Statement of Services and the number of hours in the time log is simply a mathematical error on counsels' part.

[20]In their response to the defendant's sur-reply brief, the plaintiff's counsel argue that the defendant's argument regarding lack of specificity is moot in light of the itemized time logs submitted to the court. In fact, the plaintiff's counsels' time logs do not moot the defendant's argument regarding lack of specificity at all but, to the contrary, serve to support the defendant's argument.

23

Washington v. Phila. Cty. Ct. of Common Pleas, 89 F.3d at 1037). An entry for hours claimed should indicate the nature of the activity, the subject matter of the activity, the date the activity took place, and the amount of time spent on the activity. Rode, 892 F.2d at 1191. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433.

The defendant also argues that there are a number of hours billed by the plaintiff's counsel which are excessive, redundant or otherwise unnecessary.[21] As set forth above, "[i]n calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citations omitted). See also Rode, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably expended."). When calculating reasonable hours, the court should exclude hours that were not reasonably expended, such as time spent on tasks that are not normally billed to a client or hours expended by professionals on tasks that should be delegated to a non-professional assistant. Id. at 434. "[T]he District Court has a positive and affirmative function in the fee fixing process,

---

[21]See n.20.

not merely a passive role." <u>Loughner</u>, 260 F.3d 173, 178 (3d Cir. 2001). In fulfilling its role, the court should reduce the hours claimed for which the fee petition inadequately documents the hours so claimed. <u>Id.</u>

In light of the arguments raised by defense counsel in opposition to the hours billed in the petition for attorneys' fees and the manner in which those hours were reconstructed in their briefs and at the hearing on the matter, the court has reviewed **every** entry billed by the plaintiff's counsel, line by line. The court finds that a vast number of the entries for paralegal services on the UIM claim should be disallowed as vague, excessive, duplicative or unnecessary. The number of hours billed by the plaintiff's counsel for paralegal services on the UIM claim will be reduced accordingly.

Initially, there are 53 entries for paralegal services totaling 20 hours described only as "file maintenance". Attorney Albright testified at the hearing that "file maintenance" related to "document[ing] and put[ting] into a table of contents all of those correspondences [filed in this case], [and] the 200 and some pleadings that were filed on the docket and organiz[ing] all of that." Attorney Albright further testified that, in addition to paralegals, non-professional secretaries were used to perform such "file maintenance". As discussed above, the court should exclude hours for time spent on tasks that are not normally billed to a client or hours expended by professionals on tasks that should be delegated to a non-professional assistant. Tasks such as

placing documents into a table of contents and organizing documents received by the law firm or filed into the docket of a case certainly do not require billing for professional services. In fact, Attorney Albright testified that non-professional staff were, in fact, utilized to perform this task, as well as paralegals. The court finds it unreasonable to charge professional paralegal hours to perform such "file maintenance" and, therefore, the 20 hours billed for such will be disallowed.

Relatedly, on December 12, 2011, there is an entry for "file maintenance/message" billed at .25 of an hour. Moreover, there are a number of entries for "file maintenance" "regarding" one matter or another each billed at .25 of an hour. These entries are as follows: February 13, 2013, "File Maintenance re: records/subpoenas"; August 23, 2013, two entries for "File maintenance re filing fee"; August 23, 2013, "File maintenance re complaint"; August 27, 2013, "File maintenance re overnight mail fee"; September 11, 2013, "File maintenance re: mailing costs"; September 11, 2013, "File maintenance re service of complaint"; October 1, 2013, "File maintenance re Case Management Conf."; October 14, 2013, "File Maintenance re correspondence to Atty Haddick"[22]; November 22, 2013, "File maintenance re status"; December 5, 2013, three entries for "File maintenance re: wage loss";

---

[22]The court notes that a separate entry that same day bills .25 of an hour for actually drafting the correspondence to Attorney Haddick.

December 10, 2013, "File maintenance re: wage loss"; and December 30, 2013, "File maintenance re client questions about discovery". There is nothing substantive to distinguish these entries from those simply providing for "file maintenance". Therefore, the court will also disallow the 4 hours billed for these entries.

There are also two entries for "file maintenance - documentation received", each billed at .5 of an hour. In addition to falling under the "file maintenance" category discussed above, the court finds that charging .5 of an hour for the simple receipt of a document, with no indication that any action was actually taken with respect to the document, is patently unreasonable. Therefore, the court will disallow 1 hour for the entries on March 24, 2010 and March 25, 2010.

Along the same line, a number of entries billed for paralegal services on the UIM claim simply refer to "correspondence received". Where there is no indication that any action was actually taken with respect to the correspondence received, no billing will be allowed for paralegal services on

these occasions.[23]/[24] Each of these entries are billed for .25 of an hour and are dated as follows: April 6, 2010; April 9, 2010; April 12, 2010; April 16, 2010; April 19, 2010; May 17, 2010; May 20, 2010; May 27, 2010; two entries on June 3, 2010; June 16, 2010; July 7, 2010; July 16, 2010; July 19, 2010; two entries on July 20, 2010; July 27, 2010; August 4, 2010; August 24, 2010; September 28, 2010; October 7, 2010; October 19, 2010; November 23, 2010; January 7, 2011; January 10, 2011; February 9, 2011; March 28, 2011; April 8, 2011; April 11, 2011; April 15, 2011; April 28, 2011; April 29, 2011; May 5, 2011; June 30, 2011; two entries on July 11, 2011; July 20, 2011; July 22, 2011; July 25, 2011; August 24, 2011; September 6, 2011; September 26, 2011; October 3, 2011; October 18, 2011; October 20, 2011; October 25, 2011; November 3, 2011; January 5, 2012; February 28, 2012; August 27, 2012; November 16, 2012; November 29, 2012; January 22, 2013; October 14, 2013; October 15, 2013; and December 20, 2013. These entries, which total 14 hours, will be disallowed.

There are similarly a number of entries indicating that documents or

---

[23]The court notes that, in a sizable majority of these instances, simple "receipt" of a document is billed for paralegal services and then subsequent action taken with respect to the document, such as "review", is billed by an attorney.

[24]There are some entries which indicate that correspondence was received and reviewed by the paralegal. In those instances, the court will consider the hours billed for paralegal services.

notifications were received from the court, either through email or through the CM/ECF system. Again, charges for the mere receipt of these materials will not be allowed. Said entries are each charged at .25 of an hour on the following dates: October 1, 2013; two entries on November 1, 2013; November 19, 2013; December 5, 2013; and two entries on December 19, 2013. These entries total 1.75 hours.

In reviewing the time logs for paralegal hours on the UIM claim, there are several entries for telephone calls or telephone conferences with an individual, either the plaintiff, the carrier, police, or someone else, with absolutely no identification of the subject matter of the telephone call or conference. While Attorney Albright expressed her concern at the hearing for divulging confidential information[25], courts within this district have excluded similar entries for counsel's failure to include any information relating to the subject of the telephone call or conference which would allow the court to determine whether the time billed for such was reasonable. See Souryavong, 159 F.Supp.3d at 534 (citing Wales v. Jack M. Berry, Inc., 192 F.Supp.2d 1313, 1323 (M.D.Pa. 2001) (sustaining "any objection to an entry referring to a conference, a telephone call, or the like . . . if the entry does not identify the subject of the communication," because "[w]hile it is not expected that

---

[25]According to Attorney Albright's testimony, this is why she created such generic categories as "other" and "communicate".

discussions or other messages should be particularized in detail, it is easy enough to add a couple of words regarding the subject matter of the communication in order to show that it is compensable . . .")). These entries total 27.5 hours which will be disallowed.[26]

The UIM time logs contain a number of entries for paralegal hours for "case review" or "file review". These entries appear on the following dates: January 12, 2011 for "Case review-file maintenance" (.75 of an hour); October 18, 2010 for "File review" (.5 of an hour); and October 20, 2011 for "File review" (.25 of an hour). Hours billed for "case review" or "file review", without an explanation for the necessity of such, are not reasonable. See e.g., Florence v. Sec'y of Health & Human Servs., 2016 WL 6459592, at *3 (Fed. Cl. Oct. 6, 2016) (citing Brown v. Sec'y of Health & Human Servs., 2013 WL 1790212, at *5 (Fed. Cl. Apr. 8, 2013), *supplemented*, 2013 WL 2350541 (Fed. Cl. May 6, 2013) (disallowing amounts billed for case review where counsel was actively involved in the case and such review was deemed

_____

[26]The court notes that counsel had the wherewithal to include a subject in some instances. For example, on March 31, 2010, counsel entered "Telephone call to client - treatment update". This entry was billed for .5 of an hour. The court can determine from this entry that counsel was speaking to their client regarding his medical treatment and is able to determine that .5 of an hour is a reasonable amount of time to discuss such a matter. However, in those instances where counsel merely provides "Telephone call to client", the court has no way of knowing whether the call was, in fact, necessary or whether time billed for such was reasonable.

unnecessary). The court will therefore disallow the 1.5 hours charged for paralegal services for case and/or file review.

On January 9, 2012, January 10, 2012, May 1, 2012, and March 1, 2015, there are entries for "notes" to the file billed for a total of 1 hour. The court finds that such administrative tasks can be quickly accomplished and generally do not require .25 of an hour per occurrence. The total of these entries will, therefore, be reduced by .75 of an hour to .25 of hour.

On March 6, 2013, May 10, 2013, and May 16, 2013, there are entries which indicate "File Maintenance re: contacting client", "File maintenance - client call", and "File Maintenance re client availability". These are billed at a total of 1 hour. On these same dates, there are indications that the attorney working on the case also billed for either actually contacting the client or for similar "file maintenance". In addition to the reasons set forth above for discounting the "file maintenance" entries, these charges certainly appear to be duplicative. As such, the court will disallow the 1 hour of billing for paralegal services on these occasions.

There also appears to be a number of other duplicative entries within the paralegal services entries in the UIM claim. On April 1, 2010, there are two identical entries for correspondence sent to the carrier, each billed for .25 of an hour. One of these will be disallowed. On March 13, 2013, there are two entries, one for "emailing" correspondence to Attorney Haddick and one for

"sending" correspondence to Attorney Haddick. Both are billed at .25 of an hour. These entries are apparently duplicative and the court will disallow the time billed for one. Again, on September 4, 2013, there are two entries which appear to be duplicative, one indicating "Drafted correspondence to Atty Haddick with TS'd complaint" and the other "Drafted correspondence to NYCMFIC with TS'd complaint". Both entries are billed at .25 of an hour. Only one will be allowed. There are three entries dated October 1, 2013 indicating "Email re: entry of appearance". Each entry is billed at .25 of an hour. Only one will be allowed. Thus, for these duplicative entries, 1.5 hours billed will be disallowed.

Further, in reviewing the UIM time logs for paralegal services, the court finds that there are numerous entries that reflect time spent on administrative tasks such as the simple mailing, faxing or filing documents or "document preparation"[27]. Professional time, whether it be for attorneys or paralegals, should generally not be charged for administrative tasks because hours spent on such tasks are normally not billed to a paying client and such tasks are delegable to non-professional staff. See Moffitt v. Tunkhannock Area Sch.

---

[27]Although there are circumstances where "document preparation" may not fall clearly within the realm of clerical work, see Moffitt, 2017 WL 319154 at *7, the entries regarding document preparation by the plaintiff's counsel in this case are so vague that the court cannot determine the reasonableness of the entries. As such, the court would disallow these entries on the alternative basis of vagueness.

Dist., 2017 WL 319154, **6-7 (M.D.Pa. Jan. 20, 2017) (citations omitted). The entries included for paralegal hours on the UIM claim are as follows: April 13, 2010, "Facsimile to provider" (.25 of an hour); July 20, 2010, "Correspondence sent" (.25 of an hour); March 16, 2011, "Document preparation" (.5 of an hour); April 13, 2011, "Document preparation" (1 hour); April 15, 2011, "Document preparation" (1 hour); April 15, 2011, "Document preparation" (.75 of an hour); May 2, 2011, "Document preparation" (.5 of an hour); May 24, 2011, "Document preparation" (1 hour); May 25, 2011, "Document preparation" (.5 of an hour); May 31, 2011, "Document preparation" (.5 of an hour); June 2, 2011, "Correspondence sent" (.25 of an hour); June 21, 2011, "Correspondence sent" (.25 of an hour); June 21, 2011, "Document preparation" (.5 of an hour); August 23, 2011, "Document preparation" (.5 of an hour); September 30, 2011, "Document preparation" (.25 of an hour); October 19, 2011, "Document preparation (.5 of an hour); October 25, 2011, "Document preparation" (.25 of an hour); January 9, 2013, "Mailed correspondence to client" (.25 of an hour); December 5, 2013, "Mailed correspondence to Atty Haddick" (.25 of an hour); December 5, 2013, "Electronically filed Rule 26 Disclosures" (.25 of an hour); December 9, 2013, "Mailed correspondence to clients with Defendants' discovery request" (.25 of an hour); and December 16, 2013, "Electronically filed letter with Court re consent to mediate" (.25 of an hour). These entries total 10 hours for which

any related fees will be disallowed.

Finally, there are a number of entries labeled "Email - outgoing" or "Email sent" which do not indicate to whom or for what purpose the email was sent and are too vague for the court to determine whether these hours are reasonable. In any event, "e-mailing" has been found by this court to be a purely clerical task which is non-billable and absorbed into the attorney's fee. See Moffitt, 2017 WL 319154 at *7 (citing McKenna, 582 F.3d at 457). As such, the hours billed for these entries will not be allowed. There are two of these entries on September 27, 2013 for .25 of an hour each and two entries on October 1, 2013 for .25 of an hour each. These entries total 1 hour for which fees will be disallowed.

In sum, the plaintiff's counsel have billed 106.50 hours for paralegal services on the underlying UIM claim. Even giving the plaintiff's counsel the benefit of the doubt on a number of the billed entries, the court has determined that 84 billed hours should be disallowed. Thus, the total number of hours for paralegal services which could conceivably be determined to be reasonable are reduced to 22.5. This is a reduction of approximately 79% of the hours billed by the plaintiff's counsel.[28]

---

[28]If the court had based its calculation on the erroneous 104.5 hours on the Statement of Services, the percentage of reduction would have increased to approximately 80%.

### ii.    Paralegal Hours - Bad Faith Claim

The plaintiff's counsel have billed 198[29] hours for paralegal services on the bad faith claim. Upon review of the bad faith time logs, the court finds that many of the hours billed for paralegal services are disallowable either because the entries are too vague for the court to determine the reasonableness of the hours billed, or because they are duplicative, excessive and/or unnecessary. Therefore, as were the paralegal hours on the UIM claim, the hours for paralegal services on the bad faith claim will be reduced.

Initially, in reviewing the bad faith time logs, there is an entry on December 20, 2013 for "Case Intake" for one hour. At this time, the plaintiff's case had already been with the Pisanchyn Law Firm for over three years on the underlying UIM claim. While the court allowed the initial charge for "Case Intake" on March 11, 2010, when the case first came to the Pisanchyn Law firm, the court finds the second charge to be unnecessary and duplicative. The court will therefore disallow the one hour billed for paralegal fees for this entry.

As with the UIM claim, there are a number of entries in the bad faith time logs for paralegal services where the only indication is that the paralegal "received" a document. On these occasions, the paralegal charged for the

---

[29]Although the plaintiff's counsels' Statement of Services rendered on the bad faith claim lists 197.75 hours for paralegal services, the hours in the time logs total 198.

receipt of the document and the attorney working on the matter then apparently charged for review of the document. Again, where there is no indication that the paralegal took any action with respect to the document, no fees will be allowed for paralegal services. In this category, there are a number of entries for "Correspondence received from client", each being billed at .25 of an hour. These are dated as follows: January 6, 2014; two entries on January 9, 2014; January 15, 2014; January 21, 2014; February 10, 2014; February 18, 2014; two entries on March 10, 2014; March 12, 2014; three entries on March 13, 2014; three entries on March 14, 2014; five entries on March 17, 2014; three entries on March 18, 2014; two entries on March 20, 2014; April 1, 2014; April 7, 2014; April 10, 2014; April 15, 2014; April 16, 2014; April 21, 2014; April 22, 2014; April 24, 2014; April 29, 2014; May 1, 2014; May 5, 2014; May 8, 2014; May 13, 2014; two entries on June 9, 2014; 3 entries on June 16, 2014; two entries on June 17, 2014; June 20, 2014; June 24, 2014; June 26, 2014; June 27, 2014; June 30, 2014; July 7, 2014; July 8, 2014; July 10, 2014; July 15, 2014; July 25, 2014; July 29, 2014; July 30, 2014; August 5, 2014, August 7, 2014; two entries on August 12, 2014; two entries on August 20, 2014; August 25, 2014; September 12, 2014; September 23, 2014; two entries on September 25, 2014; December 4, 2014; December 20, 2014; January 26, 2015; February 9, 2015; February 12, 2015; February 24, 2015; two entries on March 10, 2015; March 13, 2015; March

30, 2015; two entries on March 31, 2015; and April 7, 2015. These entries total 20.50 hours for paralegal services which will be disallowed.

Similarly, there are several entries for other documents "received" which will be disallowed. Each of these entries is billed for .25 of an hour. They are dated as follows: January 14, 2014, "Correspondence from mediator"; January 28, 2014, "Correspondence received re mediation"; February 3, 2014, "Correspondence received from atty"; March 7, 2014, "Correspondence received from Attorney Haddick"; March 18, 2014, "Correspondence from co for defense"; April 2, 2014, "Correspondence received Court Order"; May 13, 2014, "Correspondence from agent for carrier"; May 13, 2014, "Correspondence from clients"; May 28, 2014, "Email from atty for carrier"; June 5, 2014, "Correspondence from clients"; June 10, 2014, "Correspondence from atty"; June 12, 2014, "Correspondence received from agent of def"; two entries June 24, 2014, "Received email reply from Court re filing"; June 24, 2014, "Received faxed deposition notices for Plaintiffs"; two entries on June 27, 2014, "Email from court reporter"; July 2, 2014, "Email from court reporters"; July 8, 2014, "Correspondence from carrier"; July 15, 2014, "Received correspondence from atty"; July 16, 2014, "Email received"; July 28, 2014, "Correspondence from atty"; July 28, 2014, "Received correspondence"; August 1, 2014, "Mail received from court reports"; August 19, 2014, "Received correspondence from atty"; August 19, 2014, "Received

fax from Atty"; August 27, 2014, "Correspondence received"; September 17, 2014, "Correspondence received"; September 18, 2014, "Correspondence received"; September 18, 2014, "Received fax from Attorney Kaster re report"; September 19, 2014, "Received Court's Order"; December 19, 2014, "Received fax from Attorney Kaster"; January 26, 2015, "Correspondence received from Attorney with Rule 68 offer of $15,000"; February 9, 2015, "Received fax from Attorney Kaster enclosing Motion for Sanctions"; and March 31, 2015, "Correspondence from atty". These entries total 8.75 hours and the fees associated with these entries will be disallowed.

Again, there are several entries indicating mere receipt of ECF filings or emails regarding ECF filings, for which there is no indication that the paralegal took any other action and, after which, there are charges for attorney review of the ECF filings. These also will be disallowed. Each of these entries is billed at .25 of an hour. These entries are dated as follows: January 3, 2014; two entries on January 9, 2014; January 28, 2014; two entries on February 20, 2014; two entries on March 4, 2014; two entries on March 10, 2014; March 12, 2014; March 17, 2014; March 21, 2014, March 24, 2014; March 28, 2014; two entries on April 4, 2014; April 15, 2014; April 17, 2014, April 21, 2014; two entries on April 25, 2014; April 30, 2014; two entries

on June 4, 2014[30]; June 16, 2014; June 20, 2014; two entries on June 23, 2014; June 24, 2014; two entries on July 1, 2014; July 8, 2014; July 14, 2014; four entries on July 15, 2014; July 23, 2014; July 28, 2014; August 5, 2014; August 7, 2014; three entries on August 22, 2014; August 25, 2014; August 27, 2014; September 4, 2014; September 9, 2014; two entries on September 12, 2014; September 17, 2014; September 30, 2014; two entries on October 1, 2014; October 6, 2014; October 8, 2014; October 23, 2014; October 24, 2014; five entries on November 3, 2014; December 4, 2014; December 11,

---

[30]As yet another example of the caliber of plaintiff's counsels' performance, the court notes that on this day Judge Conaboy had entered a memorandum and order addressing the defendant's motions to compel discovery, (Doc. 34, Doc. 36). In doing so, Judge Conaboy stated, in part:

> The interrogatories and productions requests to which Defendant seeks to compel answers are, with one exception, straightforward, unremarkable, and obviously relevant. Plaintiffs would be required to respond to these requests even in the ordinary course of events. Where, as here, Plaintiffs did not file timely objections to these production requests within the time period specified within Rule 33 of the Federal Rules of Civil Procedure, the Court may indulge them only for "good cause". Given the obvious relevance of the items and answers sought by Defendant, and given the fact that the material sought is in no way privileged or unduly burdensome, no "good cause" for Plaintiffs' failure to provide discovery has been brought to this Court's attention.

(Doc. 40, pp. 3-4). Hereafter, the court noted that the plaintiffs' assertion that the defendant failed to engage in a good faith effort to resolve these discovery disputes was discredited by the items of correspondence attached to the defendant's brief.

2014; December 17, 2014; three entries on January 15, 2015; February 13, 2015; three entries on March 16, 2015; two entries on March 18, 2015; March 23, 2015; three entries on March 30, 2015; April 2, 2015; two entries on April 7, 2015; April 8, 2015, and two entries on April 9, 2015. These entries total 21.50 hours and any fees for paralegal services related to these entries will be disallowed.

As with the UIM claim, there are numerous entries for "file maintenance" billed for paralegal services in the bad faith claim. Added to the bad faith claim are also entries for "file management"[31]. As previously discussed, these entries will be disallowed, as there is no indication that they could not have been handled by non-professional staff. These entries occur on the following dates: January 16, 2014 (.5 of an hour); January 28, 2014 (.25 of an hour); February 6, 2014 (.25 of an hour); February 13, 2014 (.25 of an hour); February 14, 2014 (.25 of an hour); two entries on March 10, 2014 (.25 of an hour each); March 12, 2014 (.25 of an hour); three entries on March 17, 2014 (.25 of an hour each); March 18, 2014 (.25 of an hour); March 25, 2014 (.25 of an hour); April 9, 2014 (.25 of an hour); April 18, 2014 (.25 of an hour); April 25, 2014 (.25 of an hour); April 30, 2014 (.25 of an hour); May 1, 2014 (.5 of an hour); May 13, 2014 (.25 of an hour); June 9, 2014 (.5 of an hour); June

_____

[31]Attorney Albright did not testify at the hearing on attorney's fees as to how "file management" differs from "file maintenance". However, the court sees no reason to handle the categories any differently.

16, 2014 (.25 of an hour); June 20, 2014 (.5 of an hour); three entries on June 20, 2014 (.25 of an hour each); June 23, 2014 (.25 of an hour); three entries on June 24, 2014 (.25 of an hour each); June 25, 2014 (.25 of an hour); July 1, 2014 (.25 of an hour); July 2, 2014 (.5 of an hour); July 3, 2014 (.5 of an hour); July 9, 2014 (.25 of an hour); July 18, 2014 (.25 of an hour); two entries on July 24, 2014 (.25 of an hour each); July 25, 2014 (.25 of an hour); July 30, 2014 (.25 of an hour); August 15, 2014 (.25 of an hour); August 22, 2014 (.25 of an hour); August 27, 2014 (.25 of an hour); August 28, 2014 (.25 of an hour); three entries on September 9, 2014 (.25 of an hour each); September 13, 2014 (.25 of an hour); two entries on September 26, 2014 (.25 of an hour each); October 2, 2014 (.25 of an hour); October 3, 2014 (.25 of an hour); October 23, 2014 (.25 of an hour); October 24, 2014 (.25 of an hour); five entries on October 27, 2014 (.25 of an hour each); two entries on October 30, 2014 (.25 of an hour each); November 3, 2014 (.25 of an hour); December 12, 2014 (.25 of an hour); two entries on December 16, 2014 (.5 of an hour each); two entries on December 17, 2014 (.25 of an hour each); December 22, 2014 (.25 of an hour); January 19, 2015 (.25 of an hour); January 22, 2015 (.5 of an hour); February 9, 2015 (.25 of an hour); February 13, 2015 (.25 of an hour); February 25, 2015 (.25 of an hour); February 27, 2015 (.25 of an hour); March 4, 2015 (.25 of an hour); three entries on March 6, 2015 (.25 of an hour each); March 20, 2015 (.5 of an hour); March 25, 2015 (.25 of an hour); March

26, 2015 (.25 of an hour); April 8, 2015 (.25 of an hour); April 10, 2015 (.25 of an hour); April 16, 2015 (.25 of an hour); April 28, 2015 (.25 of an hour); April 29, 2015 (.25 of an hour); May 4, 2015 (.25 of an hour); May 6, 2015 (.25 of an hour); May 12, 2015 (.25 of an hour); June 11, 2015 (.25 of an hour); June 25, 2015 (.25 of an hour); July 16, 2016 (.25 of an hour); July 23, 2015 (.25 of an hour); August 17, 2015 (.25 of an hour); August 24, 2015 (2 hours); September 10, 2015 (.25 of an hour); September 21, 2015 (.5 of an hour); September 22, 2015 (.25 of an hour); September 25, 2015 (.25 of an hour); and October 13, 2015 (.25 of an hour). These entries total 29.25 hours and paralegal fees for these services will be disallowed.

The bad faith time logs also reflect several hours being charged for paralegal services for entries simply labeled "other". As noted previously, Attorney Albright testified that any such entry "might have been something that was confidential in nature . . . or something that wouldn't fit in any of the slots . . ." Obviously, with entries simply labeled as "other", there is no way for the court to determine what these entries were for or whether they were necessary or reasonable. They are dated as follows: June 11, 2014 (6 hours); August 7, 2014 (.25 of an hour); August 8, 2014 (.25 of an hour); September 23, 2014 (.25 of an hour); March 13, 2015 (.25 of an hour); and May 8, 2015 (.25 of an hour). These entries total 7.25 hours and paralegal service fees for these entries will be disallowed.

There are a number of entries in the bad faith time logs where hours are billed for paralegal services for simply mailing, faxing, emailing or sending documents or correspondence. As the court indicated previously, professionals should not be billing for such administrative tasks which can be delegated to administrative support staff. Each entry is made for .25 of an hour. The entries are dated as follows: January 21, 2014, "Correspondence sent"; February 13, 2014, "Correspondence sent to atty for carrier"; February 20, 2014, "Correspondence sent to atty for carrier"; March 3, 2014, "Correspondence to atty for carrier"; March 3, 2014, "Facsimile to atty for carrier"; March 7, 2014, "Faxed correspondence and Brief to Attorney Haddick"; March 7, 2014, "Mailed correspondence and Brief to Attorney Haddick"; March 7, 2014, "File maintenance - correspondence sent to Attorney Haddick"; March 7, 2014, "File maintenance re correspondence sent to Attorney Haddick"; three entries on March 11, 2014, "Correspondence sent to atty for carrier" and "correspondence to atty for carrier"; two entries for March 12, 2014, "Correspondence sent to atty for carrier"; two entries on March 17, 2014, "Correspondence sent to atty for carrier"; March 18, 2014, "Correspondence sent to atty for carrier"; four entries on March 19, 2014, "Correspondence sent to atty for carrier" and "correspondence to atty for carrier"; April 4, 2014, "Correspondence sent to atty for carrier"; April 11, 2014, "Correspondence sent to atty for carrier"; two entries on April 16, 2014,

"Correspondence sent to atty for carrier"; April 25, 2014, "Correspondence sent to atty"; April 25, 2014, "Correspondence sent to atty for carrier"; April 28, 2014, "Correspondence sent to atty for carrier"; May 2, 2014, "Correspondence sent to atty for carrier"; May 12, 2014, "Correspondence sent to atty for carrier"; three entries on June 16, 2014, "Correspondence sent to atty for carrier" and "correspondence to atty for carrier"; June 24, 2014, "Correspondence sent to atty for carrier"; June 25, 2014, "Faxed correspondence to Attys"; June 25, 2014, "Correspondence sent"; June 25, 2014, "Correspondence faxed"; June 25, 2014, "Mailed correspondence to atty"; June 26, 2014, "Emailed transcript files"; two entries on June 27, 2014, "Emailed Attorney for carrier"; July 1, 2014, "Correspondence sent to atty for carrier"; July 15, 2014, "Email correspondence to expert"; August 7, 2014, "Faxed correspondence to atty"; August 7, 2014, "Correspondence sent to attys for carrier"; four entries on August 20, 2014, "Correspondence sent to atty for carrier" and "correspondence to carrier"; August 21, 2014, "Correspondence sent to atty for carrier"; September 15, 2014, "Correspondence sent to atty"; three entries on September 16, 2014, "Correspondence sent"; October 23, 2014, "Correspondence sent"; February 9, 2015, "Correspondence sent to atty for carrier"; and February 13, 2015 "Correspondence sent to atty for carrier". These entries total 13 hours and the court will disallow any fees for paralegal services related to these entries.

44

Moreover, as with the UIM claim, any entries labeled only "Document preparation" or "Documentation prep" will not be permitted as they may or may not be administrative in nature and, in any event, are too vague for the court to determine the reasonableness of time spent on the task. These entries occur on the following dates: January 16, 2014 (1.5 hours); February 6, 2014 (.5 of an hour); February 11, 2014 (1 hour); two entries on March 10, 2014 (totaling 1.5 hours); three entries on March 11, 2014 (totaling 2 hours); April 25, 2014 (2 hours); August 20, 2014 (.5 of an hour); two entries on May 8, 2015 (totaling 1.50 hours); and August 17, 2015 (8 hours). These entries total 18.5 hours and fees for paralegal services related to these entries will be disallowed.

As with the UIM claim time logs there are numerous hours billed for telephone calls or conferences with no description of the subject matter of the call or conference. As with the UIM claim, these hours will be disallowed. These entries total 13.5 hours.

The court notes a number of miscellaneous entries for paralegal services for which fees will not be allowed. These are dated as follows: March 21, 2014, "Review of file" (1 hour); May 6, 2014, "Administrative entry" (.25 of an hour); June 9, 2014, "Document retrieval" (.5 of an hour); four entries for "Email correspondence" with no indication to who or for what reason (each at .25 of an hour); July 25, 2014, "File note" (.25 of an hour); September 9, 2014,

"Telephone call" (.25 of an hour); four entries on September 15, 2014, "Administrative note" (.25 of an hour each); September 15, 2014, "Correspondence" (.25 of an hour); October 27, 2014, "Telephone call" (.25 of an hour); October 30, 2014, "Telephone call" (.25 of an hour); and March 5, 2015, "Communicate-other" (.25 of an hour). These entries total 5.25 hours and any paralegal fees for these entries will be disallowed.

Next, the plaintiff's counsel have billed 43 hours for paralegal services for preparing the bates stamped documents in this matter. Preparing bates stamped documents is not an overly burdensome task. Although there were numerous bates stamped pages compiled in this matter, the court finds the 43 hours billed for such a task is extremely excessive. Moreover, if individuals had actually dedicated the number of hours billed for performing the tasks of "file maintenance" and "file management", 43 hours for preparing the bates stamped documents would have been completely unnecessary. The court will reduce the hours billed for preparing the bates stamped documents to 8 and disallow any other fees related to this task.

Finally, also found to be excessive are the three hours for paralegal services billed on March 19, 2015 for apparently setting up a videotaped deposition. The court finds that this is an administrative, routine practice which does not warrant nearly the amount of time charged by the plaintiff's counsel. As such, no fees will be allowed for these entries.

In sum, the plaintiff's counsel have billed a total of 198 hours for paralegal services on the bad faith claim. Considering the non-billable, vague, redundant, excessive and/or unnecessary entries billed by counsel, the court has reduced the number of hours by 177.75, leaving 20.25 allowable hours. This is approximately a 90% reduction in the number of hours billed by counsel for these services.[32]

### iii.    Attorneys Hours - UIM Claim

The plaintiff's counsel have billed a total of 99 hours for attorneys' services in relation to the UIM claim.[33] As to these hours, the court notes that the UIM claim time logs consist of twenty pages of entries. Only the first eleven pages actually contain any billed rate for the attorneys' services. Although the last nine pages of the time logs contain the number of hours billed, they do not reflect any attorney service rate. Instead, the entries reflect a date, with a brief description (a substantial number of which are insufficient), and time spent on the activity. It is not for the court to surmise the hourly rate,

---

[32]Even if considering the 197.75 hours reflected in counsels' petition, the percentage reduced would remain at approximately 90%.

[33]The plaintiff's counsel have indicated in their Statement of Services rendered by counsel in the underlying UIM claim that they are billing for 94.5 hours of service. However, in adding the hours provided in the time logs, the entries total 99 hours.

if any, charged for those entries for which no billing rate has been provided. The plaintiff's counsel have failed to meet even the most basic burden of providing the rate(s) charged for these entries, let alone establishing the reasonableness of such rate(s). Therefore, the court will deny any attorneys' fees as to the entries for which no rate has been provided. Upon review, the entries add up to 42 hours.

As to the remaining 57 hours, the court finds, as it did with the paralegal services, that a number of the hours billed for attorneys' services should be reduced as vague, redundant, excessive and/or unnecessary. Initially, as discussed with respect to the hours billed for paralegal services, there are a number of entries billed at the attorney hourly rate for "Attorney review of case" or "Review of case". Where an attorney is so actively involved in a case, as the plaintiff's counsel have claimed to have been in this case, without any explanation for the specific need for such, the court deems any hours for "review" of the case to be unreasonable. These entries are dated as follows: April 19, 2010, "Attorney review of case" (.5 of an hour); July 12, 2010, "Review of case" (.5 of an hour); May 20, 2011, "Case review" (.25 of an hour); August 19, 2011, "Attorney review of case" (1 hour); October 5, 2011, "Attorney review of case" (.5 of an hour); October 5, 2011, "File review" (.75 of an hour). Thus, the court will disallow 3.5 hours billed for these entries.

Similarly, the plaintiff's counsel have a number of entries simply for

"Attorney review", with no indication of what was being reviewed or the necessity for such review.[34] Such entries are too vague for the court to determine whether the hours billed were reasonable. Accordingly, the court will disallow any hours billed for these entries. They are dated as follows: May 27, 2010 (.25 of an hour); July 21, 2010 (1 hour); September 11, 2010 (1 hour); October 28, 2010 (1 hour); October 31, 2010 (.5 of an hour); January 4, 2011 (1 hour); January 6, 2011[35] (.5 of an hour); March 10, 2011 (1 hour); April 15, 2010 (1 hour); May 2, 2011 (1 hour); May, 13, 2011 (.75 of an hour); June 21, 2011 (1 hour); June 27, 2011 (.75 of an hour); July 25, 2011 (1 hour); August 19, 2011 (1 hour); August 22, 2011 (.25 of an hour); August 22, 2011 (.75 of an hour); August 22, 2011 (.5 of an hour); August 24, 2011 (.25 of an hour); August 31, 2011 (.25 of an hour); September 6, 2011 (.25 of an hour); and October 20, 2011 (1 hour). These entries total 16 hours, which will be disallowed.

As indicated previously, the court will not allow attorneys' hours for such administrative tasks as "document preparation" where there is no indication

---

[34]Although somewhat vague, the court has allowed hours billed for such items as "Attorney review of correspondence", "Attorney review of materials", or "Attorney review of document" where there is some indication that such items were received or prepared at or around the time of the entry.

[35]The court notes that this entry is dated "2010"; however, it is contained within the January 2011 entries and the court assumes that the year entered is simply another error.

of what was being prepared or why it was necessary for the attorney to prepare the document. "Preparation" of documents is normally an administrative task for which attorney hourly rates are not warranted. Moreover, even if not administrative in nature, the entries are too vague for the court to determine whether the time spent on such tasks was reasonable or necessary. There are a number of these entries reflected on the UIM claim, which are dated as follows: July 12, 2010 (.25 of an hour); two entries on July 22, 2010 (.25 of an hour each); October 4, 2010 (.25 of an hour); November 1, 2010 (.75 of an hour); January 6, 2010 (.25 of an hour); March 15, 2011 (.75 of an hour); June 1, 2011 (.5 of an hour); July 27, 2011 (.75 of an hour); August 21, 2011 (.25 of an hour); two entries on August 22, 2011 (.5 of an hour each); and October 17, 2011 (.5 of an hour). The court will disallow 5.75 hours for these entries.

Upon review, there is an entry in the attorney time logs dated October 6, 2010 simply referencing a "telephone conference" billed for .5 of an hour which does not indicate with whom or for what purpose the conference was held. The time for this entry will be disallowed as it is too vague for the court to determine whether it was reasonable or necessary.

Similarly, as with the paralegal services, there are a number of entries for telephone calls or conferences with various individuals for which counsel have not provided any subject description. Without such, the court cannot

50

determine whether the call/conference was necessary or whether the time billed for such was reasonable. These entries on the attorneys' UIM claim total 7.75 hours which will be excluded.

Next, there are several entries for attorney "roundtables" or "conferences" for which each of the participating attorneys have billed. While conferences and meetings may serve a purpose when multiple attorneys work on the same case, where the case is not overly complex and no necessity is shown for this type of activity, such billing should not be allowed. This case was not overly complex. As has been noted on a number of occasions throughout this matter, both by the undersigned and Judge Conaboy, who handled this matter prior to its transfer, this was a fairly straightforward bad faith claim. Accordingly, on those occasions where the plaintiff's attorneys have billed for multiple attorney "roundtables" or "conferences", the court will disallow these hours. These entries are dated as follows: May 13, 2011, "Attorney roundtable (x3)" (1 hour for each attorney); August 19, 2011, "Attorney conference (x2)" (.5 of an hour for each attorney); August 23, 2011, "Attorney conference (x3)" (.5 of an hour for each attorney); October 5, 2011, "Attorney conference (x2)" (.5 of an hour for each attorney); and October 20, 2011, "Attorney conference (x2) (.5 of an hour for each attorney). With respect to these entries, the court will disallow 7.5 hours.

As a final matter, as will be discussed with respect to the attorneys'

reasonable hourly rates, the plaintiff's counsel have failed to even meet their initial *prima facie* burden of establishing a reasonable hourly rate for any attorney other than Attorney Albright. As such, any remaining entries billed on the UIM claim at the attorney rate prior to Attorney Albright's employment with the firm in July 2011, will automatically be disallowed. In the court's calculation, these entries total 12 hours.

In sum, the plaintiff's counsel were seeking to bill 99 hours for attorney services on the UIM claim. Reducing the hours requested for those entries for which counsel failed to provide any hourly rate, reducing the hours for vague, excessive, and/or unnecessary charges, and further reducing the hours for those entries for which counsel have failed to meet their *prima facie* burden to establish a reasonable hourly rate for the billing attorney, has resulted in the number of potential allowable hours being reduced to 4 hours. Thus, counsels' hours on the UIM claim have been reduced by approximately 96%.

### iv.  Attorneys Hours - Bad Faith Claim

The plaintiff's counsel have billed a total of 1,984 hours for services on the bad faith claim.[36] In reviewing the attorneys' hours logged for the bad faith claim, there are, again, a number of categories of entries which are simply too

---

[36]The Statement of Services for the bad faith claim indicates that they have billed 1,886 hours for services on the bad faith claim. However, the entries on the bad faith time log total 1,984.

vague for the court to determine what the time was used for or whether the time billed was reasonable. While many of the categories have been discussed previously, some have not.

Initially, the court will disallow any time for entries made simply for "file maintenance" or "file management" billed at the attorneys' rate.[37] With the

_____

[37] It is interesting to note that Attorney Albright testified at the hearing on attorneys' fees that she "didn't believe it was appropriate for [her] to bill an attorney's fee to [perform file maintenance]", and, yet, the time logs reflect that there are numerous hours billed for "file maintenance" and "file management" at the attorneys' rate. Such material inconsistency damages Attorney Albright's credibility in the opinion of the court.

Further damaging Attorney Albright's credibility with the court was her testimony responding to defense counsel's questioning relating to the results achieved in the case. As noted, this is but one of the factors to be considered under Pa.R.Civ.P. 1717. As to this, Attorney Haddick asked Attorney Albright what the plaintiff's settlement demand was just prior to trial, to which she responded she "didn't recall". In refreshing her recollection, Attorney Haddick read from the transcript of the pre-trial conference in this matter at which the defendant offered $75,000 to settle the case, three times the underlying claim, and relayed to the court that Attorney Pisanchyn's demand was $9 million. In utter disbelief, the court asked Attorney Pisanchyn if that, in fact, was his demand, to which he replied "yes". In fact, the court specifically recalls that Mr. Pisanchyn not only made this demand on the record in open court, but also privately in chambers without the defendant's counsel being present. Despite this exchange **on the record** at the pre-trial conference, Attorney Albright continued to repeatedly testify that the plaintiff's counsel never demanded $9 million. In doing so, Attorney Albright testified that this was not counsels' *real* demand, but was essentially a showing of sarcasm on the part of Attorney Pisanchyn because he felt the defendant's offer was unreasonable. What neither Attorney Albright nor Attorney Pisanchyn seem to appreciate is that the United States District Court is not a place which tolerates sarcasm or unprofessionalism. No professional attorney would stand
(continued...)

53

exception of one entry which was billed for 6.5 hours on June 16, 2014, each of these entries was billed at .25 of an hour. These entries are dated January 6, 2014[38]; February 4, 2014; February 11, 2014; February 20, 2014; March 6, 2014; March 10, 2014; March 11, 2014; March 24, 2014; April 10, 2014; April 11, 2014; two entries on April 16, 2014; April 30, 2014; May 9, 2014; May 12, 2014; May 13, 2014; June 16, 2014; June 18, 2014; two entries on June 19, 2014; two entries on June 20, 2014; three entries on June 23, 2014; two entries on June 24, 2014; June 25, 2014; June 26, 2014; July 7, 2014; two entries on July 15, 2014; August 4, 2014; August 12, 2014; August 19, 2014; two entries on August 27, 2014; four entries on September 8, 2014; September 9, 2014; September 12, 2014; two entries on September 15, 2014; October 16, 2014; October 22, 2014; October 31, 2014; November 2, 2014; November 3, 2014; December 16, 2014; December 17, 2014; two entries on

---

[37](...continued)
before a federal court and make a demand for $9 million on a $25,000 claim, even if being facetious. Instead, any professional attorney would have explained why they felt the offer was unreasonable and relayed to the court what they believed to be a **reasonable** settlement demand. The fact is that Attorney Pisanchyn made a demand in federal court for $9 million, whether being sarcastic or not, and recovered $100,000 for his client, only $25,000 more than what the defendant offered.

[38]This particular entry reads "File maintenance - obtained attorney info". As of the date of this entry, the plaintiff's counsel had been working on this case for a period of over three years and any attorney information relevant to the matter should have been in counsels' possession. As such, the court will not allow counsel fees for this entry.

December 22, 2014; two entries on February 13, 2015; February 25, 2015; March 18, 2015; two entries on April 8, 2015; April 16, 2015; May 4, 2015; August 17, 2015; August 24, 2015; October 15, 2015; and October 21, 2015. These entries total 23 hours which will be disallowed.

Related to the "file management" entries are two entries simply described as "Document management" on June 24, 2014, and July 17, 2014. Each entry is billed for 7 hours of time. As with the "File management" entries, the 14 hours billed for these entries will also be disallowed.

Again, the plaintiff's counsel have billed for entries simply described as "other". As discussed previously, the court will not allow any hours billed at attorney rates for entries simply described as "other". Although Attorney Albright testified that these entries "may" have related to confidential exchanges, there is simply no way for the court to determine what these entries were for, whether they were necessary or whether the time billed for the entries was reasonable. These entries are dated January 24, 2014 (.5 of an hour); February 18, 2014 (.25 of an hour); March 31, 2014 (.25 of an hour); April 7, 2014 (.25 of an hour); May 6, 2014 (.25 of an hour); August 8, 2014 (4.25 hours); September 16, 2014 (.25 of an hour); October 1, 2014 (.5 of an hour); December 18, 2014 (3.0 hours); and January 7, 2015 (.5 of an hour). The 10 hours of time for these entries will be disallowed.

Just as descriptive as counsels' entries for "other" are their entries for

"Communicate" or "Communicate-other", which Attorney Albright again testified "most likely . . . would be something that was considered to be somewhat confidential". Without any indication as to with whom counsel was communicating or about what matter, the court will not allow billing for these entries. These entries occur on the following dates: January 14, 2014 (.25 of an hour); January 22, 2014 (.5 of an hour); April 28, 2014 (2 hours); July 24, 2014 (.5 of an hour); August 15, 2014 (.5 of an hour); September 9, 2014 (3 hours); September 12, 2014 (.5 of an hour); September 15, 2014 (.5 of an hour); October 2, 2014 (.5 of an hour); October 21, 2014 (.5 of an hour); two entries December 22, 2014 (1 hour total); March 5, 2015 (.5 of an hour); March 10, 2015 (.5 of an hour); March 13, 2015 (.5 of an hour); March 16, 2015 (.5 of an hour); two entries March 18, 2015 (2.25 hours total); March 19, 2015 (1 hour); March 20, 2015 (.5 of an hour); two on March 23, 2015 (1 hour total); three entries on March 25, 2015 (1.5 hours total); April 7, 2015 (1 hour); two entries on May 7, 2015 (1 hour total); June 19, 2015 (.25 of an hour); July 14, 2015 (1 hour); July 22, 2015 (1.25 hours); three entries on August 13, 2015 (2.75 hours total); August 18, 2015 (.5 of an hour); August 28, 2015 (.5 of an hour); August 31, 2015 (.5 of an hour); two entries on September 10, 2015 (1 hour total); September 11, 2015 (1 hour); September 17, 2015 (.5 of an hour); September 22, 2015 (.5 of an hour); two entries on September 23, 2015 (3.75 hours total); two entries on September 24, 2015 (1 hour total);

September 28, 2015 (1 hour); two entries on September 29, 2015 (1.75 hours total); October 6, 2015 (2.25 hours); and two entries on October 27, 2015 (1.5 hours total). A total of 41 hours will be disallowed for this category.

As previously discussed, entries indicating only "Document preparation" or "Draft of document" without any indication as to what the document was or why it was necessary for the attorney (versus a paralegal or an administrative staff member) to prepare the document will not be permitted. These entries occur on January 21, 2014 (1 hour); February 11, 2014 (1 hour); February 20, 2014 (1 hour); March 3, 2014 (1 hour); March 10, 2014 (.5 of an hour); March 11, 2014 (.5 of an hour); March 20, 2014 (2 hours); three entries on June 16, 2014 (4 hours total); June 19, 2014 (5 hours); June 23, 2014 (2.25 hours); July 1, 2014, (.5 of an hour); July 22, 2014 (1 hour); September 10, 2014 (.5 of an hour); September 17, 2014 (1.25 hours); October 16, 2014 (.5 of an hour); and October 22, 2015 (9.5 hours). A total of 31.5 hours will be disallowed for this category.

The plaintiff's counsel have billed a number of hours with a simple description of "Analysis/Strategy" or "Review/analyze", which the court finds patently unreasonable. Again, the entries are too vague in that they fail to describe what exactly counsel was reviewing or analyzing. Moreover, as has been said before, although the plaintiff's counsel seem to think otherwise, this case was not overly complex. It was a relatively straightforward bad faith claim

- one which did not require hours upon hours of analyzing or strategizing. Given the nature of this case, the court will not allow the hours billed for this category of entries. The entries occur on the following dates: January 3, 2014 (.5 of an hour); January 21, 2014 (.5 of an hour); February 19, 2014 (.5 of an hour); May 6, 2014 (.5 of an hour); June 20, 2014 (2 hours); June 23, 2014 (.5 of an hour); June 27, 2014 (.5 of an hour); July 15, 2014 (2.25 hours); July 30, 2014 (1.5 hours); August 7, 2014 (1.25 hours); two on August 12, 2014 (1 hour total); August 18, 2014 (1.5 hours); August 20, 2014 (.5 of an hour); two entries on August 27, 2014 (1.5 hours total); September 3, 2014 (.5 of an hour); two entries on September 4, 2014 (1 hour total); two entries on September 8, 2014 (1 hour total); September 9, 2014 (.5 of an hour); September 11, 2014 (.5 of an hour); September 15, 2014 (.5 of an hour); September 24, 2014 (.5 of an hour); September 25, 2014 (.5 of an hour); October 2, 2014 (.5 of an hour); December 9, 2014 (3 hours); two entries on December 12, 2014 (2 hours total); three entries on December 20, 2014 (16 hours total); two entries on December 22, 2014 (2 hours total); December 23, 2014 (.5 of an hour); January 20, 2015 (.5 of an hour); January 22, 2015 (.5 of an hour); January 23, 2015 (.5 of an hour); February 10, 2015 (.5 of an hour); February 27, 2015 (.5 of an hour); March 9, 2015 (1 hour); March 16, 2015 (.5 of an hour); two entries on March 18, 2015 (1.5 hours); March 20, 2015 (.5 of an hour); April 2, 2015 (.5 of an hour); May 8, 2015 (3 hours);

three entries on May 13, 2015 (2 hours); two entries on June 19, 2015 (.5 of an hour total); two entries on June 24, 2015 (6.5 hours); June 25, 2015 (.5 of an hour); July 2, 2015 (.5 of an hour); two entries on July 22, 2015 (2.5 hours total); three entries on September 28, 2015 (10 hours total); October 8, 2015 (10.5 hours); October 13, 2015 (1 hour); and October 21, 2015 (.5 of an hour). These entries total 87.5 hours and will be disallowed.

Next, as discussed with respect to the hours billed in the underlying UIM claim, charges for multiple attorneys having "roundtables" or "conferences" on this matter will not be permitted. These entries occur on February 10, 2014 (1 hour); March 4, 2014 (1 hour); March 15, 2014 (1 hour); March 17, 2014 (1 hour); March 25, 2014 (.5 of an hour); April 28, 2014 (.5 of an hour); May 1, 2014 (.5 of an hour); June 11, 2014 (1 hour); June 12, 2014 (.5 of an hour); June 18, 2014 (.5 of an hour); June 19, 2014 (.5 of an hour); July 8, 2014 (1 hour); July 10, 2014 (.5 of an hour); August 12, 2014 (.5 of an hour); September 16, 2014 (1 hour); November 3, 2014 (.5 of an hour); December 1, 2014 (1.5 hours); December 22, 2014 (1.5 hours); March 16, 2015 (3 hours); March 17, 2015 (1 hours); March 30, 2015 (1 hours); April 2, 2015 (1 hours); April 16, 2015 (1.5 hours); two entries on April 22, 2015 (3 hours total); April 24, 2015 (1 hour); April 28, 2015 (1 hour); May 8, 2015 (3 hours); May 14, 2015 (1 hour); June 17, 2015 (2 hours); September 24, 2015 (3 hours); October 14, 2015 (3 hours); October 27, 2015 (9 hours); November

3, 2015 (8 hours); November 4, 2015 (6 hours); and November 5, 2015 (1 hour). The entries for attorney roundtables or conferences total 63 hours and will be disallowed.

There are a number of entries billed by counsel for "Review documents" or like entries. Courts within this district have disregarded similar time entries based on lack of specificity. See Souryavong v. Lackawanna Cty., 159 F. Supp.3d at 534. See also Jama Corp., 2008 WL 108671, at *7 (disregarding time entries that "include[d] broad statements such as 'Review litigation documents,' 'Review documents for Exhibit list,' 'Review pleadings,' 'Review trial exhibits,' and 'Review trial exhibits & documents.'"); Arlington Indus., Inc., 2014 WL 2860863, at **8-9 (striking counsel's entries "for vague and unspecified tasks such as 'confer with counsel; review docs; review docket; memo re: same,'"). These entries occur on January 3, 2014 (.25 of an hour); January 16, 2014 (.5 of an hour); February 6, 2014 (.25 of an hour); February 11, 2014 (.5 of an hour); March 10, 2014 (.5 of an hour); March 11, 2014 (.5 of an hour); April 25, 2014 (.5 of an hour); April 16, 2015 (2 hours). A total of 5 hours will be disallowed for these entries.

Entries for "File review" will also not be allowed, as was previously discussed. Similarly, entries for "Material review" which have been included in the time logs for the bad faith claim will not be permitted. If counsel spent a fraction of the amount of time working on this case for which they have

billed, they would have been so intimately familiar with this case that any additional "file reviews" or "material reviews" would have been wholly unnecessary. These entries occur on January 21, 2014 (.5 of an hour); January 22, 2014 (1 hour); March 7, 2014 (.5 of an hour); April 30, 2014 (1 hour); July 14, 2014 (2 hours); July 21, 2014 (1 hour); September 8, 2014 (.25 of an hour); two entries on September 9, 2014 (.75 of an hour total); September 12, 2014 (.5 of an hour); September 15, 2014 (.25 of an hour); October 1, 2014 (1 hour); December 20, 2014 (1.5 hours); August 13, 2015 (2 hours); and October 13, 2015 (3.5 hours). These entries total 15.75 hours which will be disallowed.

Again, the court will not allow time billed for any entries in which it is stated that a document was simply "sent" or "received" without any indication that the attorney actually provided professional services with respect to the document. These entries are all billed for .25 of an hour each and occur on the following dates: January 23, 2014; January 27, 2014; March 5, 2014; June 20, 2014; two entries on June 23, 2014; March 17, 2014; September 8, 2014; two entries on September 11, 2014; December 23, 2014. A total of 2.75 hours will be disallowed for these entries.

In addition, there are two entries on April 16, 2015, for which the plaintiff's counsel appear to be charging for the administrative task of simply filing responses to the defendant's motions in limine. Each are billed at .25 of

an hour. The simple filing of a document is an administrative task and not one for which professionals should be billing. These entries totaling .5 of an hour will be disallowed.

There are also several entries simply described as "Legal research" which lack sufficient detail to warrant billing by the plaintiff's counsel. These entries indicate that legal research was performed but do not indicate what was being researched. The entries appear on the following dates: February 24, 2014 (.75 of an hour); March 11, 2014 (2 hours); May 8, 2014 (1 hour); June 16, 2014 (1 hour); June 18, 2014 (2 hours); June 20, 2014 (1 hour); December 22, 2014 (2.5 hours); two entries on February 13, 2015 (2 hours total); March 13, 2015 (8.5 hours); March 31, 2015 (1 hour); April 9, 2015 (3 hours); April 10, 2015 (2 hours); April 13, 2015 (1.5 hours); April 15, 2015 (1.5 hours); two entries on April 20, 2015 (4 hours total); April 21, 2015 (4 hours); two entries on April 22, 2015 (6 hours total); April 23, 2015 (3.5 hours); April 24, 2015 (4 hours); May 4, 2015 (3 hours); May 5, 2015 (23 hours); May 7, 2015 (3 hours); May 13, 2015 (2 hours); and November 4, 2015 (5.5 hours). These entries total 87.75 hours. Because these entries provide no description of the subject matter of the legal research, the court is unable to assess the reasonableness of the entries. See Moffitt, 2017 WL 310154 at *11. Thus, the

hours for these entries will be disallowed.[39]

There are a number of entries for telephone calls and/or conferences for which counsel have not provided even a brief description of the subject matter. Without any indication as to the subject of the call/conference, the court cannot determine whether such was necessary or whether the time billed for such was reasonable. These entries in the bad faith time logs total 21.75 hours which will be disallowed.

In reviewing the bad faith time logs, there are a plethora of miscellaneous scattered entries which are simply too indefinite for the court to make a determination as to the subject matter of the entry or whether time charged for the entry was necessary or reasonable. These entries occur on the following dates: December 20, 2013, "Attorney research"[40], (.25 of an hour); January 6, 2014, "Research" (.25 of an hour); February 11, 2014, "Draft/review" (.5 of an hour); February 12, 2014, "Draft/review" (.5 of an

---

[39]There is one entry which occurs on June 18, 2012 for which it is indicated that legal research was conducted "re applicable law". It is noted that, during the course of this matter, there was an issue as to whether New York or Pennsylvania law applied in this case. Therefore, the court will allow the hours billed for this entry.

[40]As opposed to other similarly vague entries for "Legal research" which the court has placed in its own category.

hour); March 3, 2014, "Review of documentation" (1 hour)[41]; March 7, 2014,

"Attorney review" (.5 of an hour); two entries on March 19, 2014, "Draft of

Response" (.75 hours total); March 28, 2014, "Research" (1.5 hours); May 1,

2014, "Pacer" (.5 of an hour); May 1, 2014, "Research" (1.5 hours); May 2,

2014, two entries for "Draft of correspondence" (.5 of an hour total); May 14,

2014, "Travel/attend" (2 hours); June 9, 2014, "Draft of correspondence" (.25

of an hour); June 9, 2014, "Travel/attend (IRS-tax info for discovery)" (2

hours)[42]; June 16, 2014, "Travel/attend document production" (1 hour); June

18, 2014, "Draft of pleading"[43], (1 hour); June 20, 2014, "Email" (.25 of an

hour); June 23, 2014, "File memo" (.25 of an hour); June 23, 2014, "Email"

(.25 of an hour); two entries on July 24, 2014, "Email correspondence" (.5

hours total); September 3, 2014, "Submission of materials" (.25 of an hour);

four entries on September 8, 2014, "Correspondence drafted" (1 hour total);

---

[41]While the court has given counsel wide latitude in charging for review of various documents, such as review of correspondence from the attorney for the carrier when the billing logs reflect that such correspondence was received, in this instance, there is no indication as to what the documentation was which counsel was reviewing. The court has no context from billing logs from which to determine whether the charges for review of this "documentation", whatever it was, was reasonable or necessary.

[42]While it is unclear what this entry is for, to the extent that the plaintiff's counsel are charging for traveling to obtain the tax information for discovery, there is no indication as to why it was necessary to do so.

[43]Upon review, there are no pleadings entered upon the record at or around this time.

September 12, 2014, "Correspondence prepared" (.25 of an hour); October 6, 2014, "Draft/revise" (1 hour); October 30, 2014, "Document production" (.5 of an hour); October 31, 2014, "Draft/revise" (6.25 hours); December 2, 2014 and December 3, 2014, "Draft/revise/review" (30.5 hours); two entries on December 17, 2014, "Draft/revise", (19.25 hours total); January 22, 2015, "Review" (.5 of an hour); February 9, 2015, "Correspondence draft" (.25 of an hour); February 9, 2015, "Review of docket/pacer" (.5 of an hour); February 25, 2015, "Expert witness" (1 hour); March 13, 2015, "Draft/revise" (2.5 hours); March 16, 2015, "Draft of correspondence" (1 hour); two entries on March 18, 2015, "Draft/revise" (2.25 hours total); March 19, 2015, "Expert witness" (.5 of an hour); four entries on April 10, 2015, "ECF filing" (1 hour total); April 13, 2015, "ECF filing" (.25 of an hour); April 15, 2015, "ECF filing" (.25 of an hour); April 20, 2015, "ECF filing" (.25 of an hour); April 21, 2015, "ECF filing" (.25 of an hour); two entries for April 22, 2015, "Email ECF filing" (.5 of an hour total); two entries for April 23, 2015, "Email ECF filing" (.5 of an hour total); April 24, 2015, "Email ECF filing" (.25 of an hour); two entries on April 29, 2015, "Email ECF filing" (.5 of an hour total); May 5, 2015, "Email ECF filing" (.25 of an hour); five entries on May 6, 2015, "Email ECF filing" (1.25 hours total); five entries on May 8, 2015, "Email ECF filing" (1.25 hours total); May 11, 2015, "Email from Co-counsel" (.25 of an hour); May 11, 2015,

"Review of Rules" (3 hours)[44]; May 12, 2015, "Email ECF filing" (.25 of an hour); two entries on May 13, 2015, "Email ECF filing" (.5 of an hour total); May 13, 2015, "Revise/draft" (19.75 hours); two entries on May 14, 2015, "Email ECF filing" (.5 of an hour total); May 15, 2015, "Email ECF filing" (.25 of an hour); five entries on May 20, 2015, "Email ECF filing" (1.25 hours total); July 13, 2015, "Review of docket/pacer" (.5 of an hour); August 3, 2015, "Email ECF filing" (.25 of an hour); August 11, 2015, "File/document" (11 hours); September 23, 2015, "ECF filing" (.25 of an hour); September 24, 2015, "Draft/revise" (1.25 hours); September 24, 2015, "Experts" (1.25 hours); October 8, 2015, "Email ECF filing" (.25 of an hour); October 15, 2015, "Email ECF filing" (.25 of an hour); October 15, 2015, "Transcripts/clips" (10 hours); October 16, 2015, "Transcripts/clips" (13 hours); October 19, 2015, "Transcripts/clips" (14 hours); October 20, 2015, "Transcripts/clips" (10 hours); October 21, 2015, "Transcript/clips" (17 hours); October 22, 2015, "Trial exhibit" (6 hours); October 23, 2015, "CE exhibits" (7.5 hours); and October 30, 2015, "Document production" (5 hours). These miscellaneous entries total 212.5 hours and will be disallowed.

---

[44]Counsel does not specify what "rules" were being reviewed. However, given the number of times trial counsel had to be reprimanded for his lack of familiarity with the Federal Rules of Civil Procedure and Federal Rules of Evidence, to the extent these are the rules referred to, this entry is particularly perplexing.

In addition to the unconscionable number of vague entries which have been billed for (or more accurately guessed about) by the plaintiff's counsel, there also appear to be a number of duplicative entries in the bad faith time logs for which no explanation is provided. Where this is the case, the court will reduce the number of hours billed. To this extent, on February 4, 2014, there are three separate and identical entries for correspondence to the attorney for the carrier. Each entry is billed for .25 of an hour. There is no indication as to the subject matter of the correspondences or as to why three separate correspondences were necessary. The court will disallow the time billed for two of these. On June 16, 2014, there are two entries for email sent, one to "Attorney" and one to "Attorney Kaster", both for .25 of an hour. There is no apparent distinction. Therefore, only one will be allowed. On June 24, 2014, there are two identical entries for "Email to atty for carrier", both billed for .25 of an hour. Only one will be allowed. On June 27, 2014, there are two identical entries for "Emailed atty for carrier", both billed at .25 of an hour. Only one will be allowed. There are three identical entries for "Correspondence to atty for carrier" on June 23, 2014, each for .25 of an hour. Only one will be allowed. The duplicative entries total 1.5 hours and will be disallowed.

Upon review, the court finds that there are a fair number of excessive or unnecessary hours billed for tasks in relation to the bad faith claim.

Specifically, on June 9, 2014 and June 12, 2014, the plaintiff's counsel entered 9 hours to prepare for depositions. On June 12, 2014, counsel entered 11 hours total to travel to and from the depositions and to attend the depositions. The court finds that billing 9 hours to prepare for depositions, which took a total of 11 hours, including round trip travel, is excessive. The court will therefore reduce the number of deposition preparation hours to 5.

Moreover, on July 14, 2014, the plaintiff's counsel billed two hours for "Draft of Motion and Brief in Support". Counsel does not identify the purpose of the motion and brief and, upon review of the record, no motions were filed by the plaintiff's counsel at or around the time of the entry.[45] Therefore, the two hours billed for this entry will be disallowed.

On July 16, 2014, the plaintiff's counsel billed for two attorneys to attend the deposition of the plaintiff for two hours each. The court has noted on a number of occasions that this case was not one which required billing by multiple attorneys. The court finds that the presence of two attorneys at the plaintiffs' deposition was not required. Therefore, the court will disallow 2 hours billed for one of the attorneys.

On July 22, 2014, there are four notes to the file, two regarding expert materials and two regarding noticing depositions, each billed at .25 of an

---

[45]The court notes that a brief in support of the plaintiff's motion to compel was filed on July 15, 2014, for which the plaintiff's counsel billed separately. (Doc. 53).

hour. As discussed above, such tasks consume a relatively small period of time. The court finds that billing one hour for simple notes to the file regarding two matters is excessive. The court will disallow .75 of an hour for these entries.

On August 10, 2014 and August 11, 2014, the plaintiff's counsel billed 22.50 hours for "Document preparation (organization/binder/review of issues). The court finds this billing to be excessive and unnecessary. Initially, counsel should not be billing for organizing documents or preparing binders. These are not the kind of tasks billable at professional rates. Moreover, as the court has previously discussed, for the number of hours counsel have billed, they should have been so intimately familiar with the matters pending in this case that they should not have had to bill such excessive hours for "reviewing the issues" in the case. The court will disallow all hours billed for this entry.

On August 12, 2014, the plaintiff's counsel billed 8.75 hours for "Discovery motions". Counsel have not specified what the "discovery motions" were and, upon review of the record, no discovery motions were made or responded to by the plaintiff at or around this time.[46] The court will therefore disallow the 8.75 hours billed for this entry.

Similarly, on August 18, 2014, the plaintiff's counsel billed 2 hours for "Draft of responsive pleading". They have not identified what the responsive

---

[46]The court notes that the plaintiff's counsel did file a brief in opposition to a motion to compel filed by the defendant on August 21, 2014, for which counsel billed separately. (Doc. 57).

pleading was and, upon review of the record, no responsive pleadings were filed at or around this time.[47] The court will therefore disallow the 2 hours billed for this entry.

On September 16, 2014, the plaintiff's counsel billed 1.5 hours for "Draft of legal memorandum". Counsels' records do not reference the subject of the legal memorandum and, upon review of the record, no legal memorandum was filed by the plaintiff's counsel at or around this time. Therefore, these hours will be disallowed.

There are three entries on September 16, 2014 and September 17, 2014, which the court calls into question. On these dates, the plaintiff's counsel entered 15 hours for "Document production (4 motions to compel, issues as to case, preparation for conference)". On September 16, 2014, counsel entered 9.75 hours for "Court mandated (conf. to plaintiff counsel)". Then, on September 17, 2014, counsel entered 1.5 hours for each of two attorneys to attend the conference. Upon review of the record, there were three discovery motions pending at this time - one filed by the plaintiff (a motion to compel discovery) and two filed by the defendants (the defendant's third and fourth motions to compel discovery). As a result of these pending matters, Judge Conaboy held a motion hearing on September 16, 2014. According to the court's minute sheet, this hearing lasted one hour. At the

---

[47]See n. 46.

hearing, counsel for the plaintiff turned over various documents to the defendant. Consequently, the court deemed withdrawn the three pending discovery motions.[48] There is nothing in the record which would support the billing by plaintiff's counsel for 27.75 hours in relation to this hearing. This was a one-hour motion hearing at which the plaintiff's counsel produced previously demanded discovery. Counsel have provided no explanation for entering 15 hours to gather the documents produced or to prepare for such a hearing. Moreover, they have not explained the entry of 9.75 hours which is described only as "Court mandated". The court will disallow 26.25 hours billed for these entries and will consider only the 1.5 hours billed for one attorney's travel and attendance at the motion hearing.[49]

On October 23, 2014, the plaintiff's counsel billed 1 hour for "Draft of motion". Upon review of the record, the motion filed at that time was a standard two-page motion for extension of time to respond to the defendant's motion for summary judgment and to file a cross-motion for summary

---

[48]In the order deeming the discovery motions withdrawn, Judge Conaboy afforded the defendant's counsel time to review the documents provided by counsel. Afterwards, Judge Conaboy issued an order dated January 21, 2015, in which he found that the plaintiff's counsel had still not made appropriate responses to the defendant's third and fourth motions to compel and counsel was again directed to do so. (Doc. 87).

[49]This was a discovery motion hearing. There is no indication that it was necessary to have two attorneys attend the conference.

judgment. Billing one hour to complete such a simple, mundane motion is excessive. The court will therefore disallow .75 of an hour for this task.

Beginning on October 23, 2014, the plaintiff's counsel logged a number of entries which all appear to relate to their response to the defendant's motion for summary judgment and to their own cross-motion for summary judgment. To this extent, on October 23, 2014 and October 24, 2014, 20.75 hours were logged for "Draft/revise (Response to motion for summary judgment/draft of Plaintiffs motion for summary judgment)". On November 1, 2014, an entry of 1 hour is made for "Attorney review of drafted materials". On the following day, 1.5 hours are logged for "Revision to brief". On November 3, 2014, an entry of 1 hour is made for "Revisions to documents". Then, on November 16, 2014, November 27, 2014 and November 28, 2014, 28 hours are logged for "Review/Analysis/Revise/Summary Judgment materials". On December 1, 2014 and December 2, 2014, 26 additional hours are billed for "Draft/revise (Summary judgment materials) (Response materials)". On December 15, 2014, another 18.5 hours are entered for "Drafted response and included materials MSJ", followed by an entry on the following day for 16.75 hours for "Reviewed documents/revised response". Lastly, on December 17, 2014, the plaintiff's counsel billed 2 hours for "Final revisions". In all, the plaintiff's counsel billed 115.5 hours for responding to the defendant's motion for summary judgment and for filing their own cross-

motion for summary judgment.

Upon review of the record, the plaintiff's counsel filed three items in relation to the motions for summary judgment. The first was the plaintiff's motion for summary judgment itself, which was two substantive pages and included a proposed order and certificate of service. The next item was the plaintiff's combined brief in opposition to the defendant's motion for summary judgment and in support of the plaintiff's cross-motion for summary judgment. This document is substantively 34 pages in length, with an attached proposed order, certificate of service and bates stamped exhibit list. Counsel subsequently filed a hard copy of the bates stamped exhibits actually referred to in the plaintiff's motion for summary[50]. The court has reviewed the materials submitted by the plaintiff's counsel relating to the cross-motions for summary judgment and finds nothing which would justify the billing of 115.5 hours. If counsel did nothing else every day for 8 hours per day, counsel would have consumed approximately three full weeks and would have spent over three hours per page on the 36 pages of substantive materials submitted (with 10 of those pages consisting of procedural background information with which counsel was certainly familiar at this point). The court finds that a third of this time would have been sufficient to prepare the motion and materials

---

[50]Although the plaintiff's bates stamped exhibit list reflected over 7,000 pages of documents, the documents actually referred to by counsel in regard to the motions for summary judgment totaled 229 pages.

submitted. Generously, the court will consider 40 hours for the preparation of the motion and brief, as well as the compilation of supporting materials, resulting in the disallowance of the remaining 75.5 hours.[51]

In the time during which counsel was preparing their summary judgment materials, they also billed 1.5 hours on October 31, 2014 for "Draft of Motion". In reviewing the record, the only motion filed by the plaintiff's counsel within the vicinity of this entry was a motion to exceed the page limitation on the summary judgment briefing. Again, this was a standard two-page motion with minimal effort required for its filing. As such, the court will consider only .25 of an hour for its filing and will disallow the remaining 1.25 hours.

On February 13, 2015 and February 14, 2015, the plaintiff's counsel logged an entry for "Discovery motion (COURT HAD ISSUED ORDER ON DISCOVERY/RETURNED AS "SPAM") for which counsel billed 27.5 hours. In reviewing the record, there are no discovery motions filed by the plaintiff's counsel at or around this time. Moreover, the only response to any discovery

---

[51]As another example of plaintiff's counsels' performance in this action, in finding that the matter must be presented to a jury to make the ultimate determination of whether the defendant's conduct constituted bad faith and denying the parties' cross motions for summary judgment, Judge Conaboy observed that ". . . due to Plaintiffs' burden to prove its case by clear and convincing evidence, and **Plaintiffs' persistent failures to cooperate in the discovery process and a failure to observe the literal requirements of Rule 56.1 of the local rules of court**, Plaintiff escaped a judicial determination that bad faith cannot be determined from this record by the narrowest of margins." (Doc. 84) (emphasis added).

motion by the plaintiff's counsel at or around this time was their filing of supplemental answers to the defendant's request for admissions/request for production of documents and supplemental answers to the defendant's interrogatories and request for production of documents (Set II). Counsel separately billed 2 hours for the preparation of these materials on February 12, 2015. Without any explanation for the entry of the 27.5 hours billed for a "Discovery motion" at this time, the court will disallow these hours.

On March 24, 2015, the plaintiff's counsel billed 6 hours to prepare for a deposition which consumed a total of 3 hours for both travel and attendance. The court finds counsels' billing for preparation to be excessive and will allow only 1.5 hours for the deposition preparation. The remaining 4.5 hours will be disallowed.

On April 9, 2015 and April 10, 2015, the plaintiff's counsel billed a total of 29 hours to draft five motions in limine. Initially, upon review of the record, the plaintiff's counsel only filed four motions in limine, not five. Moreover, with respect to the four motions in limine filed, they totaled fourteen substantive pages, one motion being five pages in length and the remaining being three pages in length, and none were overly complex. The court finds the entry of 29 hours for the plaintiff's motions in limine is excessive and unnecessary. The court will consider one hour for each motion in limine for a total of 4 hours and will disallow the remaining 25 hours.

Relatedly, on April 15, 2015 and April 16, 2015, the plaintiff's counsel billed 24.5 hours for "Revisions to MIL", **after** their motions had already been filed with the court on April 10, 2015. The 24.5 hours for these entries will be disallowed.

On April 23, 2015, the plaintiff's counsel billed 12.5 hours for drafting briefs in support of their four motions in limine and, on April 24, 2015 and April 29, 2015, counsel charged another 7.75 hours for revising those briefs. The billing for revisions on April 29, 2015 (4.5 hours), again, occurred **after** the briefs in support had already been filed with the court. The court has reviewed the four briefs in support of the motions in limine and finds that charging 20.25 hours, an average of five hours per brief, is excessive. The court will consider 2 hours per brief for a total of 8 hours and will disallow the remaining 12.25 hours.

Beginning on April 28, 2015, the plaintiff's counsel logged a number of entries relating to their briefs in opposition to the defendant's motions in limine. On April 28, 2015, counsel logged 14 hours for "Draft of Brief in Opposition"; on May 4, 2015, counsel logged 16.75 hours for "Draft of Brief in Opposition to MIL"; on May 5, 2015, counsel logged 2 hours for "Draft of brief in opposition to MIL"; on May 4, 2015, May 5, 2015, May 7, 2015 and May 8, 2015, counsel logged a total of 50.5 hours for "Revisions to Briefs in Opposition"; on May 6, 2015, counsel logged 3 hours for "Draft of Brief in

Opposition"; and on May 7, 2015, counsel logged 2.5 hours for "Revisions made to Brief" and 3.0 hours for "Draft of Brief in Opposition". In total, counsel billed 91.75 hours for drafting and revising their briefs in opposition to the defendant's motions in limine which, on average, are each 6 to 7 pages in length. These briefs did not address overly complex issues which required extensive briefing. As with the briefs in support of their own motions in limine, the court finds 2 hours per brief in opposition to the defendant's motions in limine to be more than sufficient. The record reflects that the plaintiffs filed briefs in response to 10 motions in limine. Therefore, the court will consider 20 hours of time billed on these tasks and disallow 71.75 hours.

On May 11, 2015 and May 12, 2015, the plaintiff's counsel billed 13.5 hours for drafting and revising a 16-page joint stipulation of facts with defense counsel.[52] This stipulation was submitted in conjunction with the plaintiff's pre-trial memorandum. Upon review, the court finds that there is nothing extraordinary about the stipulation which would justify billing 13.5 hours amounting to $4,475 in attorneys' fees.[53] The stipulation contains a number

---

[52]Curiously, counsel billed 5 hours to initially draft the stipulation of facts, but 8.5 hours to revise the stipulation.

[53]The court notes that counsel billed 5 hours to draft the stipulation at a rate of $300 per hour and 8.5 hours to revise the stipulation at a rate of $350 per hour. There is no explanation for the variance in rate charged. However, according to the time logs, a total of $4,475 was charged.

of paragraphs reflecting the procedural history of the case, as well as background information and specific provisions of the policy itself. Given counsels' five year involvement and familiarity with the case when the stipulation was drafted, the court finds 13.5 hours to draft and revise the stipulation of facts is excessive. The court finds three hours of time would have been sufficient. As such, the court will disallow 10.5 hours of time billed by the plaintiff's counsel for this task.

On May 7, 2015, 4.0 hours were billed by the plaintiff's counsel for "Update of Bates materials". Although vague, this appears to be nothing more than the designation into the bates stamped exhibits of additional materials received. The court finds that such hours billed by an attorney are excessive and unreasonable, as such tasks can be performed by non-professionals. The court will therefore disallow any such hours.

On May 8, 2015, the plaintiff's counsel billed 8.75 hours for preparation of their pre-trial memorandum. The plaintiff's pre-trial memorandum was seventeen pages in length, almost half of which was the background facts and contentions as to liability with which counsel, again, should have been very familiar with at this point of the litigation. A majority of the remaining matters to be addressed in the memorandum required a simple paragraph or two. As such, the court finds that billing 8.75 hours for the preparation of the pre-trial memorandum was excessive. The court will reduce this time to 4

hours and disallow the remaining 4.75 hours.

Of all of the entries disallowed in this case -- the vague entries, the duplicative entries, the excessive and/or unnecessary entries -- the court finds one of the most egregious categories to be that billed by counsel for trial preparation. In reviewing the time logs for the bad faith claim, the plaintiff's counsel have billed an astonishing 562 hours for "Trial prep" or "Trial preparation". On a number of days, counsel billed between 20 and 22 hours per day for trial preparation. If counsel did nothing else for eight hours a day, every day, this would mean that counsel spent approximately 70 days doing nothing but preparing for the trial in this matter - a trial in which the only issue was whether the defendant had committed bad faith in its handling of the UIM claim; a trial which consisted of a total of four days of substantive testimony; a trial which involved only five witnesses; a trial during which trial counsel had to be repeatedly admonished for **not** being prepared because he was obviously unfamiliar with the Federal Rules of Evidence, the Federal Rules of Civil Procedure and the rulings of this court. For this, the plaintiff's counsel are billing $196,700.00. In all of the petitions for attorney's fees handled by this court over many years, the court has **never** witnessed such an abuse by counsel. Given the relatively straightforward nature of this case and the underwhelming performance of counsel at trial, the court finds the hours billed for trial preparation to be outrageous and abusively excessive. As such, the

court will disallow all fees requested for trial preparation.

Relatedly, between May 8, 2015 and May 12, 2015, the plaintiff's counsel billed 21.5 hours to prepare "Trial Materials" and on May 13, 2015, billed another 4.5 hours to review deposition transcripts in preparation for trial. As these entries relate to trial preparation, the court subsumes these tasks into the time allotted for trial preparation and will disallow these hours as well.

The trial in this matter began on November 2, 2015. At that time, the plaintiff's counsel were informed that their exhibit list was not in the format required under the Local Rules of Court for the Middle District of Pennsylvania. Among other reasons, all of the plaintiff's exhibits were bates stamped numbered and did not contain appropriate exhibit numbers. Counsel were directed to revise their exhibit list to conform to the Local Rules. On the following day, November 3, 2015, the plaintiff's counsel submitted a revised exhibit list which also did not conform to the requirements of the Local Rules of Court. On that day, counsel billed 5 hours for "Exhibit preparation". To the extent that this billing is related to the revision of the exhibit list, in light of the fact that the revised list was also non-compliant with the Local Rules of Court, the court will disallow any hours billed for such. To the extent that this entry relates to something other than counsels' preparation of the trial exhibit list, it is simply too vague for the court to determine whether the 5 hours charged was necessary and/or reasonable.

The final category for which the court finds the billed fees to be excessive are those for the trial itself. The plaintiff's counsel have billed 144 hours for three attorneys being present at the trial. It was clear at the trial that there were two active attorneys in this case, Attorney Pisanchyn and Attorney Albright. The court will therefore not allow the plaintiff's counsel to bill for the presence of a third attorney at trial. There was no apparent need for such. The court has stated *ad nauseam* that this was not an unusually complicated bad faith case. Three trial counsel simply were not necessary. This will reduce the billed entries by 48 hours. With respect to the fees for the presence of Attorney Pisanchyn and Attorney Albright, it was apparent during the course of the trial that, although Attorney Pisanchyn was presenting the case at trial, Attorney Albright was a necessary asset. Even when the presence of two attorneys at trial is reasonable, however, in straightforward cases, both attorneys should not bill partner rates. Poff v. Prime Care Medical, Inc., 2016 WL 3254108 *9 (June 14, 2016 M.D.Pa.) (citing Evans v. Port Auth. of New York and New Jersey, 273 F.3d 346, 362 (3d Cir. 2001) (citations omitted)). On this basis, the court will reduce Attorney Albright's hours by 50% to 24 hours. Finally, as discussed in more detail in addressing the attorneys' reasonable hourly rates, Attorney Pisanchyn has not met his *prima facie* burden of establishing his reasonable hourly rate. As such, Attorney Albright's 24 hours will be the only time permitted for the trial in this matter. Thus, the

court will disallow 120 hours billed for the presence of counsel at trial.

In sum, the plaintiff's counsel have logged 1984 hours for services on the bad faith claim. The court has disallowed 1662.50 hours, approximately 84%[54] of the hours billed.

### v. Information Technology Reasonable Hours

The plaintiff's counsel have submitted four categories of charges for the Information Technology hours: "Trial preparation", "Edit/trans/clip", "Trial preparation IT", and "Trial". These entries total 195.75 hours. In reviewing these categories, the plaintiff's counsel are apparently making a distinction between preparing the information technology for trial, i.e., "Trial preparation IT", and general trial preparation, i.e., "Trial preparation". As to general "Trial preparation", the court will disallow any such fees as it would not be necessary for the IT personnel to generally prepare for trial.[55] These entries total 89.75 hours.

---

[54]If the court had considered the 1886 hours reflected on the Statement of Services provided by counsel, this percentage would rise to approximately 86%.

[55]Even if counsel argues that the entries labeled "Trial preparation" also relate to IT, the court finds that such hours would be excludable. To this extent, counsel have billed what amounts to over **24** 8-hour work days to prepare the electronic exhibits in this case for trial. Given what was presented to this court, this is outrageously excessive.

For IT trial prep, the plaintiff's counsel have billed a total of 27.5 hours. Further, they have billed 32 hours for editing the IT trial materials. The court finds that the hours charged in relation to the volume of material electronically presented at trial does not warrant such hours. The court will reduce the IT trial preparation and editing hours to 16 hours total and disallow the remaining 43.5 hours.

As to the final category, which is apparently for Attorney Yazinski's presence at trial to present the electronic materials, counsel have billed a total of 44.5 hours, which includes 10.5 hours for the final day of trial. The final day of trial consisted solely of counsels' closing arguments and the court's instructions to the jury. The record demonstrates that these matters concluded and the jury was excused to deliberate at 1:12 p.m. Once the jury left to deliberate, the services of Mr. Yazinski were no longer necessary. Therefore, the court will only allow 5 hours to be entered for IT services on the final day of trial. This reduces the total IT trial hours to 39, with 5.5 hours being disallowed.

In sum, the plaintiff's counsel billed 195.75 hours for IT services. The court has disallowed 138.75 of these hours as excessive and/or unnecessary. This reduces the amount of hours requested by approximately 71%.

### vi.    Fees for Attorneys' Fees Petition

Generally, a prevailing party is entitled to recover attorneys' fees for the preparation of their fee petition. See Planned Parenthood of Cent. N.J. v. Atty. Gen. of State of N.J., 297 F.3d at 268. In their petition for attorneys' fees, the plaintiff's counsel request, without any specific support[56], a mind boggling $27,090.00 for the preparation of the fee petition itself. The court noted in its order of December 11, 2015 the apparent excessiveness of this fee and the defendant also challenged this aspect of the petition.  Specifically, the court noted that ". . . counsel has requested **$27,090** just for preparing the **8-page** petition for attorneys' fees, costs and interest claiming that it was necessary to expend an unbelievable **64.5** hours at a rate of **$420 per hour** to do so. This equates to slightly over **8 full hours** and approximately **$3,386 per page** for a straightforward petition for fees and costs." In response, the plaintiff's counsel provided that "[t]he court may not have considered the time to go through the materials and information to come to an itemized bill which was exactly and potentially slightly more than 64.5 hours." Attorney Albright echoed this sentiment at the hearing on the petition for attorneys' fees testifying that she believed that, given the amount of materials she needed to reconstruct, the time counsel billed for the fees petition was "absolutely a

---

[56]With their petition, counsel simply provides a "Statement of Services Rendered" which summarily indicates that 64.5 hours were expended on the petition for attorneys' fees at a rate of $420 per hour.

conservative number".

Unfortunately for the plaintiff's counsel, the court finds that the time counsel spent reconstructing their time logs is not billable. While the use of reconstructed time logs does not doom a petition for fees, See Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000), if the actual time it had taken to complete each task had been recorded contemporaneously, there would be no need to recreate time logs. The court finds it inappropriate for the plaintiff's counsel to seek fees from the defendant for the time they took in recreating their own time records. Id. ("It is within a district court's power to reduce a fee award because the petition was not supported by contemporaneous time records."). The plaintiff's counsel have provided no explanation for the 64.5 hours billed for the preparation of the fee petition other than they needed to recreate their time logs. As discussed previously, as soon as the plaintiff's counsel realized that this matter was becoming a bad faith claim for which a petition for attorneys' fees would be submitted, they should have immediately began maintaining contemporaneous time records. This would have eliminated the need for such unnecessary and excessive fees. Therefore, the court will disallow the 64.5 hours billed for the preparation of the fee petition.

### vii.    Fee Enhancement

When considering attorneys' fees under §8371, the court may consider whether a fee enhancement is warranted. The plaintiff's counsel are requesting a "substantial" fee enhancement under the provisions of Pa.R.Civ.P. 1717. The party seeking an adjustment to fees has the burden of proving that it is appropriate. Lanni v. State of New Jersey, supra. The court has determined that the plaintiff is entitled to only 3% of the amount for interest requested by the plaintiff's counsel. Moreover, approximately 90% of the fees requested by the plaintiff's counsel for the UIM and bad faith claims, as well as the fee petition, have been disallowed. Considering the absolutely opprobrious request for interest and fees by the plaintiff's counsel, the court finds that counsels' request for an enhancement is beyond shameless and will outright deny counsels' request for same.

### 2.    Reasonable Hourly Rates

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984); Dellarciprete, 892 F.2d at 1183)). "The Court 'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation.'" Id. (citing

Dellarciprete, 892 F.2d at 1183). The party seeking attorneys' fees "bears the

burden of establishing by way of satisfactory evidence, 'in addition to [their]

own affidavits,' . . . that the requested hourly rates meet this standard." Id.

(citing Washington v. Phila. County Court of Common Pleas, 89 F.3d at 1035

(citations omitted)). In determining a reasonable hourly rate, generally, the

starting point "is the attorney's usual billing rate, but this is not dispositive."

Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 374 (citing Maldonado,

256 F.3d at 184-85).

If counsel fail to meet their *prima facie* burden of establishing that the

requested hourly rate is in accordance with the prevailing market rates in the

relevant community, "the district court must exercise its discretion in fixing a

reasonable hourly rate". See Washington v. Phila. County Court of Common

Pleas, 89 F.3d at 1036; See also L.J. ex rel. V.J. v. Audubon Bd. of Educ.,

373 Fed.Appx. 294, 297 (3d Cir. 2010); Loughner, 260 F.3d at 180 ("Having

rejected the prevailing party's evidence of rates, the District Court was free to

affix an adjusted rate.").

### i. Paralegal Hourly Rate

The plaintiff's counsel are billing an hourly rate of $80 for work

performed by paralegal(s) in this case. Contrary to this court's order entered

on December 11, 2015, counsel failed to provide any affidavits for any paralegal(s) for whom fees have been requested in this case[57], and the record is void of any information regarding the experience or skill of any such individual(s). Despite this, for purposes of the instant petition only, the court will assume that the requested $80 per hour rate requested for paralegal services is reasonable. Recently, the billing rates of paralegals in the Middle District have been reviewed and it has been determined that reasonable hourly rates range from $75 to $150 depending on skill and experience. See Borrell v. Bloomsburg Univ., 2016 WL 4988061, at *38 (M.D. Pa. Sept. 19, 2016) (citing Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 2014 WL 2860863, at *13 (M.D.Pa. June 23, 2014) (approving hourly rates of $120.00 and $130.00 for legal assistants); Dino v. Pennsylvania, 2013 WL 6504749, at * 3 (M.D.Pa. Dec. 11, 2013) (approving an hourly rate of $150.00 for a legal assistant in an FLSA case); Dee, 2013 WL 685144, at *11 (approving an hourly rate of $75.00 for a legal assistant); Overly v. Global Credit & Collection Corp., Inc., 2011 WL 2651807, at *5 (M.D.Pa. July 6, 2011) (noting

---

[57]As previously noted, the plaintiff's counsel have provided that it was not possible to produce the affidavits of such individuals as they are no longer employed with the Pisanchyn Law Firm. As the supervisors of the former paralegal(s), counsel provide that they are responsible for affirming the hours and hourly rates requested. In light of the underwhelming performance of counsel before this court and the substandard quality of the instant petition, the court views with caution any affirmance by counsel of the time spent or the reasonableness of the hourly rates for paralegal services in this matter.

that typical rates for legal assistants in the Middle District of Pennsylvania are between $70.00 and $120.00 an hour); <u>Souryavong v. Lackawanna County</u>, <u>supra</u> (finding plaintiffs' requested hourly rate of $100.00 for their legal assistant reasonable), *reconsideration denied*, 2016 WL 3940717 (M.D.Pa. July 21, 2016). Given that the $80 per hour requested rate for paralegal services in this case falls at the lower end of the spectrum determined to be reasonable in the Middle District, the court will assume such to be reasonable for purposes of the instant petition only.

Assuming the $80 per hour request for paralegal services to be reasonable, and considering the hours that the court has determined to be reasonably billed by the plaintiff's counsel for paralegal services, they would be entitled to paralegal fees on the UIM and bad faith claims in the total amount of $3,420. This is in contrast to the $24,360 which the plaintiff's counsel have billed according to the time logs and the $24,180 which they have requested in the instant petition. Even using the lower amount requested in the instant petition, the plaintiff's counsel are entitled to approximately 14% of what they have requested for paralegal fees.

### ii.    Attorneys' Hourly Rates

The court next considers the reasonable hourly rates of the plaintiff's counsel. In response to this court's December 11, 2015 order, five attorneys,

including Attorney Pisanchyn and Attorney Albright, submitted affidavits indicating that they each represented the plaintiff's interests in this matter. Although the plaintiff's counsel acknowledge that "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation", Maldonado, 256 F.3d at 184 (citing Dellarciprete, 892 F.2d at 1183), **none** of the five attorneys submitted sufficient evidence with the instant petition to allow the court to do so. To this extent, none of the attorneys submitted their own affidavits providing what their usual billing rate is, what their skill or experience is, or that the fees they are requesting are comparable to the current "rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."

Further, at the hearing on the petition for attorneys' fees, Attorney Albright was the only attorney to provide any testimony as to her background, experience and skill. In this regard, she testified that she had graduated from Central Pennsylvania Business School in 1995 with a paralegal degree. She went to Indiana University of Pennsylvania and Penn State where she obtained a bachelor's degree in administration of justice. Attorney Albright testified that she then attended Widener University School of Law, where she obtained her juris doctorate degree in 2002, and later sat for the Pennsylvania

bar exam in 2004. After passing the bar in 2004, Attorney Albright testified that she went into private practice focusing on plaintiff's litigation and ultimately ended up with the Pisanchyn Law Firm in July of 2011. Attorney Albright testified that, upon her employment with the Pisanchyn Law Firm, the instant action was immediately assigned to her as the primary handling attorney, with Attorney Pisanchyn supervising the matter. Attorney Albright testified that this was her first bad faith claim case.

As discussed above, the plaintiff's counsel have the initial burden to demonstrate the reasonableness of their hourly rate by submitting evidence in support of the rates claimed. Dellarciprete, 892 F.2d at 1183 (quoting Hensley, 461 U.S. at 433). It is only once the plaintiff's counsel have met their burden that the defendant must demonstrate the request is unreasonable. McKenna, 582 F.3d at 459. Because Attorney Albright is the **only** attorney who has provided **any** information relevant for the court to make a determination as to whether her hourly rate is reasonable, she will be the only attorney in this case for which the court will allow fees. The remaining four attorneys who have indicated that they provided services in this case, including Attorney Pisanchyn, have not even come close to meeting their initial burden of demonstrating the reasonableness of their hourly rates. As such, the court will not consider any fees for these individuals.

In reviewing the requested hourly rate for Attorney Albright's services,

of concern to the court is that, despite her seeking a rate in the instant petition of $420 per hour, in reviewing the time log entries which **she** reconstructed, this is not the rate at which she indicated she billed. Of the 123 entries on the underlying UIM claim time logs for which attorneys' fees were billed and a service rate was provided, only one entry was not billed at the rate of $350 per hour.[58] On the bad faith claim, 918 entries were made for which attorneys' fees were billed. Only 12 of those entries were billed at something other than $350 per hour and none were billed at $420 per hour. Yet, Attorney Albright asks this court to award her an hourly fee of $420 per hour.[59]

In an attempt to demonstrate that the requested $420 per hour rate is reasonable, the plaintiff's counsel have submitted the affidavit of Lawrence J. Moran, Esquire, in which Attorney Moran provides that **he** has been licensed to practice law in Pennsylvania since 1977; **he** is certified by the National Board of Trial Advocacy in both civil and criminal trial advocacy; **he** is counsel with the law firm of Lenahan & Dempsey, P.C.; **his practice** consists mostly

---

[58]There is one entry on the first page of counsels' UIM claim time log dated April 5, 2010 for "Attorney review of materials" which was billed at $160 per hour.

[59]In fact, this was the across-the-board hourly fee requested by all five attorneys who indicated that they provided services in this action. Again, whether the plaintiff's counsel were deliberately indifferent or grossly negligent in their billing and subsequent petition for fees, there is **no** justification for billing $350 per hour and then petitioning the court to have the opposing party pay $420 per hour in attorneys' fees.

of civil litigation with a primary emphasis on personal injury, insurance bad faith and civil rights; and that **his** current hourly rate is $400-$500 which is customary and reasonable in accord with the prevailing market rate for litigation in the Middle District of Pennsylvania. While Attorney Moran's affidavit may go far in establishing that $420 per hour is a reasonable hourly rate for **him**, despite the misrepresentation of the plaintiff's counsel to the contrary, Attorney Moran's affidavit does nothing to establish that $420 is the market rate reasonable for the plaintiff's counsel, and in particular, Attorney Albright.[60] In fact, Attorney Albright testified at the hearing on this matter that she did not have anywhere near the experience of Attorney Moran, in that Attorney Moran had been licensed for 37 years and, at the time of the petition for attorneys' fees, Attorney Albright had been licensed for less than 12 years.[61] Further, Attorney Albright testified that, unlike Attorney Moran, she

---

[60]The plaintiff's counsel have provided that "Attorney Moran describes his familiarity with fees charged by attorneys in the Scranton/Wilkes-Barre area for services such as those rendered by Plaintiffs' counsel **and says that the hourly fee of $420 per hour charged by Plaintiffs' Counsel is fair, reasonable and warranted**." (Emphasis added). In fact, Attorney Moran speaks only to the reasonableness of his own hourly rate. Nowhere in his affidavit does Attorney Moran endorse the hourly rate of the plaintiff's counsel. This is another outright misrepresentation to the court by the plaintiff's counsel.

[61]In fact, the court's research indicates that Attorney Albright was admitted to practice on September 13, 2004, and the instant petition was filed on November 20, 2015. As such, Attorney Albright had just slightly over 11 years of experience.

was not certified by the National Board of Trial Advocacy. Further, while Attorney Moran indicated that his practice had a primary emphasis on bad faith claims, Attorney Albright testified that this was her first bad faith claim. Thus, the $400-$500 rate provided for in Attorney Moran's affidavit does nothing to establish that $420 per hour is at all reasonable for Attorney Albright.

In the petition for fees, as well as at the hearing on this matter, Attorney Albright provided that she relied upon the schedule of hourly rates set by Community Legal Services, Inc., ("CLS"), of Philadelphia to set her hourly rate at $420 per hour. Courts are split in the Middle District as to whether the fee schedule set by CLS of Philadelphia also reflects the prevailing hourly market rates for the Middle District of Pennsylvania. See Souryavong v. Lackawanna County, supra, (CLS of Philadelphia not accepted because the fees do not speak to what the prevailing market rates are in the forum litigation, i.e., the Middle District of Pennsylvania); Borrell v. Bloomsburg Univ., 207 F.Supp.3d 454 (M.D. Pa. Sept. 19, 2016) (court declined to consider CLS fee schedule as not relevant to the prevailing market rate in the Middle District of Pennsylvania and, specifically, in the Scranton/Wilkes-Barre area). But see Benjamin v. Dep't of Pub. Welfare of Com. of Pennsylvania, 2014 WL 4793736, at *8 (M.D. Pa. Sept. 25, 2014) (finding CLS fee schedule to be instructive) (citing Stockport Mtn. Corp., LLC v. Norcross Wildlife Found., Inc.,

2014 WL 131604, at *4 (M.D.Pa. Jan. 13, 2014); Brown v. TrueBlue, Inc., 2013 WL 5947499, at *2 (M.D.Pa. Nov. 5, 2013)); Paulus ex rel. P.F.V. v. Cordero, 2013 WL 432769, at *8 (M.D. Pa. Feb. 1, 2013) (approving the rates established by CLS as reasonable market rates to be used in fixing the hourly rates in the Middle District). Although the undersigned tends to agree with those judges in the Middle District who have not accepted the CLS fee schedule, even if the court were to give the plaintiff's counsel the benefit of the doubt and assume that the hourly rates set forth in the CLS schedule were applicable in this case, for attorneys with 11-15 year's experience, the rage of hourly rates provided is $350-$420. Since Attorney Albright had just slightly over 11 year's experience at the time of the instant petition, she would fall closer to the $350 per hour rate. In fact, this was the rate predominantly used by Attorney Albright in the reconstruction of the time logs for both the UIM and bad faith time logs. Thus, for purposes of the instant petition only, this is the rate which the court will consider as reasonable for Attorney Albright's fee. Further, giving the plaintiff's counsel all benefit of the doubt, the court will assume that all of the attorney hours which were determined to be reasonable were performed by Attorney Albright.[62] Even with all of these

_____

[62]Attorney Albright testified at the hearing in this matter that the entries she placed in the billing logs did not identify the particular attorney performing work in this case, despite the fact that the NEEDLES system contained that
(continued...)

assumptions in favor of the plaintiff's counsel, the plaintiff's counsel have requested $39,690 in fees for the UIM claim. The court has determined that they are entitled to $1,400. The plaintiff's counsel have requested $792,120 in fees on the bad faith claim. The court has determined they are entitled to $112,525. The plaintiff's counsel have separately requested $27,090 in fees for the attorneys' fees petition. The court has determined that they are entitled to nothing.

### iii.    IT Hourly Rate

The plaintiff's counsel have provided no support whatsoever related to the fees being charged for IT services. They have not identified the individual(s) charging for such services, they have not outlined the experience of any such individual(s), and they have not set forth the prevailing market rates in the Middle District for such services. Moreover, although the plaintiff's counsel have requested $100 per hour for IT services in the instant petition, their own billing, as reflected in the time logs, without rhyme or reason,

---

[62](...continued)
information, but simply indicated that they were performed by "an attorney". Thus, the court really has no way to know which entry is attributable to which attorney. However, the court has excluded all hours billed before Attorney Albright became employed with the Pisanchyn Law Firm, as well as all hours for multiple attorney "roundtables" and all trial hours billed by anyone other than Attorney Albright which, to the best of the court's ability, constrains the billable hours to Attorney Albright, who was the attorney primarily responsible for this matter. Any error in the hours considered will only favor the plaintiff's counsel.

reflects charges of $100 per hour, $80 per hour, and $350 per hour for such services. Even if the court were to assume that the $100 per hour requested by the plaintiff's counsel was a reasonable hourly rate for IT services in this case, given the number of hours for such services that have been disallowed, the plaintiff's counsel would be entitled to $5,700 versus the $19,575 which the plaintiff's counsel have requested in the instant petition for such fees. This is approximately a 71% reduction in the fees requested by the plaintiff's counsel.

### 3.    Summary of Findings Regarding Attorneys' Fees

As if it could not be gleaned from the court's discussion above, the petition for fees submitted by the plaintiff's counsel is woefully deficient. In fact, upon review, the court has determined that approximately 97% of the amount of interest requested by counsel and approximately 87% of the hours billed by counsel are to be disallowed. Whether the deficiencies of the petition are the result of gross negligence or some level of fraud upon the court[63], the

---

[63]Recently, the court has become aware of a case in which Mr. Pisanchyn was accused of, among other things, misrepresenting material facts in an application for letters of administration. See Brittain v. Hope Enterprises Foundation, Inc., ___ A.3d ___, (Pa. Super. 2017), 2017 WL 2153883 (Pa. Super., May 17, 2017). Based upon Mr. Pisanchyn's alleged misrepresentations, which were relied upon in a related wrongful death and survival action, the defendants argued in an emergency application before the
(continued...)

court is convinced that the hours billed are not just excessive, but outrageously excessive. In the court's opinion, it appears that the request of plaintiff's counsel is anything but a good-faith representation of their actual billing rate and the hours reasonably expended on this case.

"If, after following the proper procedures, the Court [is] convinced that [counsels'] hourly rate and hours billed are outrageously excessive, it retains

---

[63](...continued)

Pennsylvania Superior Court that the plaintiff wrongfully received a judgment in excess of $3 million. It was claimed that Mr. Pisanchyn later filed a petition to distribute the funds, after which he took a 48% fee before depositing the judgment proceeds with the Columbia County Court of Common Pleas, prior to receiving necessary court approval to do so. The Pennsylvania Superior Court noted that, if there was merit to the defendants' allegations, it was uncertain whether Mr. Pisanchyn was entitled to any fees at all. In response to the emergency petition, one of Mr. Pisanchyn's arguments was that any "alleged 'possible fraud'" "is not the type of fraud that is sufficient to reopen a judgment based upon supposedly newly discovered evidence." Mr. Pisanchyn argued that only 'extrinsic' fraud, and not 'intrinsic' fraud, can be used to reopen an otherwise final judgment. While the Superior Court agreed that Mr. Pisanchyn accurately stated the law, it disagreed with the assertion that the fraud allegedly committed by Mr. Pisanchyn does not constitute extrinsic fraud. The court concluded that "knowingly maintaining a wrongful death action on behalf of someone for whom that right of action does not exist prevents a fair submission of the controversy and constitutes fraud on the court that warrants setting aside the judgment wrongfully obtained." The Superior Court ultimately determined that remand for further proceedings on the matter was warranted.

Although specific findings have yet to be made with respect to the actions of Mr. Pisanchyn in the Brittain case, the allegations made against him are certainly troubling, especially in light of the grossly exaggerated petition for fees which has been put forth before this court, as they appear to show a pattern of "recover at any cost" mentality on the part of Mr. Pisanchyn.

the discretion to award whatever fee it deems appropriate, including no fee at all." M.G. v. Eastern Regional High School Dist., 386 Fed.Appx. at 189. Where the court finds that the fee requested by counsel is so "grossly exaggerated or absurd", that the request for fees "shocks the conscience of the court", the court may entirely deny the request for fees. See Hall v. Borough of Roselle, 747 F.2d 838, 842 (3d Cir. 1984); Fair Housing Council v. Greater Washington v. Landow, 999 F.2d 92, 97 (4th Cir. 1984). In determining whether attorneys' fees should be denied in their entirety, the court should consider whether counsel acted with sufficient integrity in submitting the request to the court and whether counsel engaged in inappropriate reaching for excessive fees. See Hall, 747 F.2d at 842; Lewis v. Kendrick, 944 F.2d 949, 958 (1st Cir. 1991). In the court's opinion, based upon counsels' pre-trial conduct as reflected in the record, counsel's amateurish performance at trial, and the low quality of the filings submitted to this court, including the largely unsupported instant petition for attorneys' fees, there is no doubt that the plaintiff's counsel have engaged in inappropriate reaching for excessive fees in this case. As reflected in this memorandum, the court has determined that the allowable hours in this case for paralegal, attorney and information technology services total approximately 13%, at best, of what the plaintiff's counsel have billed for in this case. Given this determination, counsels' inappropriate reaching for fees, in fact, shocks the

conscience of this court and the court will therefore exercise its discretion to reduce the lodestar to deny counsels' request for fees in its entirety.

## III.    CONCLUSION

The petition for attorneys' fees will be granted in part and denied in part. The petition will be granted to the extent that interest will be awarded to the plaintiff in the amount of $4,986.58. In all other respects, the petition for attorneys' fees will be denied.

Further, given the conduct of the plaintiff's counsel and the exorbitant request for fees in this case, a copy of this memorandum will be referred to the Disciplinary Board of the Supreme Court of Pennsylvania for their independent determination of whether disciplinary action should be taken against Attorney Pisanchyn and/or Attorney Albright.

An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  August 29, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2447-03.wpd